JAQUALIN FRIEND PETERSON (6226)
DARIN B. GOFF (11355)
DANIEL R. WIDDISON (11979)
Assistant Utah Attorneys General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
jfpeterson@agutah.gov
dgoff@agutah.gov
dwiddison@agutah.gov
*Attorneys for Defendant Utah Tech University*

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF UTAH, SOUTHERN REGION

| | |
|---|---|
| REBECCA BROADBENT, JARED RASBAND, AND HAZEL SAINSBURY,<br><br>     *Plaintiffs*,<br><br>v.<br><br>UTAH TECH UNIVERSITY, *et al.*<br><br>     *Defendants*. | **SEALED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF AGAINST ALL PLAINTIFFS**<br><br>Case No. 4:24-cv-00091-DN<br><br>JUDGE DAVID NUFFER<br>MAGISTRATE JUDGE PAUL KOHLER<br><br>**REDACTED VERSION** |

Pursuant to Fed. R. Civ. P. 65, Utah Tech University, by and through counsel,

Jaqualin Friend Peterson, Darin B. Goff, and Daniel R. Widdison, Assistant Utah

Attorneys General, submits this emergency motion for temporary restraining order and ongoing injunctive relief against Plaintiffs regarding their use and disclosure of Utah Tech's privileged or confidential information.

# TABLE OF CONTENTS

RELIEF SOUGHT ................................................................................................ 5

INTRODUCTION ................................................................................................. 7

RELEVANT FACTS ............................................................................................ 9

ARGUMENT ...................................................................................................... 10

  I.    THE UNIVERSITY IS LIKELY TO SUCCEED ON THE MERITS ...................... 10

    A.    The University Has a Privilege That Must Be Protected. ........................................ 11

    B.    The Duty to Protect the Privilege Lies First with the Attorney Asserting the Claim. ................................................................................................................ 12

    C.    The Director of OEO and Title IX is Also Bound by Confidentiality. ................... 18

    D.    The Complaint Contains Privileged and Confidential Information. ....................... 19

    E.    Plaintiffs Improperly Disclosed Privileged Information .......................................... 20

      A.    Was the disclosure here reasonably necessary to the claim? ................................. 21

      B.    To what extent can the disclosure be limited? ...................................................... 22

  II.    ABSENT INJUCTIVE RELIEF, THE UNIVESITY WILL SUFFER SUBSTANTIAL AND IRREPARABLE HARM. ...................................................... 23

  III.    GRANTING THE REQUESTED INJUCTIVE RELIEVE WOULD NOT HARM PLAINTIFFS ...................................................................................................... 24

  IV.    THE PUBLIC INTEREST WOULD BE SERVED BY GRANTING INJUCTIVE RELIEF. ............................................................................................................ 26

CONCLUSION ................................................................................................... 27

# <u>TABLE OF AUTHORITIES</u>

Cases

*Baird v. Cutler*,
  883 F. Supp. 591 (D. Utah 1995).................................................................................28
*BCR Safeguard Holding, LLC*,
  2013 WL 4434361 (5th Cir. Aug. 15, 2013)................................................................28
Douglas v. DynMcDermott Petroleum Operations Co.,
  144 F.3d 364 (5th Cir. 1998)...............................................................................27, 28
*Greater Yellowstone Coal. v. Flowers*,
  321 F.3d 1250 (10th Cir.2003)...................................................................................24
*In Matter of 636 S. 66th Terrace, Kansas City, Kan.*,
  835 F. Supp. 1304 (D. Kan. 1993).............................................................................24
*Jones Waldo Holbrook & McDonough PC v. 3293 Harrison Blvd. LLC*,
  2023 UT App 8, 524 P.3d 1022 .................................................................................17
*O'Day v. McDonnell Douglas Helicopter Co.*,
  79 F.3d 756 (9th Cir. 1996).......................................................................................19
*Quintana v. Santa Fe Cnty. Bd. of Comm'rs*,
  973 F.3d 1022 (10th Cir. 2020)..................................................................................23
*Rains v. Westminster College*,
  627 F.Supp.3d 1267 (D.Utah, 2022)..........................................................................12
Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.,
  320 F.3d 1081 (10th Cir. 2003)..................................................................................24
*Spratley v. State Farm Mut. Auto. Ins. Co.*,
  2003 UT 39, 78 P.3d 603 ...................................................................................passim
*Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*,
  805 F.2d 351 (C.A.10 (Wyo.),1986)..........................................................................24

Rules

Fed. R. Civ. P. 65.............................................................................................................i, 6
Fed. R. Ev. 502(b)(3)........................................................................................................13
Fed. R. Evid. 502.........................................................................................................6, 12
UT R RPC 1.13..................................................................................................................12
UT R RPC Rule 1.6...............................................................................................14, 16, 18
UT R RPC Rule 1.6(b)(5).....................................................................................12, 14, 15, 17
UT R RPC Rule 1.8(b) ................................................................................................13, 15

