THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| REBECCA BROADBENT, JARED RASBAND, AND HAZEL SAINSBURY,<br><br>        Plaintiffs,<br><br>v.<br><br>RICHARD "BIFF" WILLIAMS, JORDON SHARP, DEL BEATTY, MICHAEL LACOURSE, HENRIE WALTON, TIFFANY WILSON, UTAH TECH UNIVERSITY, GEOFF LANDWARD, UTAH BOARD OF HIGHER EDUCATION, UTAH SYSTEM OF HIGHER EDUCATION, THE OFFICE OF THE COMMISSIONER OF HIGHER EDUCATION, ALISON ADAMS, ERIC PEDERSEN, MATT BLACK, JYL HALL, JARED MADSEN, STACY SCHMIDT, BROOKE ULRICH, TRAVIS ROSENBERG, and COURTNEY WHITE. JOHN AND JANE DOES I-X<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [33] EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF AGAINST ALL PLAINTIFFS**<br><br>Case No. 4:24-cv-00091-DN<br><br>Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Defendant Utah Tech University ("Utah Tech") filed its Emergency Motion For Temporary Restraining Order And Injunctive Relief Against All Plaintiffs ("Emergency Motion") with a redacted version of the Emergency Motion (and redacted exhibits) on the public record.[1] As provided by DUCivR 5-3, Utah Tech also filed a sealed version of the Emergency Motion and its exhibits.[2] The Emergency Motion seeks sweeping and immediate relief "against Plaintiffs regarding their use and disclosure of Utah Tech's privileged or confidential

---

[1] Docket no. 33 ("33 Redacted Emergency Motion"), filed December 31, 2024.

[2] Docket no. 35 ("35 Sealed Emergency Motion"), filed under seal December 31, 2024.

information."[3] The Emergency Motion is directed to the Complaint,[4] the only pleading[5] on file at

the time of this order. Many related papers have been filed in response to the Emergency

Motion.[6] A status hearing was held Thursday January 2, 2025, to discuss the Emergency Motion

and to schedule briefing and further argument.[7] A hearing on the merits of the Emergency

Motion was held Friday January 17, 2025 ("Hearing").[8]

---

[3] Emergency Motion at 5-6. The pagination of the 33 Redacted Emergency Motion and 35 Sealed Emergency Motion are identical.

[4] Complaint, docket no. 2, filed November 7, 2024. *See also* Exhibits to Plaintiffs' Complaint, docket no. 4, filed November 7, 2024; Plaintiffs' Motion for Leave to File Certain Exhibits Attached to Plaintiffs' Complaint Under Seal, docket no. 5, filed November 7, 2024; and Exhibits A, and B to Plaintiffs' Complaint, docket no. 6, filed under seal November 7, 2024.

[5] Fed. R. Civ. P. 7.

[6] Complaint, docket no. 43, filed January 3, 2025 (Utah Tech's redacted version of Complaint); [Plaintiffs'] Opposition to Defendant Utah Tech University's Motion for Temporary Restraining Order and Injunctive Relief, docket no. 48, filed January 3, 2025 ("Redacted Opposition"); [Plaintiffs'] Opposition to Defendant Utah Tech University's Motion for Temporary Restraining Order and Injunctive Relief, docket no. 50, filed under seal January 3, 2025 ("Sealed Opposition"); [Utah Tech's] Sealed Reply Memorandum in Support of Emergency Motion for Temporary Restraining Order and Injunctive Relief Against All Plaintiffs, docket no. 60, filed January 8, 2025 ("Redacted Reply"); [Utah Tech's] Sealed Reply Memorandum in Support of Emergency Motion for Temporary Restraining Order and Injunctive Relief Against All Plaintiffs, docket no. 65, filed under seal January 8, 2025 ("Sealed Reply") which attached a detailed table of objectionable provisions, context, and alleged duties as docket no. 65-1 ("Utah Tech Table"), filed under seal January 8, 2025; Richard "Biff" Williams, Michael Lacourse, and Eric Pedersen's Memorandum in Support of Utah Tech University's Sealed Motion for Temporary Restraining Order and Injunctive Relief Against All Plaintiffs ("Redacted Williams Memo in Support"), docket no. 69, filed January 8, 2025; Richard "Biff" Williams, Michael Lacourse, and Eric Pedersen's Memorandum in Support of Utah Tech University's Sealed Motion for Temporary Restraining Order and Injunctive Relief Against All Plaintiffs, docket no. 70, filed under seal January 8, 2025 ("Williams Memo in Support"); [Utah Tech's] Supplemental Brief, docket no. 76, filed January 9, 2025; Plaintiffs' Memorandum in Response to Court's Notice Permitting Memorandum Regarding the Crime-Fraud Exception, docket no. 77, filed January 9, 2025; Memorandum on the Intentional Tort Exception to the Attorney-Client Privilege, docket no. 93, filed January 10, 2025; Opposition to Richard "Biff" Williams, Michael Lacourse, and Eric Pedersen's Memorandum in Support of Utah Tech University's Sealed Emergency Motion for Temporary Restraining Order and Injunctive Relief Against All Plaintiffs, docket no. 94, filed January 15, 2024 (redacted public version); [Plaintiffs'] Opposition to Richard "Biff" Williams, Michael Lacourse, and Eric Pedersen's Memorandum in Support of Utah Tech University's Sealed Emergency Motion for Temporary Restraining Order and Injunctive Relief Against All Plaintiffs, docket no. 99, filed under seal January 15, 2025 (sealed version); [Plaintiffs'] Sur-Reply in Opposition to Defendant Utah Tech University's Sealed Reply Memorandum in Support of Emergency Motion for Temporary Restraining Order and Injunctive Relief, docket no. 101, filed January 15, 2025 ("Redacted Sur-Reply"); and  [Plaintiffs'] Sur-Reply in Opposition to Defendant Utah Tech University's Sealed Reply Memorandum in Support of Emergency Motion for Temporary Restraining Order and Injunctive Relief, docket no. 103, filed under seal January 15, 2025 ("Sealed Sur-Reply").

[7] Minute Entry for proceedings held before Judge David Nuffer, docket no. 42, filed January 2, 2025.

[8] Transcript of Hearing January 17, 2025 ("Transcript"), at 4:3-4, 8:14-9:9, docket no. 112, filed February 4, 2025; Minute Entry, docket no. 111, filed January 17, 2025.

As explained more fully below, the Emergency Motion is DENIED. Court records are presumptively open to the public. Utah Tech has failed to meet its burden to overcome that presumption. The public's interest in this case concerning the administration of important federal protections in a public university is significant and Utah Tech has failed to demonstrate the materials it seeks to strike or seal in the Complaint are protected by the bases Utah Tech claims. Utah Tech also fails to carry its required burden to obtain injunctive relief.

## Contents

Nature of the Case ............................................................................................................ 5
Nature of the Motion ........................................................................................................ 5
    Relief Sought ............................................................................................................ 8
    Timing of this Motion ............................................................................................ 11
    Parties and Overview of Complaint ....................................................................... 11
    Summary of Allegations ......................................................................................... 12
Claimed Bases for Protection .......................................................................................... 17
    The Attorney Work-Product Doctrine .................................................................... 17
    The Attorney-Client Privilege ................................................................................ 18
    The Attorney's Duty of Confidentiality ................................................................. 19
    Title IX Confidentiality Provisions ........................................................................ 21
    Utah Tech Policies 154 and 164 ............................................................................. 24
Additional Considerations ............................................................................................... 25
    Court Proceedings are Presumptively Open ........................................................... 25
    Transparency Is Crucial to Maintain Legitimacy of Public Universities ............... 27
    Case Management Considerations .......................................................................... 28
    Waiver of Privilege or Confidentiality ................................................................... 31
Rulings on Privilege and Confidentiality Claims ........................................................... 31
    The Work Product Doctrine Is Not Applicable ...................................................... 32
    The Relationship of Confidentiality, the Attorney-Client Communication Privilege, and the Exception in Rule 1.6(b)(5) ............................................................................. 33
    Utah Tech Has Not Demonstrated the Attorney-Client Privilege Protects Any Material 35
    Rule 1.6(b)(5) Permits Plaintiffs' Disclosure of Confidential Information ..................... 41
    Utah Tech Failed to Show The Title IX Confidentiality Provision is Applicable .......... 45
    Utah Tech Policies 154 and 164 are Inapplicable ................................................. 49
    Public Policy Supports Disclosure Despite Privilege, Title IX Rules, or Utah Tech Policies ................................................................................................................... 50
    Utah Tech's Behavior Supports Waiver of Privilege ............................................. 52
    Individual Defendants Willliams, Lacourse, and Pedersen's Requests for Redactions Are Unsupported ........................................................................................................... 52
    Protection of Third Parties ...................................................................................... 54
    Case Management Considerations Inform the Ordered Protections ........................ 56
    No Protection is Required for Information Disclosed Under Rule 1.6(b)(5) .................. 58
Analysis of Requested Temporary Restraining Order and Injunctive Relief ............................. 61
    Utah Tech Has Not Shown a Substantial Likelihood of Success on the Merits ............... 62
    There is No Irreparable Harm ................................................................................. 62
    The Balancing of Harms Weighs Against Injunctive Relief .................................. 63
    An Injunction is Not in the Public Interest ............................................................ 64
Case Scheduling ............................................................................................................... 64
Order ................................................................................................................................ 65

## NATURE OF THE CASE

The Complaint alleges a breakdown of Title IX and Title VII compliance and processes at Utah Tech, culminating in hostile and illegal actions directed toward the three Plaintiffs, the key individuals responsible for Title IX and Title VII compliance. The Complaint alleges (a) a concerted effort to resist policies and protections of employment laws which Plaintiffs were tasked with training, enforcing, and advising; and (b) illegal treatment of Plaintiffs in violation of those same laws.

## NATURE OF THE MOTION

This Emergency Motion is not an argument about substantive rights or claims. It is an argument about allegations and treatment of evidence of alleged violation of substantive rights. It is preliminary to a long course of discovery, motion practice, and interactions necessary to resolution of the case. Utah Tech seeks imposition of complex procedures throughout the case.[9] The need for a case to be managed in a comprehensible and workable fashion is a factor in this decision.

At this early stage, before any responsive pleading has been filed, the lead defendant (and some other individuals) claim that portions of the Complaint must be struck or kept from public view due to attorneys' obligations of confidentiality; the attorney-client communication privilege; the attorney work product privilege; a Title IX regulation; and two Utah Tech internal policies.[10] Before reaching those issues, it is necessary to review the relief Utah Tech seeks and the nature of the Complaint and Plaintiffs' allegations.

---

[9] Emergency Motion at 5-6.

[10] Reply at 4-5. The pagination of the [60] Redacted Reply and [65] Sealed Reply are identical.

The Emergency Motion is unusual because it seeks preliminary relief under Fed. R. Civ. P. 65 when the movant has no pleading on file and has no claim seeking permanent relief. Instead, the sole focus of the Emergency Motion is to obtain injunctive and other sweeping relief to protect information Utah Tech asserts is improperly included in the Complaint because it is privileged or confidential.[11] Injunctive relief is usually preliminary to a decision on the merits of claims. Striking or sealing information is not a merits claim but a procedural device.

Encyclopedic authority clearly states that an injunction must relate to a claim, and that without a claim, Rule 65 is inapposite:

> An injunction is a form of relief based on the underlying claim, not an independent cause of action. . . . "Injunctive relief" is not a freestanding cause of action to be pleaded separately, but rather is a request for relief to redress other claims asserted by plaintiff. Thus, a plaintiff having no underlying cause of action remaining has no right to seek the remedy of injunctive relief.[12]

Case law concurs: "Injunctive relief is not a cause of action, it is a remedy."[13] Injunctive relief is "not a true claim, but rather merely a request for additional forms of relief predicated on the violations asserted" by other claims.[14] When a Plaintiff "has no underlying cause of action remaining, he has no right to seek the remedy of injunctive relief."[15] Utah Tech admitted at the Hearing that there is no claim underlying the preliminary injunctive relief it requests.[16]

---

[11] Emergency Motion at 5.

[12] 43A C.J.S. Injunctions § 2.

[13] *Thompson v. JPMorgan Chase Bank, N.A.*, 563 F. App'x 440, 442 n.1 (6th Cir. 2014); *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 558 (S.D.N.Y. 2014) ("[I]njunctions are remedies, not causes of action." (Internal quotation marks and citation omitted)); *Burns v. Mac*, No. 13-CV-2109-WJM-KLM, 2014 WL 1242032, at *2 (D. Colo. Mar. 26, 2014).

[14] *MacQuigg v. Albuquerque Pub. Sch. Bd. of Educ.*, No. CV 12-1137 MCA/SCY, 2015 WL 13650030, at *10 (D.N.M. Feb. 6, 2015).

[15] *Long v. Dell, Inc.*, 93 A.3d 988, 1004 (R.I. 2014).

[16] *See* Transcript at 50:2-5 (Court: "I don't see a claim on which I can grant preliminary relief." [Counsel for Utah Tech] Mr. Widdison: "That's correct . . . .").

Earlier, Utah Tech used a different form of motion. Utah Tech filed a Sealed Motion for Privileged Materials Management Order and Protective Order[17] just over one month after the Complaint was filed. That motion was withdrawn December 18, 2024.[18] That earlier claim for a protective order is now the substance of the Emergency Motion.

