SNOW JENSEN & REECE, P.C.
V. Lowry Snow (Utah Bar No. 3030)
J. Gregory Hardman (Utah Bar No. 8200)
Devon J. Herrmann (Utah Bar No. 15627)
Tonaquint Business Park
912 West 1600 South, Suite B-200
St. George, UT 84770
Telephone: (435) 628-3688
vlsnow@snowjensen.com
ghardman@snowjensen.com
dherrmann@snowjensen.com
*Attorneys for Richard "Biff" Williams, Michael Lacourse, and Eric Pedersen*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, SOUTHERN REGION

| | |
|---|---|
| REBECCA BROADBENT, JARED RASBAND, AND HAZEL SAINSBURY,<br><br>Plaintiffs,<br><br>v.<br><br>RICHARD "BIFF" WILLIAMS, JORDON SHARP, DEL BEATTY, MICHAEL LACOURSE, HENRIE WALTON, TIFFANY WILSON, UTAH TECH UNIVERSITY, GEOFF LANDWARD, UTAH BOARD OF HIGHER EDUCATION, UTAH SYSTEM OF HIGHER EDUCATION, THE OFFICE OF THE COMMISSIONER OF HIGHER EDUCATION, ALISON ADAMS, ERIC PEDERSEN, MATT BLACK, JYL HALL, JARED MADSEN, STACY SCHMIDT, BROOKE ULRICH, TRAVIS ROSENBERG, and COURTNEY WHITE.<br><br>JOHN AND JANE DOES I-X<br><br>Defendants. | **DEFENDANT ERIC PEDERSEN'S MEMORANDUM SUPPORTING MOTION TO DISMISS PLAINTIFFS' COMPLAINT AGAINST PEDERSEN**<br><br><br><br>Civil No.4:24-cv-00091-DN-PK<br><br>Judge David Nuffer<br><br>Magistrate Judge Paul Kohler |

## Table of Contents

MEMORANDUM IN SUPPORT................................................................................................5

INTRODUCTION AND SUMMARY OF ARGUMENT..................................................5

STATEMENT OF FACTS.....................................................................................................6

    Tortious Interference Claims................................................................................................7

    Declaratory Relief Claim....................................................................................................8

LAW.........................................................................................................................................9

    I.    Rule 12(b)(6) Standard.................................................................................................9

    II.   Rule 8(a) Standard......................................................................................................9

    III.  Rule 12(b)(1) Standard..............................................................................................10

    IV.  Article III Justiciability and Ripeness.......................................................................10

ARGUMENT...........................................................................................................................13

    I.    The Second Amended Complaint Substitutes Labels for Facts and Cannot Sustain Tortious Interference Claims Against Pedersen.......................................................................13

        a.    Plaintiffs fail to sufficiently plead intent. ........................................................ 14

        b.    Broadbent and Sainsbury pled no factual basis for any tortious interference claim against Pedersen........................................................................................................ 15

        c.    "Improper means" is defined narrowly under Utah law. Plaintiffs' allegations fall short. 16

        d.    Tortious interference requires conduct outside the scope of employment for purely personal reasons. ....................................................................................................... 22

        e.    Plaintiffs' alleged damages are not factually connected to Pedersen's alleged interference. ................................................................................................................ 23

    II.   Plaintiffs' Declaratory Relief Claim Fails With the Tortious Interference Claims and Is Not Ripe 26

        a.    Plaintiffs' declaratory relief claim is not properly before the Court............................ 26

        b.    The declaratory relief claim is derivative and cannot survive dismissal of Plaintiffs' underlying tortious interference causes of action. .............................................................. 30

CONCLUSION........................................................................................................................30

## Table of Authorities

**Cases**

*Advice Media, LLC v. Gopher Media LLC*, No. 2:25-CV-129-DAK-DAO, 2026 WL 1180047, at *7 (D. Utah Apr. 30, 2026) ...................................................................................... 23

*Alfwear, Inc. v. IBKUL Corp.*, 672 F. Supp. 3d 1174, 1183 (D. Utah 2023) ............................. 11, 27

*Allied World Nat'l Assur. Co. v. Monavie, Inc.*, No. 2:12-cv-393-DAK, 2013 WL 3716530 at *4 (D. Utah July 12, 2013) ......................................................................................... 23

*Anderson v. University of Utah*, 2018 WL 1115148, *2 (D. Utah 2018) .................... 12, 27, 28, 29

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ........... 9, 10, 19, 23

*Ass'n of Flight Attendants, AFL-CIO v. Skywest Airlines Inc.*, No. 2:23-cv-00723-DBB-DBP, 2025 WL 3537390, at *9 (D. Utah Dec. 9, 2025) .................................................... 14

*Brandy Gillespie, et al. v. Utah Department of Corrections, et al.*, No. 2:23-CV-221-HCN, 2025 WL 961498, at *3 (D. Utah Mar. 31, 2025) ................................................................ 19

*Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) .............. 6, 9

*Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016) ........................... 23

*Cella v. MobiChord, Inc.*, No. 2:17-CV-527-TC, 2020 WL 416668, at *13 (D. Utah Jan. 27, 2020) ................................................................................................................... 22

*CounselNow, LLC v. Deluxe Small Bus. Sales Inc.*, 430 F. Supp. 3d 1247, 1261 (D. Utah 2019) ................................................................................................................... 14

*Eldridge v. Johndrow*, 2015 UT 21 ....................................................................... 13, 15, 18

*England Logistics, Inc. v. Kelle's Transp. Serv., LLC*, 2024 UT App 137 ............................ 16, 21

*Francis v. National DME*, 2015 UT App 119 ............................................................... 23

*Hardy v. D&D Mgmt. 2, LLC*, No. 1:24-CV-00066-TS-JCB, 2024 WL 5186928, at *8 (D. Utah Dec. 20, 2024) .............................................................................................. passim

*Hardy v. D&D Mgmt. 2, LLC*, No. 1:24-CV-00066-TS-JCB, 2025 WL 2530726 (D. Utah Sept. 3, 2025) ..................................................................................................... 17

*Hunter v. Agility Energy, Inc.*, 419 F. Supp. 3d 1269, 1275 (D. Utah 2019) ........................... 10

*John Bean Techs. Corp. v. B GSE Grp., LLC*, 480 F. Supp. 3d 1274, 1328 (D. Utah 2020) ....... 16

*Larson v. United States Dep't of the Interior*, No. 2:15-CV-00710-JNP-BCW, 2016 WL 11796310, at *1 (D. Utah July 19, 2016) ........................................................... 10

*LBG Ogden Five Points v. Ridley's Family Markets*, 2022 WL 111169, **5-6, (D. Utah 2022) 12

*Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293 ...................................................... 18

*Martineau v. Currutt*, No. 121CV00045JNPDBP, 2022 WL 180735, at *5 (D. Utah Jan. 19, 2022) ................................................................................................................... 23