Regulations

34 C.F.R. § 106.44.............................................................................................................19

**RELIEF SOUGHT**

Pursuant to Fed. R. Civ. P. 65, Utah Tech moves for an emergency motion for temporary restraining order and ongoing injunctive relief against Plaintiffs regarding their use and disclosure of Utah Tech's privileged or confidential information,[1] as follows:

1. Ordering Plaintiffs to withdraw their Complaint [Doc. 2], or seal it from view of any party other than Utah Tech, and remove (or strike) all references, as identified herein, to Utah Tech's privileged or confidential information;

2. Ordering a stay on Plaintiffs taking any further action in this litigation, including serving or seeking a waiver of service of their complaint, until this motion for injunctive relief is resolved;

3. Ordering that during the pendency of this action, prior to making voluntarily disclosures of any potentially privileged or confidential information that Plaintiffs obtained while employed by or representing Utah Tech, they must first give advance notice of the disclosure to Utah Tech and provide Utah Tech a reasonable time to object and take steps to preserve the confidentiality and privileged nature of such information;

4. Ordering that all objections made by Plaintiffs related to privilege and

---

[1] For the purposes of this motion, information protected by the attorney-client privilege or work product protections are treated the same. Fed. R. Evid. 502. Additionally, information protected by confidentiality only can be addressed in a similar fashion by order. A copy of the complaint with the privileged information highlighted is filed concurrently herewith as Exhibit 1.

confidentiality in connection with intended voluntary disclosures be ruled on exclusively by this Court;

5. Ordering any filings or documents which may contain, reveal, or otherwise disclose privileged or confidential information must be filed under seal with limited access, including among the parties to this case who are not already aware of the subject information;

6. Ordering Plaintiffs to advise Utah Tech in a sworn statement the identity of any and all individuals or entities to whom they provided copies of the complaint;

7. Enjoining Plaintiffs from disclosing or using Utah Tech's privileged or confidential information without leave of court, at the risk of sanctions up to and including dismissal of this action;

8. Enjoining Plaintiffs from conducting discovery into privileged, work product, or confidential material, except as allowed by court order, at the risk of sanctions up to and including dismissal of this action; and

9. Any other further relief this Court deems appropriate.

In the alternative, if the court does not grant all of the requested relief, Utah Tech University respectfully requests in the alternative that this court order a stay of any further action in this case and schedule a case management conference.

None of the aforementioned requested relief is intended to prohibit or limit Plaintiffs' ability to refile a complaint that does not contain privileged or confidential information. However, in acknowledging such, the University also does not waive its

right to object to any subsequent complaint that is filed through an appropriate motion. As outlined below, Utah Tech maintains that some privileged and/or confidential information has already been disclosed in the complaint and that harm has resulted from that disclosure. Utah Tech University does not at this time assert a counterclaim or offset, but expressly reserves the right to assert a claim or request for relief based on the disclosure.

## INTRODUCTION

In this uniquely complex case brought by two attorneys and a compliance officer against their employer/client, Utah Tech University, Defendant seeks emergency injunctive relief to address the disclosure and use of privileged, confidential, or private information in this action.

The facts and posture of this case necessitate a more deliberate approach than what has been employed by Plaintiffs. Here, a university general counsel, associate general counsel, and Title IX Coordinator overseen by the general counsel, have brought discrimination, tort, and contract claims against their client and current employer, Utah Tech University, including numerous current and former officers and employees, as well as another state entity, the Utah System of Higher Education ("USHE").[2] Moreover, as alleged, the claims arise from the Plaintiffs' performance of their duties as attorneys or

---

[2] The Utah System of Higher Education ("USHE") is an independent government entity that oversees universities and was the employer of defendant Richard Williams while he was president of Utah Tech University. As an independent entity, USHE also enjoys its own privilege and confidentiality.

Title IX coordinator, including information known only from the attorney-client relationship, or subject to confidentiality.

Plaintiffs' filing of the complaint triggered the need for this motion. Prior to the filing, all known disclosures of potentially privileged or confidential information, to the extent they occurred, were in confidential, internal Title IX or other policy process proceedings administered by the University, or in the cases of Williams and White, jointly with USHE.[3] However, with the filing of the complaint the question of privilege now becomes central to this case as Plaintiffs connect the allegations of this case to their current roles of trust and confidentiality at the University. Also, in the complaint, Plaintiffs allege and partially disclose privileged, confidential, or otherwise non-public information about third parties learned via their respective roles.