No case law supports Utah Tech's invocation of injunctive relief procedure in the Emergency Motion as the appropriate avenue for the relief Utah Tech seeks. At the Hearing, Utah Tech could not point to any case law under Rule 65 supporting the Emergency Motion.[19] Utah Tech argued that its basis for the requested relief was a combination of the *lack* of Utah cases expressly saying a party could not pursue injunctive relief for protecting information and the general proposition that courts have many tools to manage and protect privileged materials.[20]

Utah Tech has presented one case, *Spratley v. State Farm Mut. Auto. Ins. Co.*,[21] in which a party sought to seal allegedly privileged material by a preliminary injunction and protective order.[22] But the Utah Supreme Court explained in *Spratley* that because the "trial court's order [did] not appear to comply with the requirements of Rule 65A(d) and (e) of the Utah Rules of Civil Procedure for orders granting preliminary injunctions," the Utah Supreme Court would "treat the order as a protective order."[23]

Because the Emergency Motion invoked Rule 65, this order includes the requisite temporary restraining order and preliminary injunction analysis and standards. But the

---

[17] Docket no. 16, filed December 10, 2024. The motion was filed again to correct filing errors on December 17, 2024, as docket no. 20.

[18] Docket no. 22.

[19] *See generally* Transcript at 48:13-56:12.

[20] Transcript at 53:10-12.

[21] 78 P.3d 603 (UT 2003).

[22] *Id.* at 606 (¶5).

[23] *Id.* at 606 n.1 (¶6).

undergirding focus of this order incorporates protective order principles including the existence of privilege or a duty of confidentiality; exceptions to privilege or confidentiality; waiver of privilege or confidentiality; public right of access; and the justification needed to seal information. These underlying principles are encompassed in the "likely to succeed" merits analysis of a temporary restraining order or preliminary injunction motion. This order also addresses and analyzes the other three elements a movant must show to obtain a temporary restraining order or preliminary injunction.

Even though the form of the Emergency Motion may be improper, the parties agree that resolution of the confidentiality dispute embodied in the Emergency Motion is critical to moving forward.[24] Accordingly, this order addresses the merits of the Emergency Motion, even though a motion for temporary restraining order and preliminary injunction is not the proper way to seek this relief.

### Relief Sought

Defendant Utah Tech seeks sweeping restrictions on Plaintiffs' use of information and on the content of public court records including:

1.      Ordering Plaintiffs to withdraw their Complaint[25] [Doc. 2], or seal it from view of any party other than Utah Tech, and remove (or strike) all references, as identified herein, to Utah Tech's privileged or confidential information;
2.      Ordering a stay on Plaintiffs taking any further action in this litigation, including serving or seeking a waiver of service of their complaint, until this motion for injunctive relief is resolved;
3.      Ordering that during the pendency of this action, prior to making voluntarily disclosures of any potentially privileged or confidential information that Plaintiffs obtained while employed by or representing Utah Tech, they must first give advance notice of the disclosure to Utah Tech and provide Utah Tech a reasonable time to object and take steps to preserve the confidentiality and privileged nature of such information;

---

[24] Transcript at 53:15-56:12.

[25] Docket no. 2, filed November 7, 2024.

      4.      Ordering that all objections made by Plaintiffs related to privilege and confidentiality in connection with intended voluntary disclosures be ruled on exclusively by this Court;

      5.      Ordering [that] any filings or documents which may contain, reveal, or otherwise disclose privileged or confidential information must be filed under seal with limited access, including among the parties to this case who are not already aware of the subject information;

      6.      Ordering Plaintiffs to advise Utah Tech in a sworn statement the identity of any and all individuals or entities to whom they provided copies of the [C]omplaint;

      7.      Enjoining Plaintiffs from disclosing or using Utah Tech's privileged or confidential information without leave of court, at the risk of sanctions up to and including dismissal of this action;

      8.      Enjoining Plaintiffs from conducting discovery into privileged, work product, or confidential material, except as allowed by court order, at the risk of sanctions up to and including dismissal of this action; and

      9.      Any other further relief this Court deems appropriate.[26]

Utah Tech also seeks alternative relief. "In the alternative, if the court does not grant all of the requested relief, Utah Tech University respectfully requests in the alternative [sic] that this court order a stay of any further action in this case and schedule a case management conference."[27]

Additionally, at the Hearing, Utah Tech also suggested that depositions in this case should be attorneys-eyes only and that parties would not be able to listen to each deposition because Utah Tech believes there is a cone of confidentiality that would not extend to all parties for all claims.[28]

Utah Tech has also previously asked that "because th[e] Duty of Confidentiality is so broad," the entire Complaint should be sealed until the Emergency Motion is resolved.[29] Utah Tech maintained this position at the Hearing, explaining that "what [Utah Tech] would like to do is for the plaintiffs to withdraw their complaint, or otherwise move to seal the existing version of

---

[26] Emergency Motion at 5-6.

[27] *Id*. at 6.

[28] Transcript at 23:6-24:13.

[29] Reply, docket no. 65, at 9 n.2.

the Complaint, and that either the Complaint be refiled under seal, or that it be refiled without the references to privileged information . . . ."[30] Utah Tech also appeared to question whether in-house attorneys like the two attorney Plaintiffs could even bring claims such as the discrimination and retaliation claims alleged here.[31] From complicated procedural strictures to entire prevention of this case, Utah Tech seeks broad relief. Utah Tech's requested relief could significantly complicate this litigation.

Utah Tech does not object to the filing of two exhibits to the Complaint without seal[32] or to the filing of two exhibits to the Complaint under seal.[33]

Utah Tech's position about protection of information must be weighed against the general proposition that the "records of the court are presumptively open to the public" and that any sealing of materials must be "narrowly tailored" to information that is "truly deserving of protection."[34] Further, Utah Tech's suggestion of prevention of claims of discrimination and retaliation is inconsistent with the First Amendment right "to petition the Government for a redress of grievances." Utah Tech's requested relief is onerous and unsupported in case law. Beyond the lack of substantive merit to support Utah Tech's proposed relief, the unreasonableness of the broad relief requested is another factor in this decision.

---

[30] Transcript at 14:5-9.

[31] Transcript at 23:9-14 and 24:21-25:14; *see also* Reply at 22 ("The Utah Supreme Court and the many other jurisdictions that have addressed similar situations have consistently held that preservation of the attorney-client confidentiality is a public policy so paramount it is already expressed in the rules governing attorney conduct and can be used to do exactly what Plaintiffs argue cannot happen here: bar their claims.").

[32] Exhibits to Plaintiffs' Complaint, docket no. 4, filed November 7, 2024

[33] Exhibits A and B to Plaintiffs' Complaint, docket no. 6, filed under seal November 7, 2024.

[34] DUCivR 5-3.

## Timing of this Motion

The Complaint was filed November 7, 2024.[35] Roughly one month later, Utah Tech made its first attempt to address this issue by filing its Sealed Motion for Privileged Materials Management Order and Protective Order ("Motion for Protective Order").[36] Utah Tech then sought expedited treatment of the Motion for Protective Order via email to the court, anticipating "some temporary relief while the parties brief and argue the full motion."[37] After this court provided a response to counsel identifying potential deficiencies in the Motion for Protective Order and Utah Tech's informally requested expedited treatment,[38] Utah Tech withdrew the Motion for Protective Order on December 18, 2024.[39] After some filing missteps, Utah Tech properly filed the Emergency Motion December 31, 2024. The only pleading on file currently is the Complaint.

## Parties and Overview of Complaint

Plaintiffs are the General Counsel (Rebecca Broadbent), Senior Associate General Counsel (Jared Rasband), and Director of Equity Compliance and Title IX Coordinator of Utah Tech (Hazel Sainsbury).[40] They each have responsibility for administration of the Office of Equity and Compliance & Title IX ("OEC & TIX").[41] Plaintiffs Broadbent and Rasband are attorneys, but Plaintiff Sainsbury is not an attorney. This is not a typical discrimination or harassment case in which a single employee alleges illegal treatment. It also atypical because the

---

[35] Docket no. 2.

[36] Docket no. 16, filed December 10, 2024.

[37] Docket no. 21, filed December 18, 2024.

[38] *Id.*

[39] Docket no. 22, filed December 18, 2024.

[40] Complaint at 3, ¶¶ 2-4, docket no. 2, filed November 7, 2024.

[41] *Id.*

attorneys are employed, not retained. Older case law and rules dealing with traditional counsel in law firms or other private practice do not always apply.

The Plaintiffs allege that actions by Utah Tech administrators and employees directed at them constitute discrimination and retaliation under Title IX; sex, race, and national origin discrimination under Title VII; sex, race, and national origin-based retaliation under Title VII; and state law tort claims for defamation, placing in a false light, breach of contract, tortious interference with contract, and intentional or negligent infliction of emotional distress. The Complaint contains over 20 pages of general factual allegations in over 70 paragraphs which support 14 additional pages laying out 14 causes of action. Defendants include Utah Tech; associated Utah state higher education organizations involved with Utah Tech administration and many individual defendants. All individual defendants were, at the times alleged, employees of Utah state higher education organizations involved in Utah Tech administration.[42]

### Summary of Allegations[43]

The factual allegations of the Complaint begin by describing the Utah Tech culture (in which Plaintiffs worked) as denigrating the Title IX, Title VII, and OEC activities, beyond specific conduct directed at Plaintiffs:

> 32. For the last several years, Utah Tech has exhibited a culture of hostility in its highest administrative offices toward the protections of Title IX and Title VII.
> 33. Plaintiffs worked hard to establish a discrimination-free environment at Utah Tech. Yet, Plaintiffs received strong pushback, intimidation, discrimination, harassment, abuse, and retaliation in their ongoing attempts to educate Utah Tech leadership about, and to achieve compliance with, University policies regarding discrimination and harassment, including Title IX and Title VII.[44]

---

[42] *Id.* at 3-5, ¶¶ 5-24.

[43] These allegations are taken solely from the Complaint and are only used for context and analysis of the privilege and confidentiality issues raised in the Emergency Motion. This Order does not include any factual findings or analysis of the veracity of the allegations in the Complaint, or address the merits of the claims. Nothing in this Order should be construed as an indication of the viability of the claims in the Complaint.

[44] *Id.* at 7, ¶¶ 32-33.

The Complaint then alleges Defendants' specific conduct toward Plaintiffs that violated federal and state laws protecting Plaintiffs. The allegations also include conduct of some defendants and associates directed at third parties, including "the posting and display in a public break room on campus of highly obscene and vulgar sexual comments . . . ." ( "Post-It Notes Incident")[45] Plaintiffs allege this incident and others involving Utah Tech administrators created "a 'poisoned well' and hostile work environment" for Plaintiffs.[46] Plaintiffs allege subjection to "physical intimidation,"[47] "verbal abuse and harassment,"[48] being "viewed unfavorably,"[49] and being "undermined."[50] Plaintiffs also allege feeling emotionally and physically unsafe in particular interactions or with particular administrators.[51]

Among the allegations, Plaintiffs allege that while Utah Tech "leveraged Sainsbury's [African] race to enhance its image in key public-facing situations"[52] Sainsbury was also subject to negative interactions such as where one defendant in a June 2022 meeting "openly disrespected Sainsbury [and] question[ed] her right to offer input on Title IX matters."[53] This same defendant later wrote an email comparing Sainsbury negatively to a former Utah Tech attorney of color who some Utah Tech officials found "problematic."[54] This email contained "racially charged language . . . reveal[ing] a clear bias against Plaintiff Sainsbury—calling her

---

[45] *Id.* at 7, ¶ 34.

[46] *Id.* at 7, ¶ 35.

[47] *Id.* at 8, ¶ 38.

[48] *Id.* at 9, ¶ 39.

[49] *Id.* at 7, ¶ 34.

[50] *Id.* at 9, ¶ 40.

[51] *Id.* at 9-10, ¶¶ 38-41.

[52] *Id.* at 3, 8, ¶¶ 4, 37.

[53] *Id.* at 9, ¶ 38.

[54] *Id.* at 10, ¶ 42.

'reckless,' 'irresponsible,' 'unpredictable,' and 'malicious.'"[55] Broadbent and Rasband, as Sainsbury's supervisors with their own responsibilities for Title IX compliance, allege they were also affected.[56]

Plaintiffs allege resistance, ridicule, and mocking of Title IX policies,[57] training,[58] and enforcement.[59] And they allege "Utah Tech's pattern of hostile and brazen misconduct, discrimination, harassment, and retaliation by the senior male administrators culminated in a crude, sexual, vulgar, obscene, and damaging display" of two eggplants and a zucchini arranged to resemble male genitalia and "left on the porch of a Utah Tech administrator by the then-sitting



---

[55] *Id.*

[56] *Id.* at 9-10, ¶¶ 39-41.

[57] *Id.* at 10-11, ¶ 44.

[58] *Id.* at 11, ¶ 46.

[59] *Id.* at 11-12, ¶ 47.

[Utah Tech] President Williams." [60] Williams left a letter with the graphic display which "falsely attributed the display to the Plaintiffs."[61]

Plaintiffs allege that incident[62] was followed by wide circulation of the display and continued false attribution to Plaintiffs.[63] Dissemination was broad, including to the Board of Trustees of Utah Tech at a meeting at which many of the University's staff and administration were present.[64]

Plaintiffs allege reports of this incident to Utah Tech's HR director and to Williams were not treated seriously.[65] Williams was dismissive of Plaintiffs' reported concerns about the incidents . . . and attempted to manipulate and silence Plaintiff Broadbent about the incidents by assuring her that Plaintiffs were "loved" and "part of the family."[66] Beyond ignoring Broadbent's complaint about the incident, Williams dismissed Broadbent's concerns that the incident was retaliatory towards the Plaintiffs:

> When Plaintiff Broadbent reported to Williams her belief that the vulgar acts and defamatory dissemination were in retaliation for prior incidents and complaints Plaintiffs made to Williams and Rosenberg about other matters (including Title IX and Equity Compliance issues) involving senior administrators, which had already created a hostile work environment for Plaintiffs, Williams dismissed Plaintiffs' report of retaliation . . . .[67]

The Complaint alleges that Plaintiffs were not provided "a timely and adequate remedial process pursuant to University policy for their Title IX and Title VII complaints of

---

[60] *Id.* at 12, ¶ 48.