*McCartney v. United States*, 31 F. Supp. 3d 1340, 1343 (D. Utah 2014) ................................. 18

*Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) .................... 10

*Nursa, Inc. v. Gulf Coast Ltc Partners, Inc.*, No. 2:24-CV-00781-TS-DAO, 2026 WL 881580, at *2 (D. Utah Mar. 31, 2026) ............................................................................ 18, 19

*Pour v. Clegg*, No. 2:24-cv-968 DBP, 2025 WL 3442650, at *3 (D. Utah Dec. 1, 2025) ........... 14

*Pratt v. Prodata*, 885 P.2d 786 ......................................................................................... 18

*SCO Group, Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062 (10th Cir. 2018)......................... 13

*Shanley v. Hutchings*, 716 F. Supp. 3d 1179, 1201 (D. Utah 2024)......................................... 14, 15

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ..................................................................... 27

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994)...................... 12, 28, 29

*Surgenex, LLC v. Predictive Therapeutics, LLC*, 462 F. Supp. 3d 1160, 1178 (D. Utah 2020).... 13

*Texas v. United States*, 523 U.S. 296, 300 (1998) .....................................................................11, 27

*Total Quality Systems, Inc. v. Universal Synaptics Corporation*, 679 F.Supp.3d 1196, 1218 (D. Utah 2023) ........................................................................................................................ 24

*Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1241 (10th Cir. 2021) ..................................................................................................................................11

*Valdez v. National Security Agency*, 228 F.Supp.3d 1271, 1280 (D. Utah 2017) ........................ 24

*Walker v. Anderson-Oliver Title Ins. Agency, Inc.*, 2013 UT App 202 ......................................... 21

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ..................................................................... 12

## Statutes

28 U.S.C. .......................................................................................................................................11

Federal Declaratory Judgment Act, 28 U.S.C. § 2201...............................................................11, 12

Utah Code Ann. § 76-5-106 ...................................................................................................... 20, 21

## Rules

Federal Rules of Civil Procedure 12(b) ................................................................................. passim

Federal Rules of Civil Procedure Rule 8(a) ................................................................... 9, 14, 16, 18

## Constitutional Provisions

U.S. Constitution Article III...................................................................................................10, 11

## Pleadings

Second Am. Compl. ................................................................................................................. passim

Stip. Order of Dismissal........................................................................................................... 5

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Eric Pedersen respectfully moves to dismiss Rebecca Broadbent's, Jared Rasband's, and Hazel Sainsbury's (collectively, the "Plaintiffs") remaining claims against Pedersen, with prejudice.

Pedersen bases this Motion on the accompanying Memorandum of Points and Authorities, the pleadings on file, and any other argument or evidence the Court may consider.

## MEMORANDUM IN SUPPORT
## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs initially raised six causes of action against Pedersen.[1] Through voluntary dismissal and amendment to their complaint,[2] Plaintiffs' claims against Pedersen are down to three: tortious interference with *existing* and *prospective* economic relations and alternative cause of action for declaratory relief declaring that the Utah Governmental Immunity Act ("UGIA") does not bar Plaintiffs' underlying claims.

The allegations against Pedersen are undeniably thin. The Second Amended Complaint casts a wide net: twenty defendants, hundreds of paragraphs, and sweeping allegations of institutional misconduct. Yet, Plaintiffs' interference claims against Pedersen are limited to a single factual allegation: that he and a colleague verbally harassed Rasband during a single compliance-related meeting.[3] That allegation—bare, vague, and buried among accusations against the other Defendants—is the only misconduct by Pedersen that Plaintiffs allege, even after two

---

[1] Plaintiffs initial complaint against Pedersen alleged: (1) defamation *per se* (2) false light; (3) tortious interference with existing economic relations; (4) tortious interference with prospective economic relations; (5) intentional infliction of emotional distress; and (6) in the alternative, declaratory relief that the Utah Governmental Immunity Act is Unconstitutional as applied to bar certain causes of action.

[2] Stip. Order of Dismissal, *Rebecca Broadbent, et al. v. Richard Williams, et al.*, No.4:24-cv-00091-DN-PK, Docket No. 132, D. Utah, April 14, 2025; Docket No. 178 (Motion for Leave to Amend); Docket No. 202 (Grant of Motion for Leave to Amend).
[3] Docket No. 203, Second Am. Compl. ¶ 296(h).

rounds of amendment. To survive dismissal, Plaintiffs' complaint must allege facts, not bare legal conclusions, sufficient to show that Pedersen acted wrongfully and outside the scope of his employment, that he intended to interfere, and that his conduct caused an existing contractual relationship to be breached or a prospective contractual relationship not to form. As pled, Plaintiffs' tortious interference allegations fail to state a claim.

Plaintiffs' alternative claim for declaratory relief is not an independent cause of action but a contingent attempt to avoid the UGIA as a defense to their tortious interference claims. By seeking an advance ruling on the applicability of the UGIA before establishing the viability of those claims, Plaintiffs assert a claim that is both derivative and unripe. It therefore fails as a matter of law.

The Second Amended Complaint must be dismissed as to Pederson, with prejudice.

### STATEMENT OF FACTS[4]

1.     On November 8, 2023, Defendant, Richard Williams ("Williams"), former president of Utah Tech University ("Utah Tech"), left an assortment of vegetables displayed as male genitalia, including a long zucchini, on Defendant, Jordon Sharp's ("Sharp"), front porch as a gift while Sharp recovered from a vasectomy.[5]

2.     Williams also left an accompanying note that said, "We wanted to wish you well as you recover from your outpatient procedure. We thought some delicious produce from our

---

[4] Because a motion to dismiss requires courts to "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff," *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013), the following statement of facts recite Plaintiffs' pleadings as if they were true only for purposes of this motion.
[5] Second Am. Compl ¶ 71.

garden would help you with your recovery. Here are two delicious egg plants and our award-winning zucchini, or as we like to call it our 'zuweenie.'"[6]

3.    Williams signed the note by printing Plaintiffs' names at the bottom (although Williams misspelled two of the Plaintiff's names).[7]

4.    Upon receiving the vegetable display and note, Sharp messaged certain colleagues, inquiring who had written it.[8]

5.    Through Sharp, some Utah Tech faculty learned that Plaintiffs' names were linked to the vegetable display through the note.[9]

6.    In response to the vegetable display and note, Plaintiffs formalized internal complaints at Utah Tech against Williams, Sharp, and others involved, seeking to remedy what Plaintiffs alleged to be a hostile work environment, harassment, discrimination, retaliation, abusive conduct, and defamation.[10]

### Tortious Interference Claims

7.    Plaintiffs allege that "Utah Tech has a contract with Plaintiffs."[11]

8.    Plaintiffs allege that Pedersen "tortiously interfered with Plaintiffs' contract when he and Lacourse harassed and verbally abused Mr. Rasband in a meeting which Ms. Broadbent requested that Mr. Rasband arrange with them, to ensure that a Title IX complainant in a recently resolved matter would not be subjected to any retaliation by University officials."[12]

---

[6] *Id.*
[7] *Id.*
[8] *Id.* ¶¶ 75-79.
[9] *Id.* ¶¶ 75-84.
[10] *Id.* ¶ 122.
[11] *Id.* ¶ 295.
[12] *Id.* ¶ 296(h).