The University files this motion to protect its privilege and the confidential information that it receives pursuant to its Title IX processes.[3] The University also must have a court order for safe harbor of any disclosure related to this proceeding as well as a specified process to ensure there are no further disclosures of its privileged or confidential information while this litigation is pending. For all these reasons, Utah Tech seeks emergency relief in the form of a temporary restraining order and injunction.

---

[3] Plaintiffs disclosed some information in their notices of claim, which they assert was a prerequisite to this suit.  For the purposes of this motion, Defendant treats that disclosure as part of this proceeding.

## RELEVANT FACTS

Utah Tech University is a public institution of higher education administered by the State of Utah through the Utah State System of Higher Education. Doc. 2, ¶ 5. Ms. Broadbent is employed as General Counsel for Utah Tech and is currently on paid administrative leave. *Id.* ¶¶ 2, 83. Mr. Rasband works under the supervision of Ms. Broadbent as Senior Associate General Counsel. *Id.* ¶ 3. Ms. Sainsbury is the Director of Equity Compliance and Title IX Coordinator. *Id.* ¶ 4.  Plaintiffs allege discrimination and retaliation in the course of their duties which include providing legal and compliance advice to the University. *Id.* ¶ 33.

As General Counsel for the University, Ms. Broadbent is the chief legal officer for the University. *Id.* ¶ 2. Ms. Broadbent and Mr. Rasband advise all levels of University personnel and represent the University as its attorneys. *Id.* ¶¶ 2, 3, 33. The General Counsel's office also employs another full-time attorney and is supported by an Assistant Utah Attorney General.  University employees contact the General Counsel's office directly for assistance, which is routed and overseen directly by the General Counsel. General Counsel is a cabinet-level position. *Id.*

Ms. Sainsbury is employed as the University's Director of Equity Compliance and Title IX Coordinator.  In this capacity, Ms. Sainsbury oversees the University's Equity Compliance and Title IX office, including receiving and investigating complaints, advising University personnel on compliance issues, and enforcing University policy. *Id.* ¶¶ 2-4. This role is a critical component of the University's voluntary compliance efforts with Title VII and Title IX regulations.  *See* Declaration of Courtney White, filed

concurrently herewith as Exhibit 3, ¶ 9.

Many of the allegations on which Plaintiffs rest their claims can be traced directly back to their roles as advisors and agents of the University.  By way of illustration, allegations from the complaint which allege facts arising from or known only by virtue of their unique roles as counsel/TIX Coordinator (as opposed to generally known employee information) are found in ¶¶ 32, 33, 34, 35, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 51, 65, 112, 113, 114, 150 of the complaint.

The University does not consent to the use or disclosure of any information known by Plaintiffs that is related to Plaintiffs' representation of the University.  White Decl., ¶ 9.  This applies to Ms. Sainsbury as well, who represents the University in overseeing and responding to Title IX and Title VII matters, among others outlined in policy.  This disclosure has undermined the trust of University leadership in Plaintiffs' ability to maintain confidentiality, which is an essential, critical component of their job duties.  Doc. 2, ¶ 1. Erosion of trust in the individuals in these positions compromises the work of the General Counsel's Office, including the University's Equity Compliance and Title IX Office.  *Id.* ¶ 1, White Decl. ¶¶ 6, 11.

## **ARGUMENT**

## I.    **THE UNIVERSITY IS LIKELY TO SUCCEED ON THE MERITS**

Injunctive relief is appropriate because the University is likely to succeed on the merits of this request to shield confidential and privileged information from unauthorized disclosure and public view.  Plaintiffs are individuals in critical positions with sensitive

information.  The Plaintiff-attorneys, Ms. Broadbent and Mr. Rasband are subject to

confidentiality as governed by the attorney-client relationship.  Ms. Sainsbury is subject

to confidentiality as the Title IX Coordinator and related policy roles.  As outlined below,

the law is clear that Plaintiffs had a duty to take adequate measures to limit the disclosure

to those who had a "need to know", but instead have placed it at the center of this lawsuit

and in public view.  For this matter to proceed fairly, this issue must be addressed.

**A.      The University Has a Privilege That Must Be Protected.**

As a distinct legal entity, Utah Tech University enjoys an attorney-client

relationship with its attorneys.  UT R RPC 1.13.  As the client, Utah Tech University

enjoys a privilege governing communications made with its attorneys and a duty of

loyalty from those attorneys.  Rule 1.6 and Rule 1.8.  The duty includes both a duty not

to disclose information relating to the representation of a client and a duty to shield

attorney-client communications from view unless ordered by a court or under one of the

exceptions to the rule.  Communications between the attorney and client are shielded

from external disclosure and discovery by the attorney-client privilege, which can be

asserted by the client and must be asserted by the attorney.  Fed. R. Ev. 502 and *Rains*

*v. Westminster College,* 627 F.Supp.3d 1267 (D.Utah, 2022) ("In the Tenth Circuit,

attorney-client privilege protects confidential communications by a client to an attorney

made in order to obtain legal assistance from the attorney in his capacity as a legal

advisor." Internal quotations omitted.)