[61] *Id.* at 12, ¶¶ 48-49.

[62] *Id.* at 12-13, ¶¶ 48-50.

[63] *Id.* at 13-16, ¶ 53-62.

[64] *Id.* at 15, ¶ 60.

[65] *Id.* at 16-22 ¶¶ 63-80.

[66] *Id.* at 17, ¶ 64.

[67] *Id.* at 17, ¶ 65.

discrimination, sexual harassment, hostile work environment, and retaliation."[68] As an example, "[N]o substitute Title IX Coordinator was provided by Utah Tech to Plaintiffs . . . as required by Title IX and University Policy 154" because Sainsbury could "not serve as Title IX coordinator for a case" where she was "a victim and potential complainant."[69]

 When President Williams resigned from his position, Plaintiffs were told their complaints against Williams were being dismissed for a lack of jurisdiction.[70] "After Plaintiffs insisted that their Title IX complaints against Williams could not legally be dismissed," Alison Adams, Counsel for the Utah Board of Higher Education ("UBHE"), the Utah System of Higher Education ("USHE"), and the Office of the Commissioner of Higher Education ("OCHE"), "claimed she 'misspoke' about those claims being dismissed."[71] Plaintiffs' grievance processes were then outsourced.[72] Plaintiffs allege that those processes then became shams.[73] Plaintiffs allege Defendants "failed to take any action . . . concerning Plaintiffs' Formal Grievances against Sharp, Beatty, Walton, Lacourse, and Pedersen" which perpetuated the hostile work environment, defamation, and retaliation.[74] In Plaintiffs' view, "[n]othing about Utah Tech's and USHE's, UBHE's, and OCHE's responses to Plaintiffs' reported concerns and formal complaints resemble[d] the appropriate Title IX process . . . ."[75]

---

[68] *Id.* at 18, ¶ 68.

[69] *Id.* at 18-19, ¶ 71.

[70] *Id.* at 22, ¶ 80.

[71] *Id.* at 22, ¶ 80.

[72] *Id.* at 29, ¶ 103.

[73] *Id.* at 22, 29-30, ¶¶ 80, 103-104.

[74] *Id.* at 22, ¶ 81.

[75] *Id.* at 30, ¶ 104.

Plaintiffs also allege further retaliatory action. Broadbent was placed on involuntary administrative leave;[76] barred from campus without written approval to enter;[77] and escorted across campus[78] after surrendering "her University-issued laptop, ID/building access card, office keys, and purchasing card . . . ."[79] Plaintiffs allege Broadbent is excluded from professional development and university functions,[80] and her inquiries and request to return have been met with silence.[81] Rasband and Sainsbury, who remain on campus, also complain of retaliatory actions.[82]

## CLAIMED BASES FOR PROTECTION

Utah Tech has referenced several bases for the relief it seeks in the Emergency Motion and Reply including the attorney work-product doctrine; the attorney client privilege, the duty of confidentiality; statutory provisions of Title IX; and Utah Tech internal policies.[83] Utah Tech bears the burden of justifying each protection it proposes. This section of the order will examine each claimed protection in turn. A later section will examine the application of each claimed protection.

### The Attorney Work-Product Doctrine

The work-product doctrine protects the adversarial justice system "by shielding litigants' work-product from their opponents, and thus free[s] lawyers to create such materials without fear

---

[76] *Id.* at 23, ¶ 83.

[77] *Id.* at 23, ¶ 84.

[78] *Id.* at 23-24, ¶ 86.

[79] *Id.* at 24, ¶ 88

[80] *Id.* at 27, ¶ 98

[81] *Id.* at 27, ¶ 97.

[82] *Id.* at 28-29, ¶¶ 100-102.

[83] Emergency Motion at 11-20; Reply at 4-5.

of discovery and exploitation."[84] The doctrine "shelter[s] the mental processes of the attorney," and "prevents disclosure of information that was prepared by the attorney in anticipation of litigation or for trial."[85] "The party asserting work product privilege has the burden of showing the applicability . . . ."[86]

### The Attorney-Client Privilege

"The attorney-client privilege protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in [her or] his capacity as a legal advisor."[87] Consistent with this formulation, the Restatement provides that "the attorney-client privilege may be invoked" when four elements are present: "(1) a communication; (2) made between privileged persons; (3) in confidence; (4) for the purpose of obtaining or providing legal assistance for the client."[88] The attorney-client privilege "must be strictly constructed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth."[89]

The "mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege."[90] "The party asserting the attorney-client privilege has the burden of establishing the relationship and the privileged nature

---

[84] *In re Grand Jury Proc.*, 616 F.3d 1172, 1184 (10th Cir. 2010) (cleaned up).

[85] *Id.*

[86] *In re Grand Jury Proc.*, 156 F.3d 1038, 1042 (10th Cir. 1998).

[87] *In re Grand Jury Proc.*, 616 F.3d 1172, 1182 (10th Cir. 2010) (internal quotation marks and citations omitted).

[88] Restatement (Third) of the Law Governing Lawyers § 68 (2000):

[89] *In re Grand Jury*, 616 F.3d at 1181 (cleaned up) (citation omitted).

[90] *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550–51 (10th Cir. 1995).

of the communication."[91] The party asserting attorney-client privilege "must bear the burden as to specific questions or documents, not by making a blanket claim."[92]

### The Attorney's Duty of Confidentiality

Attorneys that practice in this district are required to "comply with the local rules of practice" and the "Utah Rules of Professional Conduct" among other requirements.[93] Utah Rule of Professional Conduct 1.6 ("Rule 1.6") describes a duty of confidentiality of information. It provides that a "lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is" a permitted exception.[94] One of the enumerated exceptions listed in Rule 1.6 allows a lawyer to "reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary: . . . *to establish a claim or defense* on behalf of the lawyer in a controversy between the lawyer and the client . . . ."[95]

The Utah Supreme Court addressed this exception to the duty of confidentiality in S*pratley v. State Farm Mutual Auto. Insurance. Co.*[96] In *Spratley,* two former attorneys for State Farm resigned their employment over ethical concerns and later sued State Farm.[97] After a motion by State Farm, the trial court ordered the former attorneys to: (1) refrain from disclosing, in litigation or otherwise, confidential communications and information exchanged between the

---

[91] *In re Google Inc.*, 462 F. App'x 975, 977 (Fed. Cir. 2012).

[92] *Id.* at 1183 (quoting *In re Foster*, 188 F.3d 1259, 1264 (10th Cir.1999)).

[93] DUCivR 83-1.2(a)(1).

[94] Utah R. Prof. Cond. 1.6. The exceptions to the duty of confidentiality for attorney-client disputes have been significantly broadened since the 1969 ABA Model Code of Professional Responsibility DR 4-101 which only permitted disclosures in fee collection or malpractice suits.

[95] Utah R. Prof. Cond. 1.6(b)(5) (emphasis added).

[96] 78 P.3d 603 (UT 2003).

[97] *Id.* at 605.

former attorneys and either State Farm or State Farm's insureds related to legal representation of State Farm or its insureds; (2) refrain from disclosing any facts about State Farm's insureds; and (3) to return all confidential documents and information in the former attorneys possession.[98] The trial court also disqualified counsel for the former attorneys.[99] The Utah Supreme Court noted the attorney-client relationship existed in two settings: between the former attorneys and State Farm on the one hand, and between the former attorneys and the insureds on another hand.[100]

The *Spratley* Court discussed the exception to Rule 1.6 for "disclosure" necessary to establish a claim and determined that a suit for wrongful discharge by the former attorneys was plainly a claim that triggered the exception to Rule 1.6.[101] The *Spratley* Court adopted "a literal interpretation of Rule 1.6 that permits revelations of confidential client information . . . ."[102]

The *Spratley* court held that the former attorneys could "disclose matters relating to their representation of State Farm, so long as those disclosures are reasonably necessary to that claim."[103] However, because the former attorneys had no dispute with the insureds, the *Spratley* Court found the confidences of the insureds could only be used with the insureds' consent, consistent with Rule 1.6.[104] The Utah Supreme Court also found that information about the insureds that did not reveal identities, such as generic summaries or statistical information, might

---

[98] *Id.* at 606.

[99] *Id.*

[100] *Id.* at 607.

[101] *Id.* at 608-609.

[102] *Id.* at 609.

[103] *Id.* at 610.

[104] *Id.*

be permissible to disclose.[105] The former attorneys were also permitted to retain copies of documents related to the representation of State Farm, though not the original file.[106] The Utah Supreme Court also reversed the disqualification of the former attorneys' counsel.

The *Spratley* Court noted that trial courts may employ tools including protective orders, sealing, restrictions on testimony, and the trial court's inherent authority to govern proceedings as a sufficient safeguard against overbroad or unwarranted disclosure.[107] However, other than protecting the information of insureds (who were not parties to the case) the *Spratley* Court did not order any limitations on confidential information that might support the former attorneys' claims.

### Title IX Confidentiality Provisions

Utah Tech argues that matters under the purview of the Title IX and OEC are subject to confidentiality and non-disclosure and that Plaintiff Sainsbury, as Title IX Coordinator, is bound to keep information learned in the course of her duties confidential.[108] Utah Tech cites to a Title IX regulation for support.[109]

The Title IX regulation directs that a "recipient must not disclose personally identifiable information obtained in the course of complying with [Title IX], except" in limited circumstances.[110] The exceptions to confidentiality include disclosures made to "carry out the purposes of [Title IX], including action taken to address conduct that reasonably may constitute

---

[105] *Id.*

[106] *Id.* at 611.

[107] *Id.* at 610.

[108] Emergency Motion at 18-19.

[109] *Id.*

[110] 34 C.F.R. § 106.44(j).

sex discrimination under Title IX in the recipient's education program or activity . . . ."[111]

Another exception permits "disclosures . . . not otherwise in conflict with Title IX . . . when

permitted under FERPA . . . or its implementing regulations, 34 CFR part 99."[112] Under FERPA

when an institution brings or defends a suit against a parent or student, "the educational agency

or institution may disclose to the court, without a court order or subpoena, the education records

of the student that are relevant for the educational agency or institution to proceed with the legal

action . . . ."[113]

> Title IX regulations define recipient as:
>
> any State or political subdivision thereof, or any instrumentality of a State or
> political subdivision thereof, any public or private agency, institution, or
> organization, or other entity, or any person, to whom Federal financial assistance
> is extended directly or through another recipient and which operates an education
> program or activity which receives such assistance, including any subunit,
> successor, assignee, or transferee thereof.[114]

While it is clear that Utah Tech is a recipient under this provision, no one presented authority

that any of the Plaintiffs are "recipients" under these regulations or are bound by the

confidentiality provisions.

The First Circuit addressed some Title IX confidentiality concerns in a case where a Title

IX respondent for an alleged non-consensual sexual encounter later sued the university in *Doe v.

Massachusetts Inst. of Tech.*[115] In *Doe*, the Plaintiff was a respondent to a Title IX complaint and

sought to proceed under a pseudonym in later federal court proceedings brought against the

university, arguing that "pseudonymity is appropriate because the underlying disciplinary

---

[111] *Id.*

[112] *Id.*

[113] 34 C.F.R. § 99.31.

[114] 34 C.F.R § 106.2.

[115] *Doe v. Massachusetts Inst. of Tech.*, 46 F.4th 61, 74 (1st Cir. 2022).

proceeding, brought under Title IX of the Education Amendments of 1972 . . . was conducted confidentially, and [plaintiff] has since kept his participation in it on the downlow."[116]

The *Doe* court referenced an old version of Title IX's regulations that required universities to "keep confidential the identity of any individual who has made a report or complaint of sex discrimination, including . . . any individual who has been reported to be the perpetrator of sex discrimination" subject to a few exceptions.[117] (This confidentiality provision has been reworked and was moved in the Title IX Regulation to 34 C.F.R. § 106.44(j) as quoted previously.) The newer regulation does not include language about complainant or respondent to a Title IX complaint and instead requires schools to keep confidential "personally identifiable information obtained in the court of complying with [Title IX] . . . ."[118] The Final Rule enacted by the Department of Education was accompanied by discussion noting that "an allegation that a specific person experienced or engaged in sex-based harassment" is considered highly sensitive personal information.[119]

The *Doe* court further explained that Title IX does not impose "a gag order on individual participants. The schools, not the students or witnesses, are regulated."[120] Importantly, the *Doe* court explained that "[o]f course, FERPA and Title IX govern the conduct of schools — not judicial decisions concerning the extent of public access to information on the court's docket.

---

[116] *Id.*

[117] *Id.* at 74 (quoting former version at 34 C.F.R. § 106.71).

[118] 34 C.F.R. § 106.44(j).

[119] Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 89 FR 33474-01, 2024 WL 1833438 at *33621 (April 29, 2024) (Section "10. Section 106.44(j) Prohibited Disclosures of Personally Identifiable Information").

[120] *Doe*, 46 F.4th at 75.

But courts cannot ignore the background confidentiality regime in assessing the circumstances relevant to a request for pseudonymity."[121]

The *Doe* court then remanded the case to the district court to:

> consider any additional arguments by the parties as to whether the confidentiality requirements of FERPA and Title IX have weight with respect to John's particular situation. If the court determines that FERPA or Title IX continue to protect John's identity as a respondent in the underlying disciplinary proceedings, it should then balance all the relevant circumstances to determine whether compelling John to reveal his name in this case would undermine the federal confidentiality protections to the point of outweighing the public's interest in transparency.[122]

*Doe* is instructive. While the Title IX confidentiality provisions are not controlling in this proceeding in federal court, they provide additional background context in weighing the public interest in open records against Utah Tech's desire for confidentiality.