9.      Plaintiffs allege that, with respect to their tortious interference with *existing* economic relations cause of action, "Defendants were acting for purely personal reasons."[13]

10.     Plaintiffs allege that "Defendants' actions have frustrated and stymied Plaintiffs' abilities to fulfill their employment obligations to Utah Tech" and that their actions "were not … in the best interest of the University."[14]

11.     Plaintiffs allege that Defendants knowingly caused Plaintiffs to suffer damages.[15]

12.     Although Plaintiffs fail to specifically identify Pedersen within their tortious interference with *prospective* economic relations cause of action, Plaintiffs allege that "Defendants intentionally interfered with the Plaintiffs' prospective economic relations by improper means for an improper purpose, including violations of law and University policy, intimidation, deceit, misrepresentation, unfounded adverse employment actions, defamation, and disparaging falsehood, as set forth in detail above[,]" causing them to suffer damages.[16]

### Declaratory Relief Claim

13.     Plaintiffs allege, "Intentionally tortious conduct that wrongfully and improperly interferes with individuals' existing economic relations cannot be considered essential to the core governmental activity of operating a public university[.]"[17]

14.     Plaintiffs allege that if UGIA serves to bar claims against Pedersen for tortiously interfering with Plaintiffs' existing economic relations, then UGIA abrogates a cause of action that existed at the time of its enactment and Plaintiffs have no effective and reasonable alternative

---

[13] *Id.* ¶ 297.
[14] *Id.* ¶ 298-99.
[15] *Id.* ¶ 300, 303.
[16] *Id.* ¶¶ 305, 315.
[17] *Id.* ¶ 394.

remedy at law.[18]

15.      Without identifying Pedersen by name, Plaintiffs allege, "If the UGIA serves to bar claims against Defendants for their tortious conduct sabotaging Plaintiffs' prospective economic relations, then the UGIA abrogates a cause of action that existed at the time of its enactment, and Plaintiffs have no effective and reasonable alternative remedy under the law."[19]

## LAW

### I.    Rule 12(b)(6) Standard

To survive a motion to dismiss, a complaint must contain factual allegations sufficient to state a claim that is facially plausible.[20] A claim is plausible when the factual allegations allow the court to reasonably infer that the defendant is liable for the alleged misconduct—not merely that such liability is possible.[21] Labels, legal conclusions, and "unadorned, the-defendant-unlawfully-harmed-me" accusations do not suffice.[22] Although detailed factual allegations are not required, the complaint must provide fair notice of what the claim is and the grounds upon which it rests.[23] Courts are to accept well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff, but they are not bound by conclusory allegations dressed as facts.[24]

### II.    Rule 8(a) Standard

Rule 8 (a) requires a short and plain statement showing that the pleader is entitled to relief.[25] To satisfy that requirement, a complaint must explain what the defendant did, when the defendant

---

[18] *Id.* ¶ 397.
[19] *Id.* ¶ 404.
[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[21] *Iqbal*, 556 U.S. at 678.
[22] *Id.* (cleaned up).
[23] *Twombly*, 550 U.S. at 555.
[24] *Burnett*, 706 F.3d at 1235.
[25] Fed. R. Civ. P. 8 (a) (2).

did it, how the defendant's conduct caused harm, and what legal right the defendant violated.[26]

These requirements serve a dual purpose: they give the defendant fair notice of the claims against him and give the court sufficient clarity to adjudicate the merits.[27] Bare labels, formulaic recitations of elements, and naked assertions unsupported by factual enhancement do not meet this standard.[28]

## III.    Rule 12(b)(1) Standard

Rule 12(b)(1) permits a party to assert lack of subject matter jurisdiction as a defense by motion.[29] Because federal courts are courts of limited jurisdiction, the court "presumes no jurisdiction exists absent a showing of proof by the party asserting federal jurisdiction."[30] "The burden of establishing subject matter jurisdiction 'rests upon the party asserting jurisdiction.'"[31] Dismissal under Rule 12(b)(1), therefore, "is appropriate if the court lacks subject matter jurisdiction over claims for relief asserted in the complaint."[32]

When resolving a facial attack on the pleadings under 12(b)(1), the court applies the same standard as Rule 12(b)(6) and treats the complaint's well-pleaded allegations as true.[33]

## IV.    Article III Justiciability and Ripeness

Article III of the Constitution limits the jurisdiction of the federal courts to actual "cases"

---

[26] *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).
[27] *Id.*
[28] *Iqbal*, 556 U.S. at 678; *Hunter v. Agility Energy, Inc.*, 419 F. Supp. 3d 1269, 1275 (D. Utah 2019) (determining that a bare assertion without further factual enhancement does not give the court a basis to assess the elements of the claim).
[29] Fed. R. Civ. P. 12(b)(1).
[30] *Larson v. United States Dep't of the Interior*, No. 2:15-CV-00710-JNP-BCW, 2016 WL 11796310, at *1 (D. Utah July 19, 2016).
[31] *Id.* (cleaned up).
[32] *Id.*
[33] *Id.*

and "controversies."[34] The Supreme Court has "long understood th[is] constitutional phrase to require that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions."[35] To establish constitutional standing, a party must show "[1] [it] has suffered a concrete and particularized injury [2] that is fairly traceable to the challenged conduct, [3] and is likely to be redressed by a favorable judicial decision."[36] An injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."[37] "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"[38] Declaratory relief requires an actual controversy within the court's jurisdiction.[39] Where no actual controversy exists, dismissal under Rule 12(b)(1) is required.

Plaintiffs' declaratory relief claim is governed by the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. The Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration" only "[i]n a case of actual controversy within its jurisdiction."[40] The Declaratory Judgment Act does not expand the court's subject matter jurisdiction—it provides a remedy only where an actual controversy already exists within the court's jurisdiction.[41] "[C]ourts are required to consider the justiciability of a case to ensure that a declaratory judgment is not an improper advisory opinion."[42]

---

[34] U.S. CONST. art. III, § 2; *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1241 (10th Cir. 2021).
[35] *Alfwear, Inc. v. IBKUL Corp.*, 672 F. Supp. 3d 1174, 1183 (D. Utah 2023) (cleaned up).
[36] *Id.* (cleaned up).
[37] *Id.* (cleaned up).
[38] *Texas v. United States*, 523 U.S. 296, 300 (1998) (cleaned up).
[39] *Alfwear, Inc.*, 672 F. Supp. at 1186.
[40] 28 U.S.C. § 2201.
[41] *Alfwear, Inc.*, 672 F. Supp. at 1185-86.
[42] *Id.* at 1182.