The University must act to protect its privilege as failure to do so could result in

a waiver. Fed. R. Ev. 502. The privilege is necessary for the functionality of the attorney-client relationship, and by extension, the operations of the University. UT R RPC Rule 1.6(b)(5), comment 2. Accordingly, the University has an inherent interest in the preservation of the privilege. *Accord*, Fed. R. Ev. 502(b)(3).

Here, the communications made to Ms. Broadbent and Mr. Rasband, including the University's preference on how to proceed in specific legal situations, the advice given by them to University employees is both central to the attorney-client relationship, and central to this case. Their legal opinion that the University's preference was inconsistent with the law is *precisely* the type of communication that is at the heart of the attorney-client relationship and by extension, privileged. That privilege flows to the University and absent the University's consent, information from that relationship cannot be disclosed by the attorney. The University has not consented to the use of privileged or confidential information in this proceeding, but even if it had, such disclosure would still have only been to the court, subject to a protective order.

B.      **The Duty to Protect the Privilege Lies First with the Attorney Asserting the Claim**.

In Utah, "A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these Rules." UT R RPC Rule 1.8(b). "Use of information relating to the representation to the disadvantage of the client violates the lawyer's duty of loyalty." *Id.* at comment 5. A lawyer may only reveal information relating to the representation of a client as allowed by the rules. Failure to do so may be a violation of

the lawyer's professional obligations of both confidentiality and loyalty.  Thus, in Utah, the attorney for the client *always* has a duty to identify and protect the privilege, even where the disclosure occurs pursuant to the rules (such as Rule 1.6(b)(5), discussed below).

Under UT R RPC Rule 1.6 governing confidentiality of information, "A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b)."  As Utah Tech has not given informed consent and the disclosures here are not impliedly authorized by the University, to be allowed, the disclosure must fall under Paragraph (b), which provides:

> (b) A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary:
>
> (b)(5) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client;

Disclosure may occur, but this rule does not create a blanket exception to the privilege nor a unilateral right by the attorney to decide to what extent the privileged information can be disclosed based on the exception in the rule.  If the attorney discloses more than is "reasonably necessary", the lawyer may run afoul of the duties of confidentiality and loyalty, as outlined by the Utah Supreme Court in *Spratley v. State Farm Mut. Auto. Ins. Co.*, 2003 UT 39, ¶ 13, 78 P.3d 603.

In *Spratley v. State Farm*, the Utah Supreme Court analyzed the use of

privileged information by former in-house counsel in a claim against their former

employer under the exception found in Rule 1.6(b)(5).  There, in-house counsel

resigned and sued their client/employer, an insurance company, for wrongful

termination after disagreement about the handling of particular matters on behalf of

insureds.  The plaintiff employee attorneys included attachments to their complaint that

the client/employer (State Farm) believed were confidential.  State Farm sought

injunctive relief from the district court.  The district court found there was a disclosure

and granted relief to State Farm, limiting the disclosure.  The Utah Supreme Court took

up an interlocutory appeal to address the interplay between the attorneys' interest in

asserting the claim with the client's right to the protection of the attorney-client

privilege.

The court began by analyzing the duties of the attorneys to the clients (both the

insureds and the insurer/employer) under Utah Rule of Professional Conduct

1.6 and 1.9., concluding, "Likewise, as Spratley and Pearce acknowledge in their

complaint, they provided legal services for both State Farm directly and for its

insureds. Thus they owe an attorney's duties of confidentiality to State Farm [the

employer] and its insureds in connection with that long history of representation."

*Spratley*, 2003 UT 39, 78 P.3d 603, 608.

The court then turned to Rule 1.9 which prohibits an attorney from using

information to the disadvantage of a former client.[4]  *Id.* at ¶ 14.  But the court noted

---

[4] The same prohibition applies to current clients.  *See* Rule 1.8(b).

exceptions, particularly the exception found at Rule 1.6(b)(5) which reads, "A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary… to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client".