### Utah Tech Policies 154 and 164

Utah Tech also argues that two internal policies make information in the Complaint confidential. Utah Tech Policy 154 implements Title IX at Utah Tech. It states that Utah Tech will promptly address and resolve all Title IX incidents of Sex-Based Discrimination, Sexual Harassment, and Retaliation . . . ."[123] Policy 154 defines and prohibits Sex-Based Discrimination, Sexual Harassment, and Retaliation . . . ; details how to report a violation . . . ; describes . . . resources and supportive measures . . . ; and outlines procedures for addressing a reported violation . . . ."[124] Policy 154 provides that except for statutorily-permitted disclosures and when "conducting any investigation, hearing, or *judicial proceeding* arising under Title IX," Utah Tech "keeps confidential the identity of any individual who makes a report of Sex-Based

---

[121] *Id.* at 76.

[122] *Id.* at 77.

[123] Utah Tech Policy 154 § 1.1, docket no. 48-3, filed January 3, 2025, at 1.

[124] *Id.* §1.2 at 1.

Discrimination, Sexual Harassment, or Retaliation, including any individual who has filed a Formal Complaint, any Complainant, any individual reported to be in violation of Policy 154, any Respondent, and any witness."[125]

Utah Tech Policy 164 covers "Protected Class and Non-Title IX Discrimination, Harassment, Sexual Harassment and Retaliation.[126] Similar to Policy 154, Policy 164 provides that except for statutorily permitted disclosures and when "conducting any investigation, meeting, or *judicial proceeding* arising under Policy 164, the University keeps confidential the identity of any individual who makes a report of Protected Class or Non-Title IX Discrimination, Harassment, Sexual Harassment, or Retaliation, including any individual who has filed a Complaint, any Complainant, any individual who has been reported to be in violation of Policy 164, any Respondent, and any Witness."[127]

## ADDITIONAL CONSIDERATIONS

### Court Proceedings are Presumptively Open

"The records of the court are presumptively open to the public."[128] Federal Rule of Civil Procedure 43 requires that "[a]t trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise."[129] The common law and the First Amendment to the US Constitution afford the public a qualified right of access to judicial records and proceedings.[130]

---

[125] *Id.*§ 4.7.10.2 at 15 (emphasis added).

[126] Utah Tech Policy 164, docket no. 48-4, filed January 3, 2025, at 2.

[127] *Id.* § 4.9.2 at 16 (emphasis added).

[128] *M.M. v. Zavaras*, 139 F.3d 798, 800 (10th Cir. 1998).

[129] Fed. R. Civ. P. 43.

[130] *McWilliams v. Dinapoli*, 40 F.4th 1118, 1130 (10th Cir. 2022), *see also Courthouse News Serv. v. Planet,* 947 F.3d 581, 591 (9th Cir. 2020).

The right of access to open court proceedings "is fundamental to the democratic state and preserves the integrity of the law enforcement and judicial processes by allowing the public to see how courts make their decisions."[131] The right is so strong that, depending on the Circuit, interlocutory or mandamus review is provided for orders directing or denying case, document or information sealing.[132]

Public performance of the judicial function is essential to the rule of law. Public access to judicial cases and disputes makes courts accountable, fosters public confidence in the courts and judicial processes, and makes clear the legal consequences of behaviors and choices.

DUCivR 5-3(a)(1) provides:

The records of the court are presumptively open to the public. The sealing of pleadings, motions, memoranda, exhibits, and other documents or portions thereof (Documents) is highly discouraged. Unless restricted by statute or court order, the public will have access to all Documents filed with the court and to all court proceedings.

Additionally, a "party seeking to seal a judicial record must show some significant interest that outweighs the public interest in access to the records."[133] "This burden is heavy, and sealing is appropriate only when the interest in confidentiality is real and substantial."[134] The presumption of open courts in this case is particularly significant given the allegations concern a public university and the handling of Title IX and Title VII matters. This factor supports keeping the records and proceedings open in this matter.

---

[131] *McWilliams*, 40 F.4th at 1130 (cleaned up with quotation marks and citation omitted).

[132] *See Raiser v. Church of Jesus Christ of Latter-Day Saints,* 182 F. App'x 810, 811 n.1 (10th Cir. 2006) (noting that in similar matter of proceeding by pseudonym, "this [appellate] court has jurisdiction over an interlocutory order denying a motion to proceed under a pseudonym under the collateral order doctrine.").

[133] *McWilliams v. Dinapoli*, 40 F.4th 1118, 1130 (10th Cir. 2022) (cleaned up) (quoting *Helm v. Kansas,* 656 F.3d 1277, 1292 (10th Cir. 2011)).

[134] *McWilliams*, 40 F.4th at 1130–31.

## Transparency Is Crucial to Maintain Legitimacy of Public Universities

Utah Tech is a public institution and the allegations in the Complaint allege a significant breakdown in the administration of important statutorily protected rights regarding discrimination and harassment. "[T]ransparency is crucial to the legitimacy of a public institution."[135] Courts have differentiated between the need to protect confidences of students in contrast with the need to protect the public's interest in the operation of a public institution. As explained in the District of Montana in a Title IX related case:

> [W]hile there may be good reasons to keep secret the names of students involved in a University disciplinary proceeding, the Court can conceive of no compelling justification to keep secret the manner in which the University deals with those students. Although the University has not explicitly argued that unsealing the file will do harm to the official reputation of any University personnel, such a concern is an insufficient legal basis to justify sealing this case in any event.[136]

The Montana district court continued that the "long-standing approach of the federal courts is to reject secret proceedings. . . . The principle of openness in the conduct of the business of public institutions is all the more important here, where the subject matter of the litigation is a challenge to the administrative disciplinary process of a state university."[137] Other courts have noted the public's interest in matters that are covered by Title IX.[138]

There is (or should be) significant public interest in the subject matter of the Complaint because Utah Tech is a public institution. That public interest should be considered in this decision.

---

[135] *Pasiak v. Onondaga Cmty. Coll.*, No. 616CV1376TJMTWD, 2020 WL 2781616, at *6 (N.D.N.Y. May 29, 2020).

[136] *Doe v. Univ. of Montana*, No. CV 12-77-M-DLC, 2012 WL 2416481, at *3 (D. Mont. June 26, 2012).

[137] *Id.* at *4.

[138] *Qayumi v. Duke Univ.*, No. 1:16-CV-1038, 2018 WL 2025664, at *3 (M.D.N.C. May 1, 2018) ("There is intense and legitimate public interest in the systematic mistreatment of women and how various entities—including universities—address allegations of sexual assault.").

## Case Management Considerations

There are also case management considerations. Utah Tech has said "that because th[e] duty of confidentiality is so broad . . . Utah Tech asked the entire complaint be sealed until this [Emergency] Motion is resolved."[139] At the hearing, Utah Tech explained that the idea of the Emergency Motion is that "[Utah Tech] would like . . . for the plaintiffs to withdraw their complaint, or otherwise move to seal the existing version of the complaint, and that either the complaint be refiled under seal, or that it be refiled without the references to the privileged information and that that will be the operative complaint moving forward."[140] At the hearing Utah Tech also said it seeks that Plaintiffs "must first give advance notice of the disclosure to Utah Tech and provide Utah Tech a reasonable time to object and take steps to preserve the confidentiality and privileged nature of such information."[141] Utah Tech seeks depositions that are attorneys-eyes only where the parties would not even be able to review transcripts, and potentially splitting depositions for different defendants and different claims.[142] At the Hearing, Utah Tech could provide no authority supporting such relief.[143] In a status hearing January 2, 2025, Utah Tech suggested that certain parties should be excluded from argument on the Emergency Motion.

Its Emergency Motion has proposed stringent and burdensome limitations on the dissemination of evidence in the progress of the case, including a preliminary right to review Plaintiffs' filings.[144] Restrictions of the type proposed by Utah Tech on this motion could apply

---

[139] Reply at 9 n.2.

[140] Transcript 14:3-14:10.

[141] Transcript 17:2-17:6.

[142] Transcript 23:6-24:13.

[143] Transcript 24:14-24:18.

[144] Emergency Motion at 5-6.

to every filing and every action in discovery, and would divert the focus and energies of this litigation into collateral disputes.

The challenge of case management is illustrated by Utah Tech's failures to consistently redact or object to materials in the filings. If Utah Tech cannot be consistent in applying its requested standards, those standards are not workable. As an interim order stated, "the designations of material Utah Tech seeks to seal are reflected differently in the 33 Redacted Emergency Motion than in the 35 Sealed Emergency Motion. The redactions in the publicly filed 33 Redacted Emergency Motion are apparently a mistake and overinclusive compared to the highlights of Utah Tech's proposed redactions in the 35 Sealed Emergency."[145] The Utah Tech over-redactions included whole pages of material in the public Emergency Motion when only small portions of the material were redacted in the sealed Emergency Motion.[146] Also, every page of the Complaint attached to the public version of the Emergency Motion was watermarked "Privileged."[147]

Utah Tech has also demonstrated how challenging case administration would be by failing to take proper care in seeking redactions. For example, Utah Tech highlighting proposed redaction of two instances of the name which appears four times in Paragraph 45 below, but Utah Tech provided no context in the Emergency Motion and objected to only two appearances of the name while failing to object to two other appearances of the same name in the same paragraph. In so doing, Utah Tech waived its objection.

---

[145] Memorandum Decision and Order Granting in Part and Denying in Part [34] Motion for Leave to File Document Under Seal, docket no. 39, filed January 1, 2025.

[146] *Compare* docket no. 33 with docket no. 35.

[147] Docket no. 33-1, filed December 31, 2024.

45.   Additionally, the University failed to protect Sainsbury when former Title IX respondent and dean, Kyle Wells, who was dissatisfied with the outcome of his case, began petitioning the Utah Attorney General's office for recourse against Sainsbury. Although Wells never formally appealed the actions or findings in his case, the University allowed him to attempt to undermine Sainsbury's professional standing by seeking adverse action against her. The University also failed to provide her with adequate support or protection, including addressing Wells' actions, which seemed retaliatory in nature. They did not prevent Wells from defaming Sainsbury both internally within the University and externally, and she was not informed of or supported through these ongoing attempts to undermine her credibility and role as a Title IX Coordinator.

In the Reply, Utah Tech included an email from Plaintiff Sainsbury to the head of Human Resources about the Post-It Notes Incident.[148] Utah Tech redacted the entire email. But there is nothing in the email that refers to any specific individual as would run afoul of Title IX confidentiality provisions, and the email is not from an attorney to a client seeking legal advice as would justify protection as being attorney-client privileged.

From: Hazel Sainsbury
Sent: Monday, September 20, 2021 5:25 PM
To: Travis Rosenberg <Travis.Rosenberg@dixie.edu>
Subject: UMAC Quote Wall Incident Report

Hi Travis,

I've reviewed complaint about the UMAC Quote Wall and made contact with all the individuals that we know of would have possibly been impacted by the report. We have not identified any individuals that alleged harm so TIX Policy 154 would not be impacted at this time. With that, I'd like to refer the matter to your office for review of HR policies. I'll need to share with you all the information related to the intake that was done by my office, do you have a preferred secure way? If a thumb drive is best, is there a good time to drop off a thumb drive with this information to you tomorrow?

I'm happy to walk it over to HR. Please let me know if you have any questions.

HS

---

[148] Reply at 18.

And Utah Tech did not object to a general description of the Post-It Notes Incident in the Complaint.[149]

Utah Tech's best but insufficient efforts in these proceedings thus far require careful view of the onerous relief Utah Tech seeks.

### Waiver of Privilege or Confidentiality

A party seeking to maintain privilege must maintain confidentiality of the substance of the protected information.[150] If "the client discloses the substance of an otherwise privileged communication to a third party," the "attorney-client privilege is lost."[151] The "confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived."[152] "Any voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege."[153] When evaluating inadvertent disclosures of privileged materials, the "the time taken to rectify the error" is a factor considered in determining whether waiver has occurred.[154] Waiting as little as six weeks in an inadvertent disclosure case can be enough to weigh in favor of waiver.[155]

### RULINGS ON PRIVILEGE AND CONFIDENTIALITY CLAIMS

According to Utah Tech, several standards require "emergency injunctive relief to address the disclosure and use of privileged, confidential, or private information in this action."[156] The standards Utah Tech has referenced include (1) the attorney work product

---

[149] Docket no. 43, at 7 ¶ 34, filed January 3, 2025.

[150] *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006).

[151] *Id.* (quoting *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir.1990)).

[152] *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir. 1990).

[153] *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d at 1185.

[154] *Walker v. 300 S. Main, LLC*, No. 2:05-CV-442 TS, 2007 WL 3088097, at *1 (D. Utah Oct. 22, 2007).

[155] See *United States v. Ary*, 518 F.3d 775, 785 (10th Cir. 2008).

[156] Emergency Motion at 7.

privilege; (2) the attorney-client communication privilege; (3) the attorneys' duty of confidentiality; (4) the confidentiality requirements of Title IX,[157] and (5) Utah Tech internal policies 164 and 154.[158] As the movant seeking to assert these protections and privileges, Utah Tech has the burden to demonstrate entitlement to relief. "The burden of establishing the applicability of a privilege rests on the party seeking to assert it."[159] This burden applies to assertions of the work product privilege and the attorney-client privilege.[160] Likewise, the "party seeking to overcome the presumption of public access to the documents bears the burden of showing some significant interest that outweighs the presumption," and a "party seeking to keep records sealed bears the burden of justifying that secrecy . . . ."[161]

Utah Tech has failed to meet its burden. None of the contents of the Complaint are actually eligible for protection under the five standards Utah Tech advances. And further, case management and public policy considerations require that no protection be afforded.