Determining that a justiciable controversy exists is not the end of the inquiry. "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."[43] A court evaluating a justiciability challenge on a motion to dismiss a declaratory judgment action proceeds in two steps.[44] First, the court determines whether the factual allegations show a justiciable controversy supporting jurisdiction.[45] If jurisdiction is lacking, the court cannot hear the case.[46] If jurisdiction exists, the court makes a "fact-specific determination as to whether it should refrain from exercising that jurisdiction."[47] The factors the court considers in deciding whether to entertain the action—the *Mhoon* factors—are: "(1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to res judicata'; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective."[48] Where no actual controversy exists, or where the *Mhoon* factors weigh against exercising jurisdiction, dismissal is required.[49]

---

[43] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).

[44] *Anderson v. University of Utah*, 2018 WL 1115148, *2 (D. Utah 2018); *LBG Ogden Five Points v. Ridley's Family Markets*, 2022 WL 111169, **5-6, (D. Utah 2022).

[45] *Anderson*, 2018 WL 1115148, at *2.

[46] *Id.*

[47] *LBG Ogden Five Points*, 2022 WL 111169, at **5–6.

[48] *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994).

[49] *Anderson*, 2018 WL 1115148, at **4-5.

## ARGUMENT

### I.    The Second Amended Complaint Substitutes Labels for Facts and Cannot Sustain Tortious Interference Claims Against Pedersen

Plaintiffs' tortious interference claims fail at the threshold. To state a claim, Plaintiffs must plead facts establishing that Pedersen (1) intentionally interfered with their *existing* or *prospective* economic relations; (2) acted by improper means; and (3) caused injury to Plaintiffs.[50] The Second Amended Complaint satisfies none of these elements. Instead, it buries Pedersen in collective allegations directed at nearly all the Defendants, offers a single conclusory allegation about one meeting, and substitutes formulaic recitations for facts. "Driving away an individual's existing or potential customers is the archetypal injury [intentional interference actions were] devised to remedy."[51] Plaintiffs allege nothing of the sort. They complain instead that Pedersen refused to support them as they tried to interpret and implement Utah Tech policies, and that his purported refusal caused some unspecified harm. Missing is the one allegation that matters: that Pedersen's meeting with Rasband induced anyone, present or future, to cut economic ties with Plaintiffs. The Court must not accept such dubious claims.

Although tortious interference with *existing* and *prospective* economic relations are distinct causes of action, their elements are identical—Pedersen addresses both together, identifying each by name where the analysis diverges.[52]

---

[50] *Eldridge v. Johndrow*, 2015 UT 21, ¶ 13, 345 P.3d 553.

[51] *SCO Group, Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062 (10th Cir. 2018) (cleaned up).

[52] *Surgenex, LLC v. Predictive Therapeutics, LLC*, 462 F. Supp. 3d 1160, 1178 (D. Utah 2020) (recognizing that Utah courts apply a single legal test to both tortious interference with existing contractual relations and tortious interference with prospective economic relations).

### a. Plaintiffs fail to sufficiently plead intent.

Intent is the first element of a tortious interference claim, and the Second Amended Complaint does not plead it with factual particularity. A party acts with the requisite intent when the party either "desires to bring about certain consequences," or "knows that interference is substantially certain to occur as a result of the party's actions."[53]

The Second Amended Complaint offers nothing more than the bare assertion that "Defendants intentionally interfered with Plaintiffs' … economic relations."[54] That allegation—directed at the Defendants collectively and unaccompanied by a single fact specific to Pedersen—is precisely the kind of naked assertion Rule 8 (a) is designed to screen out. "[T]he mere metaphysical possibility that … plaintiff[s] could prove some set of facts in support of"[55] their interference claims is insufficient. Plaintiffs "must give the court reason to believe"[56] they have a "reasonable likelihood of mustering factual support for these claims."[57] They have not.

Interference with an *existing* economic relationship requires proof that the defendant acted intentionally to cause a party to breach or abandon an *existing* contract.[58] Interference with a *prospective* economic relationship is different. There, the plaintiff must show that the defendant intentionally disrupted a relationship likely to ripen into a contract and, in doing so, prevented the

---

[53] *CounselNow, LLC v. Deluxe Small Bus. Sales Inc.*, 430 F. Supp. 3d 1247, 1261 (D. Utah 2019) (cleaned up); *Mumford v. ITT Commercial Fin. Corp.*, 858 P.2d 1041, 1044 (Utah Ct. App. 1993)).

[54] Second Am. Compl. ¶ 305.

[55] *Pour v. Clegg*, No. 2:24-cv-968 DBP, 2025 WL 3442650, at *3 (D. Utah Dec. 1, 2025) (cleaned up).

[56] *Id*.

[57] *Id*.

[58] *Shanley v. Hutchings*, 716 F. Supp. 3d 1179, 1201 (D. Utah 2024); *Ass'n of Flight Attendants, AFL-CIO v. Skywest Airlines Inc.*, No. 2:23-cv-00723-DBB-DBP, 2025 WL 3537390, at *9 (D. Utah Dec. 9, 2025) (cleaned up) (holding that "a tortious interference claim based on an existing contract must allege that the defendant caused a breach of that contract or impaired its performance through improper means").

contract from ever being formed.[59] The Second Amended Complaint pleads no facts showing Pedersen acted with the intent either claim requires, nor does the Complaint identify any relationship likely to ripen into a contract.

### b. Broadbent and Sainsbury pled no factual basis for any tortious interference claim against Pedersen.

The *existing* economic relations claim against Pedersen fails for an additional and independently dispositive reason as to Plaintiffs Broadbent and Sainsbury. Plaintiffs confine their tortious interference with *existing* economic relations claim against Pedersen to a single paragraph, Paragraph 296(h) of the Second Amended Complaint, alleging that he and Lacourse verbally harassed Rasband during a meeting that Broadbent requested Rasband arrange.[60] That allegation names one plaintiff: Rasband. It places one plaintiff in the meeting: Rasband. Broadbent and Sainsbury are nowhere in it. The Second Amended Complaint stops short of alleging that Pedersen's conduct at that meeting interfered with Broadbent's or Sainsbury's *existing* economic relations, caused them any distinct harm, or bore any connection to their employment contracts. A tortious interference claim requires each plaintiff to establish that the defendant intentionally interfered with that plaintiff's economic relations.[61] Broadbent and Sainsbury cannot satisfy that requirement by pointing to a meeting they did not attend and an allegation that does not mention them. Their *existing* economic relations claim against Pedersen, therefore, must be dismissed.