The court finally analyzed the tension between the obligations of confidentiality with countervailing policy considerations, analyzing how this is addressed in other jurisdictions, some of which bar suit altogether.  Because the Utah rules include the 1.6(b)(5) exception, the court ultimately concluded the confidential information could be used in the suit.  *Id.* at ¶ 20.  In striking this balance, the court held:

> While adopting a literal interpretation of Rule 1.6 that permits revelations of confidential client information, we are careful to note that both former in-house counsel and trial courts must exercise great care in disclosing confidences…We note, however, that it remains the attorney's duty to minimize disclosures. While trial courts possess broad protective powers, any disclosures made by the attorney that are not reasonably necessary to the claim may still subject that attorney to professional discipline or litigation sanctions; a trial court's failure to prevent improper disclosure will not be a safe harbor for former in-house counsel who carelessly disclose more than is reasonably necessary to the claim.

*Spratley*, 2003 UT 39, ¶ 21, 78 P.3d 603, 609–10 (emphasis added).

Under *Spratley*, where an attorney relies on the exception found at Rule 1.6(b), they must strictly adhere to their duty of confidentiality (Rule 1.6), and if a disclosure is permitted, limit the disclosure with the use of tools like protective orders.  ("The professional judgment of the former in-house attorney and the stringent limitations

available to trial courts are of paramount importance in restricting disclosures within the bounds of Rule 1.6....The liberal use of these tools, and others inherent in a trial court's authority to govern the conduct of proceedings, is a prudent and sufficient safeguard against overbroad disclosure.") *Id.* (emphasis added).  Thus, if the disclosure is made pursuant to Rule 1.6(b)(5), it must still be limited to the extent reasonably possible.

Here, the complaint squarely places at issue attorney-client communications.  Ms. Broadbent and Mr. Rasband are attorneys and the allegations of the complaint directly intersect with their roles as attorneys for Utah Tech, implicating the need to limit disclosure under 1.6.  Moreover, the mere filing of a complaint is insufficient to overcome the protections of the privilege.  *See Jones Waldo Holbrook & McDonough PC v. 3293 Harrison Blvd. LLC*, 2023 UT App 8, ¶ 16, 524 P.3d 1022, 1027 ("We do not agree that subjects generally being at issue in a case is a sufficient basis to disregard the attorney-client or work-product privileges.").

Thus, if Plaintiffs are relying on the Rule 1.6(b)(5) exception, they have still failed to comply with their duty.  Plaintiffs only partially shielded information arguably governed by confidentiality from disclosure to non-parties; they did not file any privileged information under seal and these privileged attorney-client communications were reported in the local and national media.  *See* https://www.sltrib.com/news/education/2024/11/08/ex-utah-tech-university-president/; and https://news.bloomberglaw.com/litigation/utah-tech-general-counsel-sues-university-for-title-ix-failings.

Plaintiffs included individuals and an entity outside the privilege.  For example,

the Utah System of Higher Education "USHE", is a separate and distinct legal entity.  By statute, university presidents are employed by USHE not the university they oversee—a fact well-known to Plaintiffs. Accordingly, when evaluating a Title IX question involving its president, a university is essentially a co-entity with USHE. However, when the Title IX question does not involve a university president, USHE does not play a role and would not have a claim to know that information. Thus, some allegations of the complaint may be privileged as to the University but would not be known by USHE. Going forward, the standard protective order limiting access to the parties *only* is not sufficient to shield the University's privileged information from being disclosed to an outside entity—USHE.  USHE would still have access to the information on the docket and in discovery, as would Mr. Williams, who is no longer employed by any defendant and is not privy to many of the facts arising after his departure nearly a year ago.

It may seem that Ms. Sainsbury's involvement in communications could render some of these communications non-privileged as she is not an attorney.  But Ms. Sainsbury is an agent of the University and when she is speaking with the general counsel seeking legal advice, her communications are covered by the University's privilege. Utah R. Prof. Cond. 1.6, comment [2] ("When one of the constituents of an organizational client communicates with the organization's lawyer in that person's organizational capacity, the communication is protected by Rule 1.6. Thus, by way of example, if an organizational client requests its lawyer to investigate allegations of wrongdoing, interviews made in the course of that investigation between the lawyer and the client's employees or other constituents are covered by Rule 1.6.")

17

Plaintiffs failed to comply with their duties in disclosing the information in the complaint.  The remedy for this court is to strike the complaint or privileged portions, and allow the Plaintiffs an opportunity to plead their case within the confines of the rules.