### The Work Product Doctrine Is Not Applicable

Utah Tech has not met its burden to show any information in or attached to the Complaint is protected by the work product doctrine. Even though Utah Tech mentions the attorney work-product doctrine in the Emergency Motion and offers that "information protected by the attorney-client privilege or work product protections are treated the same,"[162] Utah Tech

---

[157] While Utah Tech mentions Title VII, Utah Tech identifies no provisions of Title VII that are applicable here. Because Utah Tech's references to Title VII are only superficial, this order focuses on Utah Tech's Title IX arguments.

[158] Reply at 9-10.

[159] *Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, to Custodian of Recs.*, 697 F.2d 277, 279 (10th Cir. 1983).

[160] *In re Grand Jury Proc.*, 616 F.3d 1172, 1183-85 (10th Cir. 2010) (cleaned up) (citation omitted).

[161] *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013).

[162] Emergency Motion at 5 n.1.

does not address the doctrine substantively. In the Reply, Utah Tech does not add any substantive discussion of work product protections.[163] At the Hearing, Utah Tech conceded its lack of substantive argument supporting work-product protection and explained that "most of the work product arguments [Utah Tech] made were subsumed in the privilege arguments . . . ."[164] Utah Tech has failed to meet its burden to obtain any relief based on the work product doctrine.

### The Relationship of Confidentiality, the Attorney-Client Communication Privilege, and the Exception in Rule 1.6(b)(5)

In its Reply, Utah Tech devoted substantial effort to establish that "the lawyer's Duty of Confidentiality goes beyond the evidentiary privilege . . . ."[165] This argument attempted to show that even though Rule 1.6(b)(5) permitted Plaintiffs to disclose information, a residual confidentiality obligation justified court sealing of disclosed material.

Utah Tech prominently relied on a Connecticut case[166] which applied New York law based on the old DR-4-101,[167] the predecessor to current Rule 1.6, which limited disclosure to what was "necessary to establish or collect the lawyer's fee or to defend the lawyer . . . against an accusation of wrongful conduct."[168] That case is irrelevant.

Utah Tech also relied on *Pang v. International Document Services*.[169] *Pang* affirmed dismissal of a wrongful termination complaint by a former in-house counsel. The termination,

---

[163] Reply at 8.

[164] Transcript 93:18-24.

[165] Reply at 15.

[166] *Paul E. O'Brien, v. Stolt-Nielsen Transportation Group Ltd and Samuel Cooperman.*, No. X08CV020190051, 2004 WL 4967509 (Conn. Super. Jan. 30, 2004).

[167] *See* fn. 94, supra at 19.

[168] *Id.* in Part II, Discussion.

[169] *Pang v. International Document Services*, 356 P.3d 1190 (Utah 2015). *See* Reply references at 2, 15, 17, 20, and 22.

the lawyer alleged, was based on a violation of public policy. The Utah Supreme Court held that the Rule of Professional Conduct (not at issue in this case) did not "constitute a clear and substantial public policy that prevents the termination of an at-will employee."[170] This case does not allege wrongful termination based on an insubstantial public policy. None of Plaintiffs' causes of action depend on public policy.

In attempting to argue that *confidentiality* prevents disclosure of information relevant in this dispute, Utah Tech seemingly ignores that Rule 1.6 regulates the "Confidentiality of Information." It defines the very broad duty that "[a] lawyer shall not reveal information relating to the representation of a client . . . ."[171] But Utah Tech skips over the effect of the plainly stated exception, applicable here, that "[a] lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary . . . to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client . . . ."[172] Utah Tech appears to think that even if the exception applies, the information somehow remains confidential or requires sealing, arguing that "the Duty of Confidentiality requires the court to either dismiss the case entirely or allow the case to proceed in a manner that protects and preserves the confidentiality and shields it from unnecessary disclosure." [173] But the exception to the rule of confidentiality removes the information from *being confidential* and thereby removes all the protections associated with confidential information. In a lawyer-client dispute, confidential information reasonably necessary to adjudication becomes regular, ordinary

---

[170] *Pang,* 356 P.3d at 1193, 1197-1204.

[171] Rule 1.6(a)

[172] Rule 1.6(b)(5).

[173] Reply at 17.

information entitled to no confidentiality protections. The "claim or defense" exception to Rule 1.6 eviscerates Utah Tech's argument that confidentiality requires sealing.

**Utah Tech Has Not Demonstrated the Attorney-Client Privilege Protects Any Material**

Utah Tech argues that the Complaint contains multiple statements that are protected responses to legal advice.[174] In support, Utah Tech cites to *Oasis International Waters, Inc.*, *v. United States*.[175] Utah Tech failed to include this authority in the Emergency Motion or the Reply and instead included it for the first time in a table attached to the Reply as an exhibit without any substantive explanation, argument, or analysis of its application to this case.[176] Utah Tech summarizes the case as holding "[t]he client's response to legal advice is a protected communication by the client to the lawyer."[177] That is not what the case holds.

In *Oasis*, the Court of Federal Claims explained that some materials were privileged because they represented "requests for legal advice and . . . Legal's responses to defendant's internal requests for legal advice."[178] A key example was a sentence that began, "[t]o accomplish this" and continued to describe specific actions recommended by counsel in the previous redacted sentence.

The *Oasis* opinion accurately identified the problem: "This summary of actions taken in response to the recommendation in the first sentence in the passage proposed for redaction indirectly reveals the substance of that recommendation . . . ."[179] *Oasis* cited several cases

---

[174] Utah Tech Table, docket no. 65-1, filed January 8, 2025 (arguing material in paragraphs 33, 34, 38, 43, 46, 47, 65, 112, and 114 contain protected client responses to legal advice).

[175] 110 Fed. Cl. 87 (2013).

[176] *See e.g.* Utah Tech Table, docket no 65-1, filed January 8, 2025.

[177] *Id.*

[178] *Oasis Int'l Waters, Inc. v. United States*, 110 Fed. Cl. 87, 105 (2013).

[179] *Id.* at 103.

holding that *summaries* of advice were privileged. In contrast, the *Oasis* court also found some materials it reviewed were "not privileged because they neither directly nor indirectly reveal *the substance* of a request for legal advice or *the substance* of the advice given."[180] *Oasis* does not hold that responses to advice are privileged – unless they reveal the substance of the advice.

*Oasis* cites *SCM Corp. v. Xerox Corp.*[181] which illustrates that not all responses to legal advice are privileged. *SCM* held that "when a deponent answered a question about his reasons by saying that he was only relying on his attorney's legal advice, that answer is a sufficient response" and did not waive privilege. "Communications by the attorney to the client in the consultation process are privileged when they state or imply facts communicated to the attorney in confidence."[182] But a response that advice was followed – or impliedly, not followed – does not impinge on the privilege.

The materials Utah Tech points to as 'privileged responses to legal advice' do not reveal the substance of legal advice requested or given. As an example, Utah Tech argues that the use of the term "strong pushback" in paragraph 33 of the Complaint reveals attorney-client privileged information. For context, paragraph 33 reads:

> Plaintiffs worked hard to establish a discrimination-free environment at Utah Tech. Yet, Plaintiffs received ***strong pushback***, intimidation, discrimination, harassment, abuse, and retaliation in their ongoing attempts to educate Utah Tech leadership about, and to achieve compliance with, University policies regarding discrimination and harassment, including Title IX and Title VII.[183]

Nothing about the term "strong pushback" directly or indirectly points to the substance of legal advice requested or given. This generic phrase does not reveal what advice the attorney provided

---

[180] *Id.* at 105 (emphasis added).

[181] 70 F.R.D. 508 (D. Conn. 1976).

[182] *Id.* at 516.

[183] Complaint, docket no. 2, at 7, ¶ 33 (emphasis added).

or reveal any particular action directed by the attorney nor any action disregarded by the client. If any response was protected – regardless of revealing content – punching an attorney in response to advice would be privileged.

Additionally, this allegation does not indicate the parties involved or the context that indicates it is a reference to any particular communication. Utah Tech has not provided any evidence to the contrary. Utah Tech has not met its burden to show this phrase reveals specific communications, made in confidence, to Plaintiffs Broadbent and Rasband operating in their legal capacity, and for the purpose of obtaining legal advice.

Another example of a requested redaction is in paragraph 38 of the Complaint.

>    38.  Sainsbury's experiences with certain University leadership figures, particularly Lacourse, reflect a pattern of marginalization. At Williams' request, Plaintiff Broadbent asked Plaintiffs Rasband and Sainsbury o provide Lacourse with a "heads up" concerning a course of action determined for a Title VII matter being processed by the OEC and TIX. During that meeting, Lacourse openly disrespected Sainsbury, questioning her right to offer input on Title IX matters. During this meeting, Lacourse pointed a finger at Sainsbury and aggressively slammed his fist on the table, demanding to know "who do you think you are!" His behavior was deeply

This paragraph identifies participants in an interaction, and contains two words – "heads up" – which might be construed as making a *request* for future legal advice. That request is contextual for the next sentence (to which Utah Tech did not object) wherein Plaintiffs allege one Defendant harassed Sainsbury during a meeting. This incident illustrates the factual basis for the general allegation of the Complaint that "[f]or the last several years, Utah Tech has exhibited a

culture of hostility in its highest administrative offices toward the protections of Title IX and Title VII."[184]

Utah Tech argues that this redacted language "was made in confidence for the purpose of providing Williams (and the University) with legal compliance advice . . . .;" that Williams had no knowledge of the matter except as told by counsel; and that Williams had no need to know about the matter except for the advice given.[185] The request to give someone a "heads up" is hardly a confidential communication – it is a request for communication to occur. And it does not evidence any substantive legal advice requested or received.

Similarly, for each additional portion of the Complaint Utah Tech asserts is protected by the attorney-client privilege, Utah Tech failed to establish at least one required element to demonstrate the attorney-client privilege applies. Specifically, Utah Tech failed to demonstrate the attorney-client privilege applied to the objected material in the Complaint for these reasons:[186]

- ¶ 34: The highlighted portion of this paragraph does not reference specific communications, detail specific participants, demonstrate confidentiality, or reveal the substance of specific legal advice. This material is not protected attorney-client communication.

- ¶ 38:[187] Even if this paragraph contains a communication, nothing indicates this is for the purpose of giving or receiving legal advice. Read in context, it appears Rasband was attempting to defuse a verbal disagreement in a meeting, not provide

---

[184] *Id.* at 7, ¶ 32.

[185] Utah Tech Table at 2, docket no. 65-1, filed under seal January 8, 2025.

[186] Utah Tech arguments for the application of the attorney-client privilege to the material in each paragraph of the complaint is summarized in the Utah Tech Table. Utah Tech attached a copy of the Complaint with highlights denoting the portions of the Complaint Utah Tech asserts are privileged. Docket no. 35-1, filed December 31, 2024. Plaintiffs attached a table summarizing their responsive arguments about the material at issue to the Sur-Reply ("Plaintiffs' Table"). Docket 103-1, filed January 15, 2025.

[187] Utah Tech highlighted two portions of ¶ 38. This analysis applies to the highlighted "refusal to listen to Rasband's attempts to mediate . . . ."

legal advice. No substantive legal information is contained in this paragraph. This material is not protected attorney-client communication.

- ¶ 41: Utah Tech does not assert attorney-client privilege protects material in this paragraph.

- ¶ 43: This paragraph does not reference any specific communications. Nor is the substance of any legal advice referenced or confidentiality demonstrated. This material is not protected attorney-client communication.

- ¶ 45: This paragraph does not reference a communication where Plaintiffs had an attorney- client relationship with Wells nor does the paragraph include the substance of any legal advice. Utah Tech indicates this paragraph refers to communications made by Wells to the Attorney General's office. Plaintiffs' knowledge of the communication is evidence of the lack of confidentiality because Plaintiffs were not operating as counsel for Wells. This material is not protected by attorney-client privilege.

- ¶ 46A:[188] While first section of highlighted material in this paragraph does reference communications, this material does not disclose the substance of any legal advice requested or received. And a statement *in a training* that certain policies are being "weaponized" is not a communication made for the purpose of obtaining legal advice. Not every communication made in a meeting with a lawyer present is protected. This material is not protected by attorney-client privilege.

- ¶ 46B: The material in the second highlight in this paragraph does not refer to any specific communications or to the substance of any legal advice requested or given. This material is not protected by attorney-client privilege.

- ¶ 47: This paragraph alleges that Lacourse and Pedersen harassed Rasband during a meeting. Even if this is a communication made to an attorney, it does not reveal the substance of any legal advice given or received and was not made for the purpose of obtaining or giving legal advice. This material is not protected by the attorney-client privilege.

- ¶ 65: While the highlighted portion of this paragraph describes several communications, it is about Plaintiff Broadbent reporting to the University President Williams that she was the victim of harassing behavior. The communication is not for the purpose of obtaining or giving legal advice. Additional referenced communications are also complaints made by Plaintiffs to university administrators. Nothing in this material tends to reveal the substance of

---

[188] Utah Tech addresses the material in paragraph 46 in two parts in the Utah Tech Table. Accordingly, this analysis splits the analysis into two parts.

legal advice requested or given. This material is not protected by the attorney-client privilege.