The *prospective* economic relations claim fails as well. Pedersen is not mentioned in it at all. The claim incorporates the preceding allegations by reference and asserts only that "Defendants intentionally interfered with the Plaintiffs' prospective economic relations by

---

[59] *Id.*
[60] Second Am. Compl. ¶ 296(h).
[61] *See Eldridge v. Johndrow*, 2015 UT 21, ¶ 13, 345 P.3d 553.

improper means for an improper purpose."[62] The interference with *prospective* economic relations claim names no defendant individually, identifies no specific conduct, and recites nothing beyond the bare elements of the claim.[63] That is precisely what Rule 8 (a) forbids. Without a single allegation connecting Pedersen to any interference with Plaintiffs' *prospective* economic relations, the claim cannot survive dismissal.

### c. "Improper means" is defined narrowly under Utah law. Plaintiffs' allegations fall short.

The second element of tortious interference is that the defendant acted by improper means. Under Utah law, "improper means" is defined narrowly.[64] To establish this element, a plaintiff must allege either conduct contrary to law, meaning conduct that violates a statute, regulation, or established common-law rule, or conduct that breaches established standards of a trade or profession.[65] Conduct contrary to law encompasses illegal acts or acts that are independently tortious.[66] Because such acts are illegal or tortious themselves, they constitute "improper means."[67] It follows that "[c]onduct that is not independently tortious or wrongful is insufficient to establish the improper means prong of a tortious interference claim."[68] Plaintiffs satisfy neither.

*Hardy v. D&D Management 2, LLC*, shows how federal courts in the District of Utah

---

[62] Second Am. Compl. ¶ 305.

[63] *Twombly*, 550 U.S. at 555 (A pleading that offers "a formulaic recitation of the elements of a cause of action will not do.").

[64] *England Logistics, Inc. v. Kelle's Transp. Serv., LLC*, 2024 UT App 137, ¶ 41, 559 P.3d 45.

[65] *Id.*; *see also Hardy v. D&D Mgmt. 2, LLC*, No. 1:24-CV-00066-TS-JCB, 2024 WL 5186928, at *8 (D. Utah Dec. 20, 2024) (cleaned up).

[66] *See England Logistics*, 559 P.3d at 56 (cleaned up); *see also John Bean Techs. Corp. v. B GSE Grp., LLC*, 480 F. Supp. 3d 1274, 1328 (D. Utah 2020).

[67] *Id.*

[68] *John Bean Techs. Corp.*, 480 F. Supp. 3d at 1328.

analyze the alleged improper means, and is illustrative of the failure of Plaintiffs' claims.[69]  In *Hardy*, a former CFO alleged that her employer intentionally interfered with her economic relations by  "violating common law by engaging in electronic communication harassment, defaming and slandering Plaintiff, and violating established standards of trade or profession," which conduct forced the plaintiff to resign.[70]  On the defendant's motion to dismiss, the court rejected each theory, noting that a complaint "requires more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."[71]  The plaintiff's complaint failed to allege any of the elements of electronic communications harassment under Utah law, failed to allege facts showing that allegedly-defamatory statements regarding plaintiff and another person were published by the defendant, and failed to include allegations regarding what professional practices or standards were violated, and therefore was dismissed.[72]

Here, and with respect to Pedersen, Plaintiffs' Complaint similarly fails to allege independently tortious conduct and fails to allege what industry standards or norms Pederson's conduct violated.

### i.    Plaintiffs do not allege independently tortious conduct.

The Second Amended Complaint includes conclusory allegations of retaliatory conduct, dishonest internal investigation practices, and harassment.[73] But those allegations are unsupported by any factual detail establishing that Pedersen committed an illegal or independently tortious act.

---

[69] *Hardy v. D&D Mgmt. 2, LLC*, No. 1:24-CV-00066-TS-JCB, 2025 WL 2530726 (D. Utah Sept. 3, 2025).

[70] *Id.* *1, *5.

[71] *Id.* *2 (cleaned up).

[72] *Id.* *5–*6.

[73] Second Am. Compl. ¶¶ 71, 130, 155, 197; *id.* ¶ 122.

Courts routinely hold, and this Court must rule, that obscure references to misconduct, without factual enhancement, are insufficient under Rule 8 (a).[74]

Plaintiffs' tortious interference with *existing* economic relations claim rests on the following allegation:

> Defendants tortiously interfered with Plaintiffs' contracts through improper means and for an improper purpose[75] and inhibited their abilities to fulfill their employment obligations to Utah Tech, by Defendants conducting or contributing to a sham investigation and grievance process in response to Plaintiffs' complaints; by making defamatory, false, injurious, and disparaging statements; by engaging in retaliatory conduct; and/or by withholding evidence; and/or by being dishonest in the internal investigation processes in at least the following ways … [with respect to Pedersen,] Pedersen tortiously interfered with Plaintiffs' contract when he and Lacourse harassed and verbally abused Mr. Rasband in a meeting which Ms. Broadbent requested that Mr. Rasband arrange with them, to ensure that a Title IX complainant in a recently resolved matter would not be subjected to any retaliation by University officials.[76]

Plaintiffs' *prospective* economic relations claim alleges that "Defendants intentionally interfered with the Plaintiffs' *prospective* economic relations by improper means for an improper purpose, including violations of law and University policy, intimidation, deceit, misrepresentation,[77] unfounded adverse employment actions, defamation, and disparaging falsehood, as set forth in detail above."[78] These collective allegations do not satisfy Plaintiffs'

---

[74] *McCartney v. United States,* 31 F. Supp. 3d 1340, 1343 (D. Utah 2014).

[75] *Eldridge v. Johndrow*, 2015 UT 21, 345 P.3d 553 (overruling *Pratt v. Prodata*, 885 P.2d 786, and *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, the *Eldridge* Court determined that absent improper means, improper purpose does not establish tortious interference. The doctrine of improper purpose, according to the *Eldridge* Court, offers insufficient legal guidance, inadequately notifies parties of their rights, risks infringing free speech, could stifle competition, and is increasingly limited or rejected by other jurisdictions).

[76] Second Am. Compl. at ¶ 296(h).

[77] "To demonstrate that a defendant committed 'deceit or misrepresentation' that might qualify as 'improper means,' the plaintiff must show that the defendant 'committed an act that was either illegal or constituted an actionable tort'"). *Nursa, Inc. v. Gulf Coast Ltc Partners, Inc.*, No. 2:24-CV-00781-TS-DAO, 2026 WL 881580, at *2 (D. Utah Mar. 31, 2026) (cleaned up). Plaintiffs have not done so.

[78] *Id.* ¶ 305 (emphasis added).

burden. "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."[79] Absent well-pleaded allegations, Plaintiffs cannot sustain their interference claims.