**C.**     **The Director of OEO and Title IX is Also Bound by Confidentiality.**

Additionally, matters under the purview of the Title IX/Equity Office are subject to confidentiality and non-disclosure as a necessary component of the reporting/investigation process.  This confidentiality is preserved by federal and state statute, regulation, and University policy.  By virtue of her role as Title IX coordinator, Ms. Sainsbury is privy to that confidential information. *See e.g.*, Title  IX at 34 C.F.R. § 106.44, ("A recipient must not disclose personally identifiable information obtained in the course of complying with this part, except in the following circumstances…",); University Policy 154 implementing Title IX ("The Title IX Coordinator will ensure that…the Party's privacy is maintained as much  as possible, without impairing the University's ability to provide the Supportive Measures."); under Title VII, *see O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763–64 (9th Cir. 1996) ("In balancing an employer's interest in maintaining a harmonious and efficient workplace with the protections of the anti- discrimination laws, we are loathe to provide employees an incentive to rifle through confidential files looking for evidence that might come in handy in later litigation. The opposition clause protects reasonable attempts to contest an employer's discriminatory practices; it is not an insurance policy, a license to flaunt company rules or an invitation to dishonest behavior." (Internal quotations omitted)); and

University Policy 164 implementing Title VII ("The University will only release information obtained in the course of an investigation on a "need to know" basis to the extent permitted by Policy 164 and applicable law and consistent with the University's thorough investigation of the Complaint.  Breaches of confidentiality will be reviewed and may be considered a violation of Policy 164 subject to disciplinary action.").

Here, Ms. Sainsbury has revealed confidential information relating to the complaint, investigation, and resolution of other individuals' Title IX or internal proceedings contrary to the policies and laws prohibiting their disclosure.

**D.      The Complaint Contains Privileged and Confidential Information.**

The complaint contains a number of allegations that reveal privileged and/or confidential information.  Many of the allegations reflect information known to Plaintiffs as part of legal compliance consultation on discrimination and employment matters.  Privileged communications from the University to Plaintiffs seeking legal/compliance advice are found in ███████████████████████ of the Complaint.  Allegations revealing attorney work product or advice given by the attorney to the client are found in paragraphs ████████████████████████ Allegations revealing attorney-client communications are found in █████████████████████

███ [5]

████████████████████████████████████

---

[5] Again, the University has provided the Court with a highlighted copy of the Complaint as Exhibit 1. Additionally, to ensure clarity, the University identifies by paragraph the specific provisions that are privileged or confidential as Exhibit 2.

 The same can be said of each disclosure identified above and perhaps further briefing may be appropriate, if any are disputed.  To ensure a fair process now and going forward, the University seeks an order consistent with the framework outlined by the Utah Rules of Professional Conduct.

**E.      Plaintiffs Improperly Disclosed Privileged Information**

To determine whether a specific disclosure is appropriate, Rule 1.6 provides a

two-step framework:  First, is the disclosure necessary to the claim?  Second, to what extent can the disclosure be limited?

A.    <u>Was the disclosure here reasonably necessary to the claim?</u>

The federal district of Utah is a notice pleading jurisdiction and not every fact underlying the claim must be pled.  Here, Plaintiffs not only alluded to privileged communications, but described some with specificity, including the University's response, revealing the nature and content of the communications surrounding the matters.  This level of detail was unnecessary.  ███████████████████████ ███████████████████████████████████████████████ ███████████████████  Thus, these Plaintiffs were not the subject of any unlawful harassment by virtue of this specific exposure.  The action taken was likewise not directed at them.  The specific details of this situation were not necessary to establish this claim.

Indeed, Plaintiffs could have brought all their claims by asserting much of what they asserted more generally about the purported culture of Utah Tech and used only the "zuweenie" incident and the allegations related thereto, including the University's purported response, as the specific and culminating example, which incident involved Plaintiffs and purportedly all defendants but was not brought to Plaintiffs' attention through any confidential or privileged communications. This would have been enough to simultaneously satisfy *Iqbal's* and *Twombly's* flexible plausibility standard while also meeting their ethical obligations. *See Clinton* v. *Sec. Benefit Life Ins. Co.* (citation

omitted)("To satisfy the plausibility standard, the complaint must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Internal quotations omitted); *Quintana v. Santa Fe Cnty. Bd. of Comm'rs,* 973 F.3d 1022 (10th Cir. 2020)(There is a "low bar for surviving a motion to dismiss."). Once in court, Plaintiffs could have utilized the various mechanisms under the civil rules of procedure – i.e., case management conference, Rule 16 hearing, protective order, amendment, and such -- to alert the court that they had other examples that would further bolster their claims but that those had been learned by virtue of their roles and so they would need to make disclosure through less public means.

B.    <u>To what extent can the disclosure be limited?</u>

To the extent they felt they needed to rely on privileged information, those allegations did not need to be filed publicly. Plaintiffs should have filed under a protective order limiting access to the privileged information to those already inside the privilege like the order in *Spratley*. If Plaintiffs felt they needed to allege more information, they could have done so under a protective order, or at the very least, after engaging with the client (Utah Tech) in a discussion about how to advance their claims while maintaining the privilege. Indeed, as outlined above, it was the attorney Plaintiffs' responsibility to take appropriate steps in conjunction with any disclosure. Moreover, Plaintiffs filed without any protection despite the clear connection between Plaintiffs' work (attorneys and legal compliance) and their allegations (the response to that advice). The same is true of the other privileged portions identified in the exhibit.