- ¶112: The highlighted material does not reference specific communications made for the purpose of obtaining legal advice. In the Utah Tech Table, Utah Tech argues that the attorney-client privilege applies because it is "[a] meeting between the lawyer and client constituents about a specific legal situation."[189] Consistent with Utah Tech's other sparse explanations, this does not address the controlling legal standard and does not meet the requisite burden. This material is not protected by the attorney-client privilege.

- ¶ 114: The highlighted material describes Plaintiffs' activities and does not reference any specific communications. Even if the generalized statements that Plaintiffs were "responding to Title IX incidents enforcing compliance with Title IX or "advising and providing oversight over the [Utah Tech] Title IX processes" were considered communications—and they are not specific enough to be such—there is nothing revealed about the substance of legal advice given or received. This material is not protected by the attorney-client privilege.

Utah Tech has consistently failed to show that the objected material constituted or revealed communications; provide the context of each conversation including who was present; demonstrate that the communication was made in confidence and not disclosed to others; establish that the communication was made for the purpose of obtaining legal advice, or include other details needed to enable findings of privilege. Searching the Complaint, briefing, and the detailed Utah Tech Table, it is clear Utah Tech did not provide supporting facts because they could not be shown. No material in the Complaint is protected by the attorney-client privilege. And as will be discussed in the next section of this order, an exception to privilege and confidentiality clearly applies.

While the Complaint does not reveal any attorney client privileged communications, it is clear that such communications will be the subject matter of this case. Communications between Plaintiffs and Defendants about legal issues will be relevant and disclosed in this litigation

---

[189] Utah Tech Table at 5, docket no. 65-1, filed under seal January 8, 2025.

because they will be "reasonably necessary . . . to establish a claim or defense." Uncomfortable as that may be for the parties, disclosure will be logistically impossible to avoid. And as discussed in the next section, the disclosure is authorized.

### Rule 1.6(b)(5) Permits Plaintiffs' Disclosure of Confidential Information

Utah Tech argues that a lawyer's "duty of confidentiality is broader than the attorney-client privilege."[190] Although this may be true in general circumstances, Utah Tech fails to demonstrate why the general breadth of the duty of confidentiality is pertinent. Rule of Professional Conduct 1.6(b)(5) allows a lawyer to "reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary: . . . *to establish a claim or defense* on behalf of the lawyer in a controversy between the lawyer and the client . . . ."[191] Even if a lawyer reasonably believed that all confidential information ever provided by a client in the course of a representation was reasonably necessary to disclose for the attorney to establish a claim against the client, Rule 1.6(b)(5) would permit the disclosure. While the duty of confidentiality may generally have broad reach, so too is the potential disclosure so long as the disclosure fits the exception in Rule 1.6(b)(5).

Utah Tech asserts that plaintiffs disclosed more than was reasonably necessary.[192] As an example, Utah Tech points to the Post-It Notes incident.[193] But Utah Tech did not object to the following general description of the incident in Paragraphs 34 and 35 of the Complaint:

> For example, one such situation involved then-President Williams' close friend and direct report, VP Sharp, and members of Sharp's University Marketing and Communications team ("UMAC") allowing, for over four years, the posting and display in a public break room on campus of highly obscene and vulgar sexual

---

[190] Reply at 15.

[191] Utah R. Prof. Cond. 1.6.(b)(5) (emphasis added). Rule 1.6 now subsumes the old "crime fraud" exceptions and the intentional tort inclusion in that exception.

[192] Reply at 17-18.

[193] Reply at 18.

> comments with their names attributed to the comments. . . . Plaintiffs were
> required to continue working directly with Sharp and his UMAC team; . . . This
> situation is hereinafter referred to as the 'September 2021 Incident.' . . . The
> September 2021 Incident, as well as other instances involving senior University
> administrators being involved in matters processed by the OEC & TIX, resulted in
> Utah Tech's senior leaders questioning the OEC & TIX's processes, Plaintiffs'
> authority under those processes, and Plaintiffs' professionalism and motives. Thus,
> a 'poisoned well' and hostile work environment were created for Plaintiffs.[194]

Instead, the only material about this incident that Utah Tech asserts is privileged or

confidential is the following:

> Attached hereto under seal as Exhibits 'A' and 'B' are copies of the
> offensive information that was the subject of the situation. As a result of
> this situation and Plaintiffs' legally-mandated response to it in September
> 2021, Sharp and his UMAC team's gross misconduct was minimized by
> Human Resources and Williams . . . and Plaintiffs were viewed
> unfavorably by Sharp, other senior administrators, and the UMAC
> department, for simply fulfilling their job responsibilities.[195]

The material about the Post-It Notes Incident is relevant. The reactions of other Utah

Tech personnel to Plaintiffs' actions is key to this dispute. It is reasonably necessary to be

disclosed. There is also nothing privileged about Plaintiffs' explanation that exhibits were

attached to the Complaint. And the allegations that Plaintiffs had a legally mandated response to

the situation; that some defendants minimized this incident; and that Plaintiffs were viewed

unfavorably for conducting their jobs go to the heart of the Plaintiffs' claims that they

experienced unlawful discrimination and harassment. This allegation is squarely within the Rule

1.6(b)(5) exception permitting disclosure that the lawyer reasonably believes is necessary to

establish a claim.

Seeking to narrow Plaintiffs' allegations, Utah Tech has also argued that harassment not

directed at Plaintiffs is not relevant because a "person cannot base a claim for unlawful

---

[194] Complaint at 7-8, ¶ 34-35.

[195] Utah Tech's sealed version of the Complaint, docket no. 35-1 at 7, ¶ 34.

discrimination or retaliation on 'unresponsiveness to instances of misconduct' when the misconduct isn't directed at them."[196] Utah Tech cites *Clark County School District v. Breeden* for support.[197] *Clark County*[198] does not provide a shield for Utah Tech to suppress Plaintiffs' experiences with allegedly harassing and verbally abusive administrators connected to the treatment third-party complaints of discrimination and retaliation. In *Clark County,* the Supreme Court was not focused on the conduct being directed at a third-party; the focus was that "sexual harassment is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of the victims employment and create an abusive working environment. . . . Hence, . . . simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the . . . conditions of employment."[199]  The allegations here are of pervasive instances of harassment directed at Plaintiffs as well as "the administration's general unresponsiveness to instances of misconduct and its inclination to cover up instances of sexual harassment."[200] *Clark County* does not prevent allegations about the general environment of Plaintiffs' employment.

The Tenth Circuit answered the question "whether incidents of sexual harassment directed at employees other than the plaintiff can be used as proof of the plaintiff's claim of a hostile work environment."[201]

> The answer seems clear: one of the critical inquiries in a hostile environment claim must be the environment. Evidence of a general work atmosphere therefore—as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the claim.

---

[196] Reply at 18.

[197] 532 U.S. 268, 271 (2001), Reply at 18.

[198] 532 U.S. 268 (2001).

[199] *Id*. at 271 (cleaned up).

[200] Opposition at 17.

[201] *Hicks v. Gates Rubber Co*., 833 F.2d 1406, 1415 (10th Cir. 1987).

Indeed, "such evidence could be critical to a plaintiff's case, where a claim of harassment cannot be established without a showing of the isolated indicia of a discriminatory environment."[202]

If misconduct directed at others is relevant to claims of a security guard at an industrial plant as in *Hicks*, they are much more relevant for the context of claims of Plaintiffs who are responsible for University compliance with Title IX and Title VII. A key part of Plaintiffs' claims is that they "received strong pushback, intimidation, discrimination, harassment, abuse, and retaliation in their ongoing attempts to educate Utah Tech leadership about, and to achieve compliance with, University policies regarding discrimination and harassment, including Title IX and Title VII."[203]

The Utah Tech Table arguing why the objected material is confidential and not within the (b)(5) exception focuses primarily on the information being protected communications and confidential.[204] But Utah Tech fails to discuss whether the disclosures fit the exception in Rule 1.6 (b)(5). Utah Tech fails to offer substantive analysis – or case law – demonstrating that the objected materials are not reasonably necessary to establish a claim. No material in the Complaint will be struck or sealed. The allegations fit within the Rule 1.6(b)(5) exception to the Plaintiffs general duty of confidentiality to Utah Tech.

Utah Tech also claims protection for Paragraph 47 of the Complaint:

Another example of Plaintiffs' ongoing hostile work environment occurred in August 2023, when Lacourse and Pedersen harassed and verbally abused Plaintiff Rasband in a meeting which Plaintiff Broadbent requested that Rasband arrange with them, to ensure that a Title IX complainant in a recently-resolved matter would not be subjected to any retaliation by University officials.[205]

---

[202] *Id.* at 1415-1416 (cleaned up).

[203] *Complaint.* at 7, ¶33.

[204] *See generally* Utah Tech Table, docket no. 65-1, filed under seal January 8, 2025.

[205] *Id.* at 4.

Utah Tech claims attorney-client communication privilege because the paragraph describes "[a] meeting called by the lawyer between client constituents about a specific legal situation in which a lawyer is present. Attorney's direction and constituent client's response during that meeting are all privileged."[206] Describing a meeting does not disclose a communication. So very little of this paragraph is a communication. But the part that might be – an intended direction to comply with the law – could be a communication. But that context is vital to understanding the client's reaction by harassing and verbally abusing counsel. This example illustrates why the exception in Rule 1.6(b)(5) must exist. The privilege cannot protect alleged wrongful behavior such as harassing and verbally abusing counsel.

**Utah Tech Failed to Show The Title IX Confidentiality Provision is Applicable**

The parties have offered no history or interpretation of 34 C.F.R. 106.44, the Title IX regulation prohibiting a recipient of Federal financial assistance[207] from disclosing "personally identifiable information obtained in the course of compl[iance]." Utah Tech does not explain the purposes and context of this Title IX confidentiality provision, its applicability to Plaintiffs, or whether these regulations apply to court proceedings. Utah Tech has not defined what a "recipient" is in the Title IX confidentiality regulation; has not explained who is bound by the provision; and has not clarified what constitutes "personally identifiable information" for application of the provision.

Utah Tech failed to provide authority demonstrating that Title IX confidentiality provisions require any specific treatment of specific information in the Complaint. At the Hearing, Utah Tech stated that it was not aware of any case law applying the confidentiality

---

[206] *Id.*

[207] 34 C.F.R. 106.2.

provisions of Title IX in court proceedings or explaining the boundaries of the Title IX confidentiality provisions.[208]

Utah Tech had no case authority that the exception permitting disclosures "to carry out the purposes of [Title IX]"[209] is inapplicable.[210] The purpose of Title IX is "to eliminate (with certain exceptions) discrimination on the basis of sex in any education program or activity receiving Federal financial assistance, whether or not such program or activity is offered or sponsored by an educational institution as defined in this part."[211] Plaintiffs allege (a) systematic opposition to the purposes of Title IX by the defendants and (b) specific discriminatory misconduct directed at them. The purposes of Title IX are furthered by attempts to seek compliance, such as this Complaint. The confidentiality exception in 106.44(j)(3) permits identification in litigation of specific individuals alleged to be involved in general administrative misconduct or misconduct directed toward Plaintiffs. Disclosure in this case, seeking vindication of rights under Title IX, carries out the purpose of Title IX.

By its text, 34 C.F.R. 106.44 appears to apply only in the administrative realm. Its short title is "Recipient's response to sex discrimination." Section (a) requires a recipient to "respond promptly and effectively" to conduct that "may constitute sex discrimination in its education program or activity . . . ." Section (b) deals with reporting. Sections (c) and (d) require training by the institution, which section (e) requires public awareness events. Section (f) requires actions by the institution's Title IX Coordinator. Sections (g), (h), and (i) deal with supportive measures, emergency removal and administrative leave. The argued section (j) requires confidentiality, and

---

[208] Transcript 86:25-87:3.

[209] 34 C.F.R. 106.44(j)(3).

[210] Transcript 86:10-21.

[211] 34 C.F.R. § 106.1.

section (k) suggests informal resolution may be appropriate. From front to back, 34 C.F.R. 106.44 is about administrative institutional responsibilities, not judicial actions.

Context also confirms that 34 C.F.R. 106.44 applies only in the administrative realm. The previous section 106.43[212] treats "Standards for measuring skill or progress in physical education classes" and the next section 106.45[213] describes "Grievance procedures for the prompt and equitable resolution of complaints of sex discrimination." 34 C.F.R. 106.44 is embedded in 34 CFR Subt. B, Ch. I, Pt. 106, Subpt. D which is titled "Discrimination on the basis of sex in education programs or activities prohibited." Nothing about the text or context of 34 C.F.R. 106.44 suggests that it applies outside the institutional setting or binds a court.

It would be anomalous for Title IX to hamper litigation to accomplish its purposes. As the party asserting a privilege contrary to the presumption of open courts, the burden is on Utah Tech to demonstrate Title IX bars specific information in the complaint. Utah Tech has failed to do so.

In the Complaint sections Utah Tech seeks to seal or redact, there are only two instances where information might be personally identifiable information that Utah Tech could argue is protected by Title IX. The first is regarding defendant VP Jordan Sharp ("Sharp") who is alleged to have allowed "for over four years, the posting and display in a public break room on campus of highly obscene and vulgar sexual comments with their names attributed to the comments."[214] Utah Tech explained in the Reply that the Post-It Notes Incident required evaluation under Title IX.[215] (Plaintiffs filed the Post-It Notes Incident exhibit to the Complaint under seal.)  Utah

---

[212] 34 C.F.R. 106.43.

[213] 34 C.F.R. 106.45.

[214] Complaint at 7, ¶ 34.

[215] Reply at 18.