Plaintiffs allege that Pedersen tortiously interfered with their *existing* and *prospective* economic relations when he and Lacourse allegedly verbally harassed Rasband during a meeting that Broadbent requested he arrange.[80] That meeting was allegedly convened to ensure that a Title IX complainant would not experience retaliation by University officials.[81] From that single meeting, Plaintiffs extrapolate four categories of alleged misconduct: verbal harassment, interference with Title IX-related processes, failure to support Plaintiffs' compliance efforts, and contribution to a hostile work environment.[82] Yet the Second Amended Complaint does not identify what Pedersen actually said, when he said it, how his conduct violated any law or was independently tortious. The bar for "improper means" is not merely sharp dealings—it requires illegal or tortious conduct.[83] A plaintiff who cannot identify an independent tort or unlawful act has pointed to no actionable interference.[84] The Second Amended Complaint must allege "more than a sheer possibility that a defendant has acted unlawfully."[85] These are precisely the "labels and conclusions" that are insufficient under Utah law.[86]

Each category of alleged misconduct shares the same flaw. Not one of them identifies what Pedersen actually did, when he did it, or why it was unlawful:

---

[79] *Brandy Gillespie, et al. v. Utah Department of Corrections, et al.*, No. 2:23-CV-221-HCN, 2025 WL 961498, at *3 (D. Utah Mar. 31, 2025) (cleaned up).
[80] Second Am. Compl. ¶ 296, subparagraph (h).
[81] *Id.* ¶¶ 69, 197.
[82] *Id.* ¶¶ 69, 122, 145, 197.
[83] *Nursa, Inc.*, 2026 WL 881580, at *2 (cleaned up).
[84] *Id.*
[85] *See Ashcroft*, 556 U.S., 678 (cleaned up).
[86] *See Hardy*, 2024 WL 5186928, at *8.

- Verbal Harassment and Abuse: Under Utah Law, harassment requires an actor to make a written or recorded threat to commit a violent felony with the intent to frighten or harass.[87] The Second Amended Complaint alleges that Pedersen "harassed and verbally abused Mr. Rasband,"[88] but does not state what was said, when, to whom, or how it interfered with any *existing* or *prospective* economic relationship. Critically, it does not allege that the purported harassment was independently tortious or otherwise unlawful, which is an essential element of a tortious interference claim. Plaintiffs causes of action for defamation, false light, and intentional infliction of emotional distress, which might have been tortious conduct underlying the interference claim, have all been withdrawn, and Plaintiffs could have alleged that Pedersen threatened Rasband with a violent felony, but did not.
- Interfering with Title IX-Related Processes: Plaintiffs allege that Pedersen's conduct occurred in the context of a meeting convened to ensure compliance with Title IX obligations.[89] The Second Amended Complaint does not allege how Pedersen intentionally interfered with any investigatory process, when the alleged interference occurred, or how it resulted in the termination of an *existing* economic relation or the failure of a *prospective* economic relation to be formed.
- Undermining Compliance Efforts: The Second Amended Complaint does not identify what compliance efforts Plaintiffs undertook, what actions Pedersen allegedly took to undermine them, or how those actions evidence an intent to interfere with any economic relationship. Without those facts, Plaintiffs cannot establish the "improper means" element necessary for a tortious interference claim.
- Contributing to a Hostile Work Environment: Allegations that Pedersen's conduct "poisoned the well" are purely rhetorical and untethered to any specific fact. Rhetorical accusations of this kind cannot sustain a claim under Rule 12(b)(6).

These allegations fail to assert facts supporting independently tortious conduct by Pedersen. Plaintiffs have withdrawn their causes of action for defamation and false light, and indeed assert no facts supporting defamatory conduct by Pedersen, and otherwise allege no defamatory statement published by Pedersen. Plaintiffs have withdrawn their cause of action for intentional infliction of emotional distress against Pedersen, and indeed assert no facts as to what Pederson allegedly said to Rasband to verbally abuse and harass him. Even setting that aside, a

---

[87] Utah Code Ann. § 76-5-106.

[88] *See* Am. Compl. at ¶ 296(h).

[89] *Id.* ¶ 197.

workplace argument hardly amounts to the outrageous conduct that intentional infliction of emotional distress requires. *Hardy* is instructive. There, the plaintiff's bare allegation of electronic communications harassment was insufficient to survive a motion to dismiss. Plaintiffs here could have alleged harassment under Utah Code section 76-5-106, but did not. The Second Amended Complaint is devoid of any fact showing unlawful, tortious conduct that induced the breach of any existing contract or prevented the formation of any prospective economic relationship.

Stripped of their labels, Plaintiffs' allegations against Pedersen amount to this: he attended a meeting and allegedly said something harsh to Rasband. That is not "improper means" under Utah law.

### ii.     Plaintiffs do not allege that Pedersen breached industry standards or norms.

Plaintiffs' second path to "improper means" fares no better. To satisfy this prong, Plaintiffs must identify an *objective*, industry-wide standard that Pedersen violated—one grounded in industry customs, practices, uniform codes, or industry-specific regulations.[90] "Establishing an industry standard requires more than evidence of a particular company's rules and policies."[91] The "'standard of conduct which the community demands must be an external and objective one, rather than the individual judgment, good or bad, of the particular actor.'"[92]

The Second Amended Complaint identifies no such standard. Although Plaintiffs allege "Defendants intentionally interfered with the Plaintiffs' prospective economic relations by improper means for an improper purpose, including violations of law and University policy[,]"[93] they fail to identify a single external and objective standard, rule, or regulation that Pedersen's

---

[90] *England Logistics*, 2024 UT App 137, ¶ 52 (cleaned up).
[91] *Walker v. Anderson-Oliver Title Ins. Agency, Inc.*, 2013 UT App 202, ¶ 20, 309 P.3d 267.
[92] *Id.* (cleaned up).
[93] Second Am. Compl. at ¶ 305.

conduct allegedly violated. Like *Hardy*, where the plaintiff did not include allegations regarding practices or standards allegedly breached, Plaintiffs' Second Amended Complaint is silent as to what objective industry standards Pedersen may have breached. Without that showing, the "improper means" prong cannot be satisfied, and both tortious interference claims must be dismissed.

### d. Tortious interference requires conduct outside the scope of employment for purely personal reasons.

The allegations against Pedersen do not support a claim for tortious interference for an independent and dispositive reason: the Second Amended Complaint does not allege that Pedersen acted outside the scope of his employment for purely personal reasons.[94]

"When the defendants are also employees … the plaintiff must establish that the defendants were acting outside the scope of their employment for purely personal reasons."[95] "Employees act for purely personal motives *when their actions are in no way connected with the employer's interests*."[96] Plaintiffs attempt to satisfy this element with a single conclusory assertion: that "Defendants were acting for purely personal reasons."[97] That assertion, lacking factual enhancement, fails on two independent grounds.

First, it is directly contradicted by Plaintiffs' own allegations. Paragraph 296(h) describes Pedersen attending a meeting convened to ensure that a Title IX complainant would not face retaliation by University officials. That is not personal conduct—it is institutional conduct of precisely the kind a Professor and former Dean would undertake in furtherance of University

---

[94] *Cella v. MobiChord, Inc.*, No. 2:17-CV-527-TC, 2020 WL 416668, at *13 (D. Utah Jan. 27, 2020).

[95] *Id.* (cleaned up).