## II.   ABSENT INJUCTIVE RELIEF, THE UNIVESITY WILL SUFFER SUBSTANTIAL AND IRREPARABLE HARM.

Absent injunctive relief, Utah Tech will suffer substantial and irreparable harm. The irreparable harm requirement is met by demonstrating that there is a significant risk of harm that cannot be compensated after the fact by monetary damages. *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir.2003) (citations omitted); Salt Lake Tribune Pub. Co., LLC v. AT & T Corp., 320 F.3d 1081, 1105 (10th Cir. 2003)(citing *Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.,* 805 F.2d 351 (C.A.10 (Wyo.),1986)("[I]rreparable injury" is "harm that cannot be undone, such as by an award of compensatory damages or otherwise."). Courts have held that disclosure of privileged material could cause irreparable harm. *In Matter of 636 S. 66th Terrace, Kansas City, Kan*., 835 F. Supp. 1304, 1306 (D. Kan. 1993), the district court explained, "Once lost, confidentiality cannot be restored. Movants have no other remedy, and their injury is irreparable."  Indeed, the privilege is so critical to the practice of law that courts will consider disqualifying counsel if they learn privileged information, even in error. *Spratley*, 2003 UT 39, ¶ 28, 78 P.3d 603, 611

Here, Plaintiffs have already disclosed confidential and privileged information despite the pre-existing legal and policy restrictions that should have limited the disclosure to those who "need to know" for the resolution of this case.  To the extent required, disclosure should have occurred under a protective order and not in a public filing.  Plaintiffs failed to take adequate precautions and the information disclosed has

already been published in the national media.  Given the breadth of the allegations in the

complaint, it is clear Plaintiffs intend to rely on the entire scope of their employment

with Utah Tech potentially revealing a host of privileged and confidential information

about third parties and University operations, even in unrelated but ongoing matters.

This harm must be mitigated and may be avoided in the future by the entry of an order

limiting Plaintiffs' unauthorized disclosures.

## III.    GRANTING THE REQUESTED INJUNCTIVE RELIEVE WOULD NOT HARM PLAINTIFFS

The third element of the analysis is whether the threatened injury outweighs the

harm to the opposing party.  Here, the question is whether the issuance of an order

restricting the disclosure of privileged information outweighs the potential harm to the

Plaintiffs.  It does.  The resolution of this question is so fundamental, the rules of civil

procedure explicitly provide for the issuance of protective orders regarding privileged

and confidential information.  Moreover, the rules of professional conduct make clear

that attorneys should use the protections available to courts to comply with disclosure

under Rule 1.6.  The manner by which a lawyer may disclose information under Rule

1.6(b)(5) is explicitly stated in comment 16 to the rule, "If the disclosure will be made in

connection with a judicial proceeding, the disclosure should be made in a manner that

limits access to the information to the tribunal or other persons having a need to know it

and appropriate protective orders or other arrangements should be sought by the lawyer

to the fullest extent practicable."  (Emphasis added.)

The significance of this policy is reflected in the regulatory framework

surrounding a lawyer's ethical duties to the client.  In this jurisdiction, a lawyer may not

reveal information relating to the representation of a client except as allowed, upon

penalty of discipline by the Utah State Bar.  See *Spratley*, 2003 UT 39, ¶ 22, 78 P.3d 603,

610 ("[A]ny disclosures made by the attorney that are not reasonably necessary to the

claim may still subject that attorney to professional discipline or litigation sanctions; a

trial court's failure to prevent improper disclosure will not be a safe harbor for former in-

house counsel who carelessly disclose more than is reasonably necessary to the claim.").

The comments to the Utah Rules of Professional Conduct also make this clear.

Comment 3 to Rule 1.6 states:

> The principle of client-lawyer confidentiality is given effect by related bodies of
> law: the attorney-client privilege, the work product doctrine and the rule of
> confidentiality established in professional ethics. The attorney-client privilege and
> work product doctrine apply in judicial and other proceedings in which a lawyer
> may be called as a witness or otherwise required to produce evidence concerning a
> client. The rule of client-lawyer confidentiality applies in situations other than
> those where evidence is sought from the lawyer through compulsion of law. The
> confidentiality rule, for example, applies not only to matters communicated in
> confidence by the client but also to all information relating to the representation,
> whatever its source. A lawyer may not disclose such information except as
> authorized or required by the Rules of Professional Conduct or other law.