Tech only sought redaction of some of the information related to this incident, but did not challenge the inclusion of the general description of this incident, including Sharp's involvement and name. Accordingly, Utah Tech has waived any challenge to its inclusion. Sharp is a party to this suit. Sharp has not made any challenge to its inclusion and has also waived any challenge to its inclusion.

Disclosure of this incident, to the extent the material only includes personally identifiable information of parties, is not just acceptable but required. This allowance is analogous to and consistent with the confidentiality considerations balanced under FERPA which includes an exception which permits a university to disclose information to carry out legal proceedings.[216] 34 C.F.R. §106.44(j)(5) incorporates permission for disclosures permitted by FERPA, such as just described, in the Title IX context. While Title IX does not control this proceeding, the enumerated exceptions of Title IX and FERPA permitting disclosures in legal proceedings are consistent with this decision.

In contrast and as explained in this order below, the personally identifiable information of third parties will often require protection. The names of third parties whose complaints were handled by Plaintiffs but obstructed by Defendants should not be subject to exposure in these proceedings. The only third-party name in the Complaint is that of Kyle Wells ("Wells"), but as explained above, Utah Tech only sought protection of only some instances of Wells' inclusion in the Complaint, so Utah Tech has waived challenge to the inclusion of Wells' name. It also appears that the allegations concerning Wells were publicly known due to Wells' own actions which would constitute waiver.[217]

---

[216] *See* 34 C.F.R. § 106.44(j)(5) and 34 C.F.R. § 99.31.

[217] *See* docket no. 103-1 at 10-12 (alleging that Wells widely disseminated his involvement in Title IX process).

As explained in *Doe,* while the confidentiality provisions of Title IX are not controlling in this proceeding, they are instructive background context that factors in this decision. After evaluation of the competing interests here, these circumstances favor complete disclosure to the extent the materials are regarding the parties to this suit. The public has a strong interest in seeing that Title IX processes are administered consistent with the purpose of Title IX and its implementing regulations. Allowing disclosure of information connected to parties, while protecting the personally identifiable information of non-parties, is an appropriate balance that furthers the purposes of Title IX while still upholding the public's interest in transparency regarding the enforcement of Title IX at a public university.

### Utah Tech Policies 154 and 164 are Inapplicable

Utah Tech did not provide any authorities indicating how, and to what extent, internal University Policies control what information may be included in a publicly filed complaint. At the Hearing, Utah Tech admitted it had no case authority explaining how an internal university policy would control these proceedings.[218] Utah Tech, as the party asserting these policies to bar the disclosure of material, bears the burden to demonstrate they are applicable. Utah Tech has not met that burden. Importantly, Utah Tech ignored the plain exception in each confidentiality policy for a "judicial proceeding arising under Title IX."[219]

---

[218] Transcript 91:19-92:24.

[219] Utah Tech Policy 154 § 4.7.10.2 at 15; Utah Tech Policy 164 § 4.9.2 at 16. Counsel for Williams, Lacourse, and Pedersen argued at the hearing that the references to judicial proceedings meant that "confidentiality must be protected including conducting any investigation, hearing, or judicial proceeding, arising under Title IX." Transcript 45:17-21. *See also* Transcript 88:6-8.This argument is the inverse of the meaning of the phrase.

**Public Policy Supports Disclosure Despite Privilege, Title IX Rules, or Utah Tech Policies**

In *Garner v. Wolfinbarger*, the Fifth Circuit summarized the foundational perspective important to balancing confidentiality concerns and public disclosure.[220] The *Garner* court, citing Professor Wigmore's treatise on evidence, explained:

> The privilege must be placed in perspective. The beginning point is the fundamental principle that the public has the right to every man's evidence, and exemptions from the general duty to give testimony that one is capable of giving are distinctly exceptional. An exception is justified if— and only if— policy requires it be recognized when measured against the fundamental responsibility of every person to give testimony. Professor Wigmore describes four conditions, the existence of all of which is prerequisite to the establishment of a privilege of any kind against the disclosure of communications. . . .
>
> [One of those conditions is]
>
> (4) The injury that would inure to the relation by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal of litigation. . . .
>
> [Wigmore further states:]
>
> the privilege remains an exception to the general duty to disclose. Its benefits are all indirect and speculative; its obstruction is plain and concrete. It is worth preserving for the sake of a general policy, but is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits, consistent with the logic of its principle.[221]

The exceptions to the lawyer's duty of confidentiality in Rule 1.6(b) seem to be rooted in Wigmore's fourth criterion where the importance of secrecy to the attorney-client relationship is balanced against the correct disposal of litigation. The enumerated exceptions to confidentiality also reflect other social policies of greater importance that inform the boundaries of the privilege. Proper administration of antidiscrimination statutes and prevention of discrimination and harassment of those administering these laws is of utmost importance.

---

[220] 430 F.2d 1093 (5th Cir. 1970).

[221] *Garner v. Wolfinbarger*, 430 F.2d 1093, 1100-01 (5th Cir. 1970) (cleaned up, including omission of in text citations).

The nature of the Plaintiffs' claims, alleging systemic opposition to Title IX, and specific discrimination by defendants against Plaintiffs, must also be considered in the context of a publicly funded institution. Citizens should know what their institutions and its administrators are accused of doing and whether the result is exoneration or culpability. Consistent with the reasoning of the court in *Doe v. Univ. of Montana,* protecting and redacting personally identifiable information of third parties balances the need to reduce unwarranted disclosures with the public's interest in these proceedings.

Applying the Wigmore principles to this case, the injury that would inure to the attorney-client relationship from disclosure is not greater than the benefits which disclosure will create toward correct resolution of this case. While the allegations in the Complaint include bad or embarrassing behavior of Utah Tech employees and administrators, they are fundamental to the claims. Keeping these alleged behaviors secret does not benefit the attorney-client relationship because the alleged behavior is inconsistent with clients seeking meaningful legal advice. Clients will not be dissuaded from seeking legal counsel if they learn harassing or discriminating against counsel is not protected activity. Preventing disclosure, as Utah Tech seeks, will also severely impede the resolution of this case. Consequently, disclosure here does not damage the attorney-client relationship more than the public is benefitted.[222]

Additionally, public policy favors permitting disclosure. Maintaining transparency of court proceedings concerning a public university's treatment of compliance officials and the administration of important federal statutory rights is of great importance. Concerns about disclosure are lessened by limiting the disclose of non-party personally identifiable information.

---

[222] As this case progresses, it may become necessary to revisit the issues in this order in specific contexts. Discovery may delve into materials that should be protected by the attorney-client privilege. This order does not forecast resolution of future specific issues.

**Utah Tech's Behavior Supports Waiver of Privilege**

As explained above, the "confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived."[223] "Any voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege."[224] Utah Tech's actions during the brief course of these proceedings are inconsistent with a party jealously guarding its privilege. Utah Tech's waiver is another reason weighing against finding protection for material in the Complaint.

Utah Tech's troublesome behaviors include the time Utah Tech waited without objection while the Complaint was on file; the over-designation of redactions in the publicly filed attachments to the Emergency Motion; Utah Tech's misguided attempts to seal the entire Complaint; inconsistent objections such as objections to part of the Post-It Notes Incident allegations while permitting the general substance of the incident to remain open; objecting to the clearly unprotected term "strong pushback" in the Complaint and then using that specific term in the Redacted Reply;[225] and by only objecting to two instances of Wells's name in the same paragraph with two other appearances of his name to which no objection was made. Utah Tech has not jealously (and judiciously) guarded its confidences and privileges with regard to the Complaint. Utah Tech's behavior weighs against striking or sealing material in the Complaint.

**Individual Defendants Williams, Lacourse, and Pedersen's
Requests for Redactions Are Unsupported**

Defendants Richard Williams ("Williams"), Michael Lacourse ("Lacourse"), and Eric Pedersen ("Pedersen"), through separate counsel, filed a Memorandum in Support of Utah Tech

---

[223] *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir. 1990).

[224] *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d at 1185.

[225] Reply at 6.

University's Sealed Emergency Motion for Temporary Restraining Order and Injunctive Relief Against All Plaintiffs ("Williams' Memo in Support").[226] In the Williams' Memo in Support, these parties attempt to support the Emergency Motion, and also seek redaction of specific instances of party names.[227]

The Williams Memo in Support cites no authority. When questioned about this lack of authority at the Hearing, these Defendants argued that the Utah Tech policies 154 and 164, which speak about confidentiality, create obligations of confidentiality that exist through judicial proceedings.[228] This is an incorrect reading of the policies which specifically except judicial proceedings from policy confidentiality requirements.

Further, none of the other privileges or protections discussed in this order support the relief Williams, Lacourse, and Pedersen seek. These Defendants were never clients of the Plaintiffs, so they are unable to pursue either attorney-client communications privilege or any privilege based on the duty of confidentiality. Only Utah Tech has standing to assert these protections. Additionally, these Defendants have not met their burden because they provided insufficient authority and argument demonstrating they are otherwise entitled to the protections they seek. Williams, Lacourse, and Pedersen cannot overcome the presumption of open court records.

The Williams Memo in Support objects to the Complaint's use of "the names of those involved in, and nature of Plaintiffs' allegations regarding, internal University investigations . . . [i]n paragraphs 76, 80, 81, 83, 85, 92, 93, 94, and 97 . . . ."[229] These paragraphs include the

---

[226] Docket no. 70, filed January 8, 2025.

[227] *Id.* at 2.

[228] Transcript 87:19-89:5; *See also* Transcript 45:15-21.

[229] Williams Memo in Support at 2.

names of Defendants Williams, Sharp, Del Beatty, Henrie Walton, Courtney White, Tiffany Wilson, Travis Rosenberg, Lacourse, Pedersen, and Alison Adams. Williams, Lacourse, and Pedersen "[o]bject that [i]ntroducing personally identifiable information in their Complaint violates Plaintiffs' duty of confidentiality with regard to University investigations and is not reasonably necessary to articulate the claims in the Complaint."[230]

It is hard to imagine how a complaint could withstand a motion for dismissal if it failed to name defendants. Plaintiffs' own claims and grievances regarding discrimination, harassment, retaliation, defamation, and tortious interference against defendants are not subject to any claim of confidentiality.

### Protection of Third Parties

Review of Utah Tech's claim of partial protection of paragraph 45 of the Complaint may also be instructive to the parties as this case moves forward. Paragraph 45 reads:

> 45.  Additionally, the University failed to protect Sainsbury when former Title IX respondent and dean, Kyle Wells, who was dissatisfied with the outcome of his case, began petitioning the Utah Attorney General's office for recourse against Sainsbury. Although Wells never formally appealed the actions or findings in his case, the University allowed him to attempt to undermine Sainsbury's professional standing by seeking adverse action against her. The University also failed to provide her with adequate support or protection, including addressing Wells' actions, which seemed retaliatory in nature. They did not prevent Wells from defaming Sainsbury both internally within the University and externally, and she was not informed of or supported through these ongoing attempts to undermine her credibility and role as a Title IX Coordinator.[231]

---

[230] *Id.*

[231] Complaint at 11, ¶ 45 as marked up in Exhibit 1 to 35 Sealed Emergency Motion.

Utah Tech asserts that the portion of paragraph 45 highlighted above is subject to protection. Utah Tech asserts that when Wells reached out to the Utah Attorney General's office, it was for legal advice.[232] However, Utah Tech fails to explain how that would create a duty of confidentiality for *Plaintiffs*, who did not represent Wells personally. And Wells is not present making a claim of protection. This information was clearly not kept confidential because Plaintiffs are aware of it and could include it in the Complaint. Plaintiffs correctly argue that Wells publicly discussed the Title IX matter which would constitute waiver of any Title IX confidentiality protections.[233] The allegations are also critical to the claims as they are about Wells' actions focused on affecting Plaintiff Sainsbury. Inclusion in the public record is fair. Paragraph 45 does not warrant any protection.

However, this paragraph is illustrative of the boundaries of this order. Wells is not a party to this suit. Although this specific allegation in paragraph 45 about Wells is properly public, this case will require consideration of other non-parties. As this case develops, more facts may be developed concerning treatment of non-parties that support the more general environmental claims Plaintiffs make about conditions at Utah Tech. In the event this occurs, the inclusion of the names of these non-parties, or other personally identifying information, should usually be considered for redaction even though other details of the incidents and advice given and responses will be in public evidence. This is consistent with the Utah Supreme Court's direction in *Spratley.* In *Spratley*, the court permitted disclosures under Rule 1.6 for information between the former attorneys and State Farm because they were parties to the suit, triggering the exception in Rule 1.6 (b)(5). However, personally identifying information related to non-party

---

[232] Utah Tech Table, docket 65-1, filed January 8, 2025, at 4.

[233] Docket no. 103-1 at 9-11, filed January 15, 2025.

State Farm insureds was not to be disclosed without consent. Personally identifiable information about non-parties should usually be considered for protection if it is confidential either under the Plaintiffs' duty of confidentiality or because it is connected to Title IX processes.

As an example, because personally identifying information of non-parties is included in the specific Post-It notes attached to the Complaint and currently sealed,[234] the personal identifiers will most likely be redacted or sealed when those notes are used as exhibits. This treatment strikes a balance between public access and protection of the Title IX process. Protecting the identities of these non-parties advances the purposes of Title IX. These non-parties will not be chilled from reporting to the Title IX office at Utah Tech because their personally identifiable information will continue to be protected. And, maintaining as much transparency as possible in the proceeding—the presumptive open posture of the courts—will further the purposes of Title IX as the public and employees and students at Utah Tech will have greater confidence that scrutiny of a public university's compliance with Title IX will be adjudicated fairly and transparently.