[96] *Id.* (emphasis added).

[97] Second Am. Compl. ¶¶ 297, 310.

interests. Courts "need not accept as true factual allegations that are contradicted by other factual allegations within the same pleading."[98] The allegation at Paragraph 296(h) directly contradicts the purely personal reasons allegation at Paragraph 297, and the Court need not accept either as true.

Second, even setting aside that contradiction, the assertion that Defendants acted for "purely personal reasons" is a verbatim recitation of a legal element unaccompanied by a single fact identifying what personal motive, personal benefit, or personal animus drove Pedersen's conduct. Plaintiffs fail to allege facts showing that Pedersen's conduct was disconnected from his University duties or that he was motivated by personal animus independent of his employment. These bare assertions lack the factual specificity necessary to survive dismissal.[99]

e.   **Plaintiffs' alleged damages are not factually connected to Pedersen's alleged interference.**

The Third element of a tortious interference claim requires Plaintiffs to allege that Pedersen's conduct caused them actual injury.[100] Plaintiffs must also establish a causal link between the alleged conduct and the harm suffered.[101] Pedersen recognizes that Plaintiffs are not

---

[98] *Martineau v. Currutt*, No. 121CV00045JNPDBP, 2022 WL 180735, at *5 (D. Utah Jan. 19, 2022) (cleaned up); *see also Allied World Nat'l Assur. Co. v. Monavie, Inc.*, No. 2:12-cv-393-DAK, 2013 WL 3716530 at *4 (D. Utah July 12, 2013); *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016) ("[W]here [a] plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss").

[99] *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

[100] *Compare Hardy v. D&D Mgmt. 2, LLC*, No. 1:24-CV-00066-TS-JCB, 2024 WL 5186928, at *8 (D. Utah Dec. 20, 2024) (dismissing tortious interference claim where plaintiff failed to allege specific facts supporting injury), *with Advice Media, LLC v. Gopher Media LLC*, No. 2:25-CV-129-DAK-DAO, 2026 WL 1180047, at *7 (D. Utah Apr. 30, 2026) (denying motion to dismiss where plaintiff alleged defendants caused at least eight clients to terminate their contracts and sign with a competitor—concrete, identifiable economic harm directly traceable to specific conduct).

[101] *Francis v. National DME*, 2015 UT App 119, ¶ 48, 350 P.3d 615.

required to allege damages with particularity and that courts frequently find the injury element satisfied at the pleading stage.[102] Nevertheless, the Second Amended Complaint is exceptionally insufficient in its allegations, and courts are not required on a motion to dismiss to accept allegations that are "simply legal conclusions or bare assertions of the elements of a claim," or that "defy reality as we know it."[103] That deficiency is compounded by what has been established: the Second Amended Complaint contains no facts causally linking Pedersen's alleged conduct to any injury suffered by any Plaintiff.

Although Plaintiffs generally allege that they "have suffered damages as a result of the Defendants' tortious interference,"[104] that their *existing* and *prospective* economic relationships were damaged[105] that "Defendants … have frustrated and stymied [their] abilities to fulfill their employment obligations to Utah Tech,[106] and that Defendants' actions "sabotaged Plaintiffs' other potential economic relationships with other prospective employers and institutions,"[107] those allegations are collective, untethered to Pedersen specifically, and devoid of factual enhancement.[108] Bare recitation of elements aside, it shows no causal nexus between Pedersen's meeting with Rasband and the cutting of any existing or future economic ties. Nor do the pleadings allege that Pedersen's conduct caused the termination of any existing contractual relationship or prevented any prospective economic relationship from developing.

---

[102] *See Total Quality Systems, Inc. v. Universal Synaptics Corporation*, 679 F.Supp.3d 1196, 1218 (D. Utah 2023).

[103] *Valdez v. National Security Agency*, 228 F.Supp.3d 1271, 1280 (D. Utah 2017).

[104] Second Am. Compl. ¶¶ 303, 315.

[105] *Id.* ¶¶ 299, 307-08.

[106] *Id.* ¶ 299.

[107] *Id.* ¶ 307.

[108] *Id.* ¶¶ 303, 315.

The Second Amended Complaint does not identify the loss of any existing contract,[109] a failure to obtain employment, or any other identifiable economic harm attributable to Pedersen. "A party is subject to liability for an intentional interference with present contractual relations if he intentionally and improperly causes one of the parties not to perform the contract."[110] Plaintiffs do not allege that Pedersen's conduct caused them to breach their contracts with Utah Tech or prevented new contracts from being formed.[111]   Indeed, Utah Tech, with whom Plaintiffs had existing contract duties, never accused Plaintiffs of failing to perform.  Neither does the Second Amended Complaint allege that Plaintiffs were exploring employment contracts elsewhere and that Pedersen's meeting with Rasband somehow interfered with those relationship.  The absence of these allegations is fatal to Plaintiffs' claim.[112]

Although Plaintiffs allege that Pedersen verbally harassed Rasband during a compliance-related meeting,[113] they offer no facts showing that his conduct interfered with any identifiable *existing* or *prospective* economic relationship. To sustain a plausible interference claim, Plaintiffs must allege that Pedersen intentionally came *between* them and a third party, resulting in the termination of an *existing* contract or preventing a *prospective* contract from developing. That is not what the Second Amended Complaint alleges. Plaintiffs allege that Pedersen's conduct harmed their ability to implement policy as they pleased, not that it caused them to breach their contracts

---

[109] *Id*. ¶ 295 (alleging that "Utah Tech has a contract with Plaintiffs").
[110] *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 201 (Utah 1991) (citing Restatement (Second) of Torts § 766 (1979); *Ass'n of Flight Attendants, AFL-CIO*, 2025 WL 3537390, at *9 (holding that a tortious interference claim based on an existing contract must allege that the defendant caused a breach of that contract or impaired its performance through improper means").
[111] *See Hutchings*, 716 F. Supp. 3d at 1202.
[112] *St Benedict's Dev. Co.*, 811 P.2d at 201
[113] Second Am. Compl. ¶ 296(h).

with Utah Tech or lose a *prospective* employment offer.[114] Stripped of its "tortious interference" label, the Second Amended Complaint fails to allege a distinct injury resulting from interference with an economic relationship. That failure is fatal to both tortious interference claims.

## II. Plaintiffs' Declaratory Relief Claim Fails With the Tortious Interference Claims and Is Not Ripe

Plaintiffs seek a declaratory judgment that the UGIA, as applied, unconstitutionally bars their tortious interference claims against Pedersen. That claim is not properly before this Court and cannot survive dismissal of the underlying tortious interference claims.

### a. Plaintiffs' declaratory relief claim is not properly before the Court.

Subject matter jurisdiction is a threshold question to any claim.[115] Plaintiffs' Twenty-First Cause of Action fails to achieve that threshold inquiry on two independent jurisdictional grounds.