Even a minimal disclosure is harmful.  In analyzing a similar case where an in-

house counsel brought a claim for harassment and retaliation under Title VII, the Fifth

Circuit found that even when revealing confidential information to a government

whistleblower contact contrary to Rule 1.6, the disclosure itself was sufficient grounds to

justify terminating the in-house counsel.  The court held:

> In sum, although the right to oppose unlawful practices under Title VII is a right
> that, independently, is entitled to great weight in the balancing test, the exercise of

that right in violation of the profession's ethical duties of confidentiality and loyalty simply will not counter the weight of the employer-client's rights and the duty owed to the legal profession.

       We therefore conclude that when an attorney's Title VII right to oppose her employer-client's allegedly discriminatory practices by disclosing confidential information contrary to the ethical obligations of the profession is balanced against her employer-client's right to ethical representation and the profession's interest in assuring the ethical conduct of its members, the employer's and the profession's interests must prevail. Given the obligations to which an attorney agrees when she joins the profession and when she accepts employment, and the importance of the duties of confidentiality and loyalty to the employer-client and to the integrity of the profession, we hold as a matter of law that conduct that breaches the ethical duties of the legal profession is unprotected under Title VII.

*Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 376 (5th Cir. 1998).

On the other hand, the opposing party cannot plausibly claim that barring them from publicly disclosing confidential or privileged information harms them when such obligation is consistent with the law governing their roles. Because none of the Plaintiffs have a right to disclose the University's confidential or privileged information, they will not be harmed if prevented from doing so.

## IV.    THE PUBLIC INTEREST WOULD BE SERVED BY GRANTING INJUCTIVE RELIEF.

Injunctive relief is in the public interest because there is a strong public policy in favor of protecting a client's ability to communicate fully and frankly with its lawyer without fear that such confidential communications will be disclosed to third parties. The comments to the Utah Rules of Professional Conduct note that "[a] fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal information relating to the representation." The comment explains, "This contributes to the trust that is the hallmark of the client-lawyer

relationship. The client is thereby encouraged to seek legal assistance and to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter. The lawyer needs this information to represent the client effectively and, if necessary, to advise the client to refrain from wrongful conduct. " *Id.* The University is a public entity engaged in the public's business and must be able to operate with the legal protections necessary to preserve and continue the attorney-client relationship and the confidentiality of discrimination investigation and compliance.  6.

Indeed, just one month ago, the United States District Court for the Eastern District of Louisiana entered a preliminary injunction enjoining plaintiffs from disclosing or using privileged communications in a lawsuit and ordering plaintiff to amend the complaint "to remove all references and use of such material. " *BCR Safeguard Holding, LLC,* 2013 WL 4434361, * 20 (5th Cir. Aug. 15, 2013), reversed in part on other grounds by *BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc.*, 614 Fed.Appx. 690 (5th Cir. 2015); see also *Baird v. Cutler*, 883 F. Supp. 591, 607 (D. Utah 1995).

## CONCLUSION

This is not a matter where an attorney represented a client on a single issue or narrow scope and now brings a claim related to that limited representation. Ms. Broadbent is the general counsel for the University. Mr. Rasband is the associate general counsel. Ms. Sainsbury is the Title IX Coordinator.  All three Plaintiffs are still employed (although Ms. Broadbent is currently on paid administrative leave). The

University must be able to execute its "legally-mandated" functions under the protections of the attorney-client privilege and that cannot happen while information it discloses to its attorneys in confidence is paraded before the public because those same attorneys have placed it at the center of a lawsuit.  The disclosure of attorney-client communications harms the University and has a chilling effect on University operations. The same is true for disclosure of information obtained as part of the Title IX or policy compliance processes.  Both for the needs of this case and the important work of the University and the community it serves, Utah Tech requests an injunction and temporary restraining order while this case is pending that will, "minimize the impact on the parties and the attorney-client relationship while still affording [Plaintiffs] the appropriate measure of justice."

     RESPECTFULLY SUBMITTED THIS 31st day of December 2024.

<div style="margin-left:40%">

OFFICE OF THE UTAH ATTORNEY GENERAL

/s/ *Daniel R. Widdison*
JAQUALIN FRIEND PETERSON
DARIN B. GOFF
DANIEL R. WIDDISON
Assistant Utah Attorneys General
*Attorneys for Defendant*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 31ˢᵗ day of December, 2024, I electronically filed the foregoing, **SEALED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF AGAINST ALL PLAINTIFFS**, using the Court's electronic filing system, and that all parties registered with the system will be served electronically through the Court's electronic case filing system.

   Lisa R. Petersen
   Amy L.Herrington
   Jolene Summerhays
   COHNE KINGHORN, P.C.
   lpetersen@ck.law
   aherrington@ck.law
   jsummerhays@ck.law

<div align="right"><i>/s/Dustie Ross</i></div>