This distinction is consistent with the theory of privilege and its limitations according to Wigmore, and this result is consistent with the public's interest in transparent accountability. The distinctions between allegations central to Plaintiffs' claims and tangential matters, and between parties and non-parties, should be considered as this case moves forward.

### Case Management Considerations Inform the Ordered Protections

Case management considerations also factor into this decision. As noted above, Wigmore explains that privilege is only legitimate when protection of the attorney-client relationship

---

[234] Docket no. 6-1, filed November 7, 2024.

outweighs the benefits of disclosure for the correct litigation outcome. This balancing is the root of privilege and confidentiality and the developed exceptions.

As set forth in detail above, Utah Tech's requested relief is onerous. Utah Tech has asked that certain parties be excluded from argument on the Emergency Motion; has proposed stringent and burdensome limitations on the dissemination of evidence in the progress of the case, including a preliminary right to review Plaintiffs' filings; and asserts that depositions may need to be attorneys-eyes only and include only certain parties for certain claims.

Privilege and confidentiality concerns must be weighed against the need for the just, speedy, and inexpensive resolution of this case.[235] First, Utah Tech's sweeping requested relief cannot be supported by privilege or other claimed bases for protection, and it is against public policy and unworkable. Second, Utah Tech's views of necessary protection would spark argument on every filing and in discovery, spinning this litigation into byways and side-paths. Privilege or confidentiality or administrative rules that are inapplicable by themselves have no weight when balanced against the need to have a manageable case with adequate public access.

As numerous examples in this order demonstrate, Utah Tech has shown its inability to identify material which should be sealed or be public. Utah Tech's erratic positions as to what should be sealed reflect fundamental misunderstandings about confidentiality and attorney-client privilege and only superficial examination of the Title IX regulation and Utah Tech policies. The filing of multiple motions demonstrates Utah Tech's inability to work with the sealing rules. Case management considerations support the framework set forth in this order.

---

[235] Fed. R. Civ. P. 1.

### No Protection is Required for Information Disclosed Under Rule 1.6(b)(5)

Utah Tech asserts its "position that if a lawyer relies on Rule 1.6(b)(5) as Plaintiffs do here, they are required to do so only as reasonably necessary to establish their claims which includes the use of protective orders and filing under seal—precisely the relief Utah Tech seeks here."[236] Utah Tech explains that it "does not consent to the use and disclosure of its confidential information and requests an order preventing the same except as is reasonably necessary to advance the claim given the availability of protective orders and a sealed docket."[237] Utah Tech further argues that "if a lawyer brings a claim against their client, the Duty of Confidentiality controls and requires the use of protective orders, filing under seal, and in camera review . . . ."[238]

In essence, Utah Tech advocates for confidentiality protections beyond those required under Rule 1.6(b)(5).[239] According to Utah Tech, disclosure permitted under Rule 1.6(b)(5)'s exception to confidentiality still leaves a residual duty – an aura – of confidentiality justifying sealing and redacting. Even though material may be disclosed, Utah Tech claims, it may still be properly subject to seal. Utah Tech has provided no authority supporting this position, except for mischaracterizing *Spratley* and *O'Brien*.[240]

Utah Tech reads *Spratley* to require (or at least permit) sealing information which Rule 1.6(b)(5) allows to be disclosed. *Spratley* mentioned the use of protective orders to narrow what was disclosed to that reasonably necessary to the claim.[241] The *Spratley* court treated Rule 1.6 as

---

[236] Reply at 23.

[237] Reply at 15.

[238] Reply at 24.

[239] *See* the discussion at pp. 33-35, *supra*.

[240] *Id.*

[241] *Spratley*, 78 P.3d at 610.

the confidentiality standard when it explained that a trial court may use its powers to "*restrict[]
disclosures with the bounds of Rule 1.6.*"[242] *Spratley* decided that disclosures would be
permissible *consistent* with Rule 1.6; that third party identifying information was protectible; and
did not mention presumptive sealing of things permissibly disclosed under Rule 1.6.

A "party seeking to seal a judicial record must show some significant interest that
outweighs the public interest in access to the records. This burden is heavy, and sealing is
appropriate only when the interest in confidentiality is real and substantial."[243] The
determination of whether to seal documents is within the discretion of the court and is exercised
by "weigh[ing] the interests of the public, which are presumptively paramount, against those
advanced by the parties."[244] Utah Tech, as the "party seeking to overcome the presumption of
public access . . . bears the burden of showing some significant interest that outweighs the
presumption."[245]

The transactions and interactions between the parties to this suit do not require sealing.
Rule 1.6(b)(5) specifically contemplates scenarios where attorneys pursue claims against clients
and permits disclosures the attorney "reasonably believes necessary . . . to establish a claim."
Rule 1.6 recognizes that when an attorney brings a claim against a client, the duty of
confidentiality is overcome by the interests of the attorney and client in recourse for their claims
and support for their defenses. It cannot follow that items treated as excepted from
confidentiality under the Rule must be sealed under some vestige of confidentiality.

---

[242] *Id*. (emphasis added).

[243] *McWilliams v. Dinapoli*, 40 F.4th 1118, 1130–31 (10th Cir. 2022) (cleaned up).

[244] *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011).

[245] *Id*.

This determination does not give Plaintiffs permission to disclose all confidences gained through their employment. Plaintiffs are still limited to disclosing only that which is reasonably necessary to advance their claims. But Rule 1.6 provides each party with the ability to use confidential information in support of their claims and defenses. And the considerations of public access and case management mean most of that will be open record.

A party seeking to seal materials properly disclosed under Rule 1.6(b)(5) will face a heavy burden of "show[ing] some significant interest that outweighs the public interest in access to the records."[246] The subject matter of this case is significant to the public. Title IX's purpose is to stamp out discrimination and harassment. The claims here are focused on alleged malfeasance in carrying out the purposes of Title IX. To bury that information under seal is inconsistent with the public's interest in transparent adjudication of the important rights protected by Title IX. The Utah Tech implementing policies are likewise not intended to be used to chill efforts to carry out the purposes of Title IX. Additionally, because Utah Tech is a public university, its administration and the alleged failure to carry out its statutorily mandated duties are of great public interest. Given the substantial public interests at stake in this matter and the presumption of open courts, Utah Tech has a heavy burden to have any portion of the Complaint sealed. Utah Tech has not met that burden.

On the other hand, special confidentiality concerns do apply to identities of non-parties. Activities and communications of the Plaintiffs, the Office of Equity and Compliance, and the administration involving complainants or victims of discrimination who are not parties will be relevant. But the parties must protect against disclosure of identities of those third parties and the few unique features of those matters that might enable personal identification. This may be done

---

[246] *McWilliams v. Dinapoli*, 40 F.4th 1118, 1130–31 (10th Cir. 2022) (cleaned up).

by redaction and sealing or by assigning aliases to those third parties. This must not interfere with the ability of Plaintiffs to otherwise fully describe circumstances in which they advised a course of action rejected by Defendants. Factual setting and critical details about these incidents, and discussions and interactions between the parties are information reasonably believes necessary to establish Plaintiffs' claims. Defendants' actions with regards for the laws which Plaintiffs were charged with enforcing – the same set of laws on which they base their claims – is highly relevant and can be shown in these incidents involving third parties.

As ordered below, the parties should attempt to negotiate a protective order based on these principles, and if that fails, file a motion for entry of a Protective Order.

## ANALYSIS OF REQUESTED TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

The Emergency Motion is not a proper subject for preliminary injunctive relief under Rule 65 because Utah Tech has no claim to undergird the preliminary relief. Utah Tech seeks a remedy without a claim. But even if the Motion were on a proper subject, it would fail for the following reasons.

To obtain a preliminary injunctive relief under Federal Rule of Civil Procedure 65, a movant must demonstrate:

(1) a substantial likelihood of success on the merits;
(2) a likelihood that [the movant] will suffer irreparable harm in the absence of preliminary relief;
(3) that the balance of equities tips in [the movant's]favor; AND
(4) that the injunction is in the public interest.[247]

The elements for injunctive relief have not been satisfied.

---

[247] *Ophir-Spiricon, LLC v. Mooney*, 2011 WL 5881766, *1 (D. Utah Nov. 23, 2011).

### Utah Tech Has Not Shown a Substantial Likelihood of Success on the Merits

As fully explained above, Utah Tech has shown it has *no* likelihood of success on the merits of its privilege and confidentiality arguments. As explained above, there is no actual claim to evaluate (which underscores the impropriety of the form of the Emergency Motion). But even if the privilege and confidentiality positions Utah Tech asserts were a claim, Utah Tech finds no success on them. The only protections this order puts in place are in the interest of non-parties, and not Utah Tech. Utah Tech achieved no protections in comparison to the overbroad redactions to which it argued it was entitled. This factor weighs against the issuance of injunctive relief.

### There is No Irreparable Harm

Utah Tech argues that in the absence of injunctive relief it will suffer irreparable harm from the disclosure of confidential and privileged information.[248] As explained above, Utah Tech has not established that any material in the Complaint is privileged or confidential, undercutting Utah Tech's claimed irreparable harm. Utah Tech offers no other potential harm other than the disclosure of confidential and privileged information.

A finding of irreparable harm is also inappropriate because the complaint has been on file two months. "As a general proposition, delay in seeking preliminary relief cuts against finding irreparable injury."[249] By Utah Tech's own admission, the allegedly privileged information was reported in the local and national media in articles dated November 8, 2024.[250] The Bloomberg Law article cited in the Emergency Motion includes a link to the docket and full text of the

---

[248] Emergency Motion at 23.

[249] *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Social and Rehabilitation Services*, 31 F.3d 1536, 1543–44 (10th Cir. 1994) (cleaned up).

[250] Emergency Motion at 16.

Complaint.[251] A quick internet search shows that multiple other websites have published the Complaint. Utah Tech's first attempt to file the substance of the Emergency Motion was on December 27, 2024.[252] This delay debilitates Utah Tech's claim of irreparable harm. Utah Tech has failed to carry its burden to show it will face irreparable harm in the absence of injunctive relief.

### The Balancing of Harms Weighs Against Injunctive Relief

"[A] court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."[253] If the injunctive relief Utah Tech seeks is granted, Plaintiffs would face significant restrictions in the content of their pleadings, potentially preventing Plaintiffs bringing all of their claims. Plaintiffs could also lose their ability to obtain relief and publicly make their claims concerning a matter of significant public interest. And because of the onerous nature of the requested injunctive relief which includes Utah Tech's desired ability to prescreen Plaintiffs' material prior to filing, it also would harm Plaintiffs speech interests as an improper prior restraint.

Utah Tech's primary stated concern of harm is based on confidentiality and privilege. Extensive briefing and argument show that Utah Tech's claimed privilege interests have little if any merit. While the disclosure of confidential or privileged information can be extremely harmful, the material sought to be sealed or struck, when read in context of the entire Complaint and governing law appears to be only an attempt to avoid public embarrassment. Considering

---

[251] Bloomberglaw.com, *Utah Tech General Counsel Sues School for Title IX Failings* (November 8, 2024) (https://www.bloomberglaw.com/bloomberglawnews/litigation/XE5C0AJK000000?bna_news_filter=litigation#jcite).

[252] Sealed Emergency Motion for Temporary Restraining Order and Injunctive Relief Against All Plaintiffs, docket no. 25-1, filed December 27, 2024.

[253] *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987).

Utah Tech did not object to the public disclosures about William's obscene vegetable display, the reality of the reputational harms are undercut. This factor does not support preliminary injunctive relief.

### An Injunction is Not in the Public Interest

As described above, the public has a strong interest in knowing the business of its education system and authorities. Masking information from public view would be detrimental to accountability of the higher education system. Additionally, the public has a strong interest to see accountability and integrity in the Title IX and Title VII process and their associated protections. This factor weighs against an injunction.

This litigation would be severely impaired and made more expensive by Utah Tech's requested relief. Ability to seek redress and public access to court proceedings is in the public interest.

### CASE SCHEDULING

Plaintiffs have indicated an amendment to the Complaint is forthcoming. Some defendants have asked that their responsive pleadings be delayed until scheduling is complete, and after complaint amendment.[254] An order was entered "extending the UBHE Defendants' deadline to file a responsive pleading to Plaintiffs' complaint/amended complaint until a Uniform Scheduling Order is entered by this Court."[255]

After discussion at the end of the Hearing, the parties were ordered to meet and confer to develop a protective order and to prepare for the scheduling conference and case management conferences already ordered in docket nos. 11 and 12. The parties were directed to consider

---

[254] Motion to Stay OBHE, OCHE, USHE, Adams, and Landward's Responsive Pleading, docket no. 109, filed January 15, 2025.

[255] Order Granting Motion to Stay OBHE, OCHE, USHE, Adams, and Landward's Responsive Pleading, docket no. 110, filed January 16, 2025.

amendment of the complaint and answer filing dates. Further, the parties will also be ordered to consider the alternatives to judicial resolution of these issues by a private proceeding such as mediation or arbitration.

## ORDER

IT IS HEREBY ORDERED:

1.      Plaintiff's [33] Emergency Motion is DENIED.

2.      Relief requested in the [70] Williams Memo in Support is DENIED.

3.      After 14 days from the date of this order, the clerk will unseal every document on this case docket which is filed under seal except dockets nos. 6-1 and 6-2.

4.      The parties will meet and confer
    a.  to develop a protective order consistent with this order;
    b.  to prepare for the scheduling conference and case management conferences (including filing an attorneys' planning meeting report) already ordered in docket nos. 11 and 12, while considering amendment of the complaint and answer filing dates.
    c.   to consider the alternatives to judicial resolution of these issues by a confidential proceeding such as mediation or arbitration.

Signed February 4, 2025.

BY THE COURT

David Nuffer
United States District Judge

65