#### i. No justiciable controversy exists.

Plaintiffs' declaratory relief claim presents no justiciable controversy and must be dismissed under Rule 12(b)(1). The jurisdictional defect is apparent from the face of the Second Amended Complaint itself, without reliance on extrinsic evidence.[116] Even accepting Plaintiffs' allegations as true, their declaratory relief claim fails on its face.[117] "[T]he disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful

---

[114] *See St. Benedict's Dev. Co.*, 811 P.2d at 201 ("A party is subject to liability for an intentional interference with present contractual relations if he intentionally and improperly causes one of the parties not to perform the contract").

[115] *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994).

[116] *Larson*, 2016 WL 11796310, at *1.

[117] *Muscogee Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010); *Owen v. Legislative Servs.*, No. 2:25-cv-00432, 2026 WL 881586, at *4 (D. Utah 2026).

purpose to be achieved in deciding them."[118] Plaintiffs' claim has not taken shape. The word "if" is doing all the structural work. Paragraph 397 of the Second Amended Complaint states: "If the UGIA serves to bar [Plaintiffs'] claims." Paragraph 404 of the Second Amended Complaint, along with others, repeats the same conditional structure: "If the UGIA serves to bar claims."[119]

But the UGIA has not been applied to bar anything. Plaintiffs' tortious interference claims fail on the merits for the reasons set forth in Argument Section I. This Court has not determined whether Pedersen is entitled to immunity, whether he acted within his scope of employment, or whether Plaintiffs' underlying tortious interference claims survive. Every predicate on which the constitutional challenge depends remains entirely unresolved.

A "claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"[120] Plaintiffs' injury is not actual or imminent—it is conjectural and hypothetical, contingent on a chain of future judicial determinations that may never occur.[121] Plaintiffs cannot use the Declaratory Judgment Act to manufacture jurisdiction over a constitutional challenge that has no present predicate.[122] The claim must therefore be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

In short, Plaintiffs' constitutional challenge is not a cause of action at all, but rather is an argument as to why underlying causes of action should survive a UGIA challenge. Such a cause of action is improper and is not ripe for adjudication. Therefore, the cause of action must be dismissed.

---

[118] *Anderson v. Univ. of Utah Hosp.*, No. 2:17-cv-00683, 2018 WL 1115148, at *2 (D. Utah Feb. 28, 2018).
[119] Second Am. Compl. ¶¶ 383, 391, 397, 404, 411.
[120] *Texas v. United States*, 523 U.S. 296, 300 (1998).
[121] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).
[122] *Alfwear, Inc. v. IBKUL Corp.*, 672 F. Supp. 3d 1174, 1186 (D. Utah 2023).

### ii.    Even if jurisdiction exists, this Court should decline to exercise it.

Even if this Court finds a justiciable controversy, the five *Mhoon* factors independently require declining jurisdiction.[123] Each factor points in the same direction.

First, a declaratory judgment would not settle the controversy.[124] If the tortious interference claims are dismissed on the merits, the constitutional challenge has no predicate and the controversy is moot. If Plaintiffs' tortious interference claims survive, the declaratory judgment still settles nothing. It would remain unresolved whether Pedersen acted within the scope of his employment, whether the UGIA would apply to the conduct at issue, and whether immunity would ultimately attach. A declaration that the UGIA is unconstitutional as applied cannot answer any of those threshold questions, and would be an impermissible advisory opinion.

Second, the declaratory action would serve no useful purpose.[125] For the UGIA to be unconstitutional as applied, it must first be applied. But  the UGIA applies only if, Pedersen acted within the scope of his employment. Plaintiffs' tortious interference claims, by contrast, require proof that he acted outside of it. Those determinations are mutually exclusive and neither has been made. A declaration that the UGIA is unconstitutional as applied would require this Court to implicitly resolve the scope of employment question. That question, however, is central to Plaintiffs' underlying tortious interference claims. It cannot be resolved through Plaintiffs' alternative cause of action for declaratory relief claim because it is premised entirely on conditional

---

[123] *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994); *Anderson*, 2018 WL 1115148, at 4–5.

[124] *Anderson*, 2018 WL 1115148, at 4.

[125] *Mhoon*, 31 F.3d at 983.

pleading. Plaintiffs' constitutional challenge is structurally self-defeating. It cannot be adjudicated without first resolving the very question that determines whether it has any basis at all.[126]

Third, Plaintiffs are using their declaratory relief claim as procedural fencing.[127] Rather than litigating their tortious interference claims on the merits, Plaintiffs seek a preemptive constitutional ruling to neutralize a potential sovereign immunity defense that has not been applied and may never be applied. That is precisely the kind of anticipatory, prophylactic pleading this factor is designed to prevent.

Fourth, Plaintiffs' constitutional challenge asks this court to increase friction between state and federal courts and improperly encroach on state jurisdiction. Whether a Utah state immunity statute is unconstitutional under the Utah Constitution's Open Courts Clause constitutes a significant state constitutional question that Utah state courts are better positioned to resolve. Exercising jurisdiction over that question in this posture—before the UGIA has even been invoked, before any threshold questions have been resolved, and before the underlying claims have been adjudicated—would improperly encroach upon state jurisdiction over a matter of state constitutional law.

Fifth, there is a better and more effective alternative remedy.[128] Dismissal of the tortious interference claims on the merits under Rule 12(b)(6) would fully resolve the dispute between the parties as to Pedersen. A constitutional challenge to the UGIA is unnecessary, premature, and would require this Court to reach a significant constitutional question that dismissal of the underlying claims would render entirely moot.[129] Courts do not reach constitutional questions

---

[126] *Anderson*, 2018 WL 1115148, at 4.
[127] *Mhoon*, 31 F.3d at 982.
[128] *Id.*
[129] *Anderson*, 2018 WL 1115148, at 5.

when a case can be resolved on other grounds, and this one can be.

Based on the foregoing, Plaintiffs' Twenty-First Cause of Action must be dismissed as to Pedersen.

> **b.  The declaratory relief claim is derivative and cannot survive dismissal of Plaintiffs' underlying tortious interference causes of action.**

The declaratory relief claim is derivative and cannot survive the dismissal of Plaintiffs' underlying tortious interference claims. Those claims are deficient in every essential respect—intent, improper means, scope, and injury—and cannot survive this Motion. A constitutional challenge predicated on barring non-existent claims is moot and offers no basis for declaratory relief.

## CONCLUSION

Pedersen respectfully requests that this Court grant his Motion and dismiss Plaintiffs' remaining claims against him in their entirety with prejudice.

DATED this 15th day of June 2026.

SNOW JENSEN & REECE, P.C.

V. Lowry Snow [130]
J. Gregory Hardman
Devon J. Herrmann
*Attorneys for Richard "Biff" Williams,
Michael Lacourse, Eric Pedersen*

---

[130] I, V. Lowry Snow, certify that this Motion to Dismiss contains 7,505 words and complies with DUCivR 7-1(a)(4).