SNOW JENSEN & REECE, P.C.
V. Lowry Snow (Utah Bar No. 3030)
J. Gregory Hardman (Utah Bar No. 8200)
Devon J. Herrmann (Utah Bar No. 15627)
Tonaquint Business Park
912 West 1600 South, Suite B-200
St. George, UT 84770
Telephone: (435) 628-3688
vlsnow@snowjensen.com
dherrmann@snowjensen.com
*Attorneys for Richard "Biff" Williams, Michael Lacourse, and Eric Pedersen*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, SOUTHERN REGION

| | |
|---|---|
| REBECCA BROADBENT, JARED RASBAND, AND HAZEL SAINSBURY, <br><br> Plaintiffs, <br><br> v. <br><br> RICHARD "BIFF" WILLIAMS, JORDON SHARP, DEL BEATTY, MICHAEL LACOURSE, HENRIE WALTON, TIFFANY WILSON, UTAH TECH UNIVERSITY, GEOFF LANDWARD, UTAH BOARD OF HIGHER EDUCATION, UTAH SYSTEM OF HIGHER EDUCATION, THE OFFICE OF THE COMMISSIONER OF HIGHER EDUCATION, ALISON ADAMS, ERIC PEDERSEN, MATT BLACK, JYL HALL, JARED MADSEN, STACY SCHMIDT, BROOKE ULRICH, TRAVIS ROSENBERG, and COURTNEY WHITE. <br><br> JOHN AND JANE DOES I-X <br><br> Defendants. | **DEFENDANT RICHARD WILLIAMS'S MOTION TO DISMISS PLAINTIFFS' DEFAMATION PER SE AND FALSE LIGHT CAUSES OF ACTION FOR FAILURE TO STATE A CLAIM WITH PREJUDICE** <br><br><br> Civil No.4:24-cv-00091-DN-PK <br><br> Judge David Nuffer <br><br> Magistrate Judge Paul Kohler |

UT.2.12(b)(6)WilliamsDefaFalsLigh.061926.295601.24.final

# Table of Contents

MEMORANDUM IN SUPPORT.................................................................................................. 5

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................... 5

STATEMENT OF FACTS ....................................................................................................... 6

LAW............................................................................................................................................ 9

    I.    Rule 12(b)(6) Standard ............................................................................................ 9

    II.    Rule 8(a) Standard ................................................................................................. 10

ARGUMENT............................................................................................................................ 10

    I.    Plaintiffs' Defamation per se Cause of Action Fails as a Matter of law ........................... 10

    II.    The Statement Does Not Support a Defamation Claim................................................... 14

        a.    The Statement Contains no Verifiable Assertion of Fact Against Plaintiffs, As Defined By Law................................................................................................................... 14

        b.    Falsity Alone is not Sufficient—the Statement Must also be Defamatory .................. 15

        c.    The Statement Cannot Reasonably be Interpreted as Defamatory ............................. 16

        d.    The Statement Does Not Support a Defamation by Implication Claim........................ 17

        e.    The Statement is Rhetorical Hyperbole—Not Actionable Defamation........................ 19

        f.    Without Special Damages or a Viable per se Theory, Dismissal is Warranted............ 21

    III.    Plaintiffs Fail to State a Claim for False Light ............................................................ 21

        a.    Plaintiffs Fail to Allege Publicity Concerning Them.................................................... 22

        b.    Williams is Not Liable for Sharp's Independent Republication ................................. 24

        c.    The Statement Cannot Reasonably be Viewed as a Factual Claim.............................. 25

CONCLUSION........................................................................................................................ 28

# Table of Authorities

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)........... 9, 10, 23, 24

*Baum v. Gillman*, 667 P.2d 41, 43 (Utah 1983).......................................................................11, 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)..................................................... 9, 10, 23, 24

*Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) ............ 6, 10

Charles A. Wright & Arthur R. Miller, *Fed. Prac. And Proc. Civil 3d,* § 1309 (2004) .................. 5

*Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1297 (Utah 2002).......11

*CVB, Inc. v. Corsicana Mattress Co.*, No. 1:20-CV-00144-DBB, 2024 WL 4505044, at *13 (D. Utah Oct. 16, 2024)......................................................................................................... 14

*Davis v. Garrity*, No. 2:13CV349 DS, 2013 WL 5745554, at *3 (D. Utah Oct. 23, 2013) .......... 14

*Eagle Air Med Corp. v. Sentinel Air Med. All., LLC*, No. 2:16-CV-176-TC-EJF, 2018 WL 566835, at *2 (D. Utah Jan. 25, 2018) .........................................................................11, 15, 25

*Elkins-Denali v. Synchrony Fin.*, No. 2:22-CV-562 TS, 2022 WL 17093401, at *1 (D. Utah Nov. 21, 2022) ......................................................................................................................... 10

*Farm Bureau Life Ins. Co. v. Am. Nat. Ins. Co., 505 F. Supp. 2d 1178, 1192 (D. Utah 2007)* ......11

*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ......... 10

*Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 787 (Ariz. 1989) ................................ 22

*Greenbelt Coop. Publ'g Ass'n, Inc. v. Bresler*, 398 U.S. 6, 13–14 (1970)............................ 20, 21

*H&H Brands, Inc. v. Manny Rivas, et al.*, 2022 WL 18779235 (D. Utah) .................................... 5

*Hogan v. Winder*, 762 F.3d 1096, 1108 (10th Cir. 2014)......................................... 18, 19, 20, 22

*Hunter v. Agility Energy, Inc.*, 419 F. Supp. 3d 1269, 1275 (D. Utah 2019) ............................... 10

*Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 50, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988) ... 19, 20

*Jacob v. Bezzant*, 212 P.3d 535, 545 (Utah 2009) ............................................................. 12, 14, 25

Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002) ........................................... 10

*Jensen v. Sawyers*, 2005 UT 81, ¶ 46, 130 P.3d 325 ............................................................. 22, 25

*Johnson v. Cmty. Nursing Servs.*, 985 F. Supp. 1321, 1328 (D. Utah 1997)............................... 13

*Jones v. U.S. Child Support Recovery*, 961 F. Supp. 1518, 1521 (D. Utah 1997) ....................... 25

*Kaveh v. Starbucks Corp.*, No. 2:24-CV-00291, 2025 WL 308256, at *8 (D. Utah Jan. 3, 2025)16

*Krinsky v. Doe 6,* 159 Cal.App.4th 1154, 72 Cal.Rptr.3d 231, 249 (2008) ................................ 19

*Larson v. SYSCO Corp.*, 767 P.2d 557, 560 (Utah 1989)................................................. 12, 13, 14

*Lichfield v. Kubler*, 2025 WL 2772468, at *4 ......................................................... 15, 16, 17, 18

*Lynch v. Standard Pub. Co.*, 51 Utah 322, 170 P. 770, 773 (1918) ........................................... 14

*Mackey v. Krause*, 2025 UT 37...................................................................................... 17

*Mast v. Overson*, 971 P.2d 928, 933 (Utah Ct.App.1998).............................................................. 19

*Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007)...................... 10

*Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284–86 (1974) ...................................... 20

*Nunes v. Rushton*, 299 F. Supp. 3d 1216, 1233 (D. Utah 2018).................................. 6, 16, 22, 25

*Paciorek*, No. 2:23-CV-00905, 2024 WL 1178583....................................................................... 23

*Porter v. Staples the Off. Superstore, LLC*, 521 F. Supp. 3d 1154, 1163 (D. Utah 2021)..... passim

*Pratt v. Nelson*, 2007 UT 41, ¶ 52, 164 P.3d 366, 382 ................................................. 14

*RainFocus, Inc. v. Cvent, Inc.*, 2023 UT App 68, ¶ 22 ................................................ 18

*Route App, Inc. v. Heuberger*, No. 2:22-CV-00291-TS-JCB, 2023 WL 5334192, at *2 (D. Utah Aug. 18, 2023) ................................................................................. 10

*Russell v. Thomson Newspapers*, 842 P.2d 896, 907 (Utah 1992) ............................... 22

*Seegmiller v. KSL, Inc.*, 626 P.2d 968, 977 n.7 (Utah 1981) ........................................11

*Shanley v. Hutchings*, 716 F. Supp. 3d 1179, 1197 (D. Utah 2024)...................... passim

*SME Steel Contractors, Inc. v. Seismic Bracing Co., LLC*, 681 F. Supp. 3d 1181, 1222 (D. Utah 2023) ................................................................................ 12, 18

*Spencer v. Glover*, 2017 UT App 69, ¶ 12, 397 P.3d 780 .......................................... 20

*Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 380 (Utah Ct. App. 1997) ........... passim

*Vasquez v. Trinity Mission Health*, No. 2:11-CV-01002-EJF, 2013 WL 4095157 (D. Utah Aug. 13, 2013) ................................................................. 26, 27, 28

*Walko v. Kean College*, 561 A.2d 680, 683 (N.J. Super. Ct. 1988)............................. 20

*Watkins v. Gen. Refractories Co.*, 805 F. Supp. 911, 918 (D. Utah 1992) ................... 23

*West v. Thomson Newspapers*, 872 P.2d................................................................. passim

*Western States Title Ins. Co. v. Warnock*, 18 Utah 2d 70, 415 P.2d 316 (1966) .....................11, 21

*Westmont Mirador, LLC v. Miller*, 362 P.3d 919, 921 (Utah Ct. App. 2014)...............11

*Westmont Residential LLC v. Buttars*, 2014 UT App 291, ¶ 22, 340 P.3d 183...........11, 19, 20, 21

*Williams v. FedEx Corp. Servs.*, No. 2:13-CV-37 TS, 2013 WL 4500431, at *5 (D. Utah Aug. 21, 2013) ................................................................................ 24

*Williams v. State Farm Ins. Co.*, 656 P.2d 966, 971 (Utah 1982) ............................... 17

**Rules**

Federal Rules of Civil Procedure 12(b) ........................................................................ 9

Federal Rules of Civil Procedure 8(a) ................................................................... 10, 23

**Treatises**

5 Charles A. Wright & Arthur R. Miller, *Fed. Prac. And Proc. Civil 3d,* § 1309 (2004) ............... 5

Restatement (Second) of Torts § 574 & comment b (1977) ........................................ 12

Restatement (Second) of Torts § 578 (Am. Law Inst. 1977) ...................................... 25

Restatement (Second) of Torts § 652D cmt. a (Am. Law Inst. 1975) ................................... 6, 22

Restatement (Second) of Torts § 652D, cmt. a (1977) ............................................... 23

Rodney A. Smolla, *Law of Defamation* § 4.05[1] at 4–18 (2d ed.1999) ..................... 20

**Constitutional Provisions**

U.S. Const. Amend I................................................................................................ 5, 21

**Pleadings**

Plaintiffs' First Amended Complaint............................................................................ 5

Second Amended Complaint .............................................................................. passim

**Secondary Sources**

33 Causes of Action 2d 1 (2007)............................................................................... 25

Defendant Richard Williams respectfully moves this Court for an order dismissing Rebecca Broadbent's, Jared Rasband's, and Hazel Sainsbury's (collectively, the "Plaintiffs") defamation *per se* and false light causes of action (the "Claims") with prejudice.

Williams bases this Motion on the accompanying Memorandum of Points and Authorities, the pleadings on file, and any other argument or evidence the Court may consider.

## MEMORANDUM IN SUPPORT

## INTRODUCTION AND SUMMARY OF ARGUMENT

After several Defendants, including Williams, moved to dismiss Plaintiffs' First Amended Complaint, Plaintiffs sought leave to file a Second Amended Complaint on June 6, 2025.[1] On May 1, 2026, this Court granted Plaintiffs' Motion for Leave to File Second Amended Complaint.[2] Despite this amendment, Plaintiffs' defamation *per se* and false light causes of action against Williams remain insufficiently pleaded and fail as a matter of law.

First, Plaintiffs cause of action for defamation fails to particularly plead[3] facts sufficient to support defamation *per se*. The allegedly defamatory statement, that Williams left a note signed by Plaintiffs ascribing them to leaving a display of vegetables in the shape of male genitals on the doorstep of a colleague recovering from a vasectomy, does not impute the commission of crime, the contraction of a loathsome disease, or any of the categories recognized under Utah law supporting defamation *per se*.[4]  The allegedly defamatory statement contains no verifiable

---

[1] Docket No. 178.

[2] Docket No. 202.

[3] *See H&H Brands, Inc. v. Manny Rivas, et al.*, 2022 WL 18779235 (D. Utah Nov. 25, 2022) (*quoting* 5 Charles A. Wright & Arthur R. Miller, *Fed. Prac. And Proc. Civil 3d,* § 1309 (2004) (stating that the heightened pleading standard for defamation claims is "more stringent than that applicable to most other substantive claims because of the historically unfavored nature of this type of action, the First Amendment implications of many of these cases, and the desire to discourage what some believe to be all too frequently vexatious litigation").

[4] *Shanley v. Hutchings*, 716 F. Supp. 3d 1179, 1197 (D. Utah 2024).

falsehood and is otherwise not defamatory[5], neither could the statement be understood as genuine by its recipient, as Plaintiffs are required to plead. [6]  Stripped of its conclusory labels, the pleadings do not support defamation per se and the claim must be dismissed.

Second Plaintiffs' cause of action for false light fails to allege facts showing that the alleged statement was published in a way that it was substantially certain to become public knowledge.[7] Plaintiffs only vaguely allege that the "ascription was . . . published to third parties."[8] Nowhere in Plaintiffs' vague allegations do they assert facts showing the alleged statement reached the public at large. Because the Statement fails at publication, Plaintiffs' false light claim cannot survive and must be dismissed.

### STATEMENT OF FACTS[9]

1.       On November 8, 2023, Williams, former president of Utah Tech University, left an assortment of vegetables displayed as male genitalia, including a long zucchini, on Defendant, Jordon Sharp's, front porch as a gift while Sharp recovered from a vasectomy.[10]

2.       Williams also left an accompanying note, reading "[w]e wanted to wish you well as you recover from your outpatient procedure. We thought some delicious produce from our garden would help you with your recovery. Here are two delicious egg plants and our award-

---

[5] *West*, 872 P.2d at 1008 ("an action for defamation is intended to protect an individual's interest in maintaining a good reputation," determined by asking whether the statement has the "tendency to injure a reputation in the eyes of its audience").

[6] *Nunes v. Rushton*, 299 F. Supp. 3d 1216, 1233 (D. Utah 2018).

[7] *Porter*, 521 F. Supp. 3d at 1165 (*citing* Restatement (Second) of Torts § 652D cmt. a (Am. Law Inst. 1975)).

[8] Second Am. Compl. ¶ 264.

[9] The following statement of facts references allegations set forth in Plaintiffs' Second Amended Complaint. These references are not admissions of truth. Because a motion to dismiss requires this Court to accept well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff, *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013), the allegations are treated as true solely for purposes of this Motion.

[10] *See* Second Am. Compl. ¶ 71.

winning zucchini, or as we like to call it our 'zuweenie.'"[11]

3.      Williams signed the note by printing Plaintiffs' names at the bottom (although Williams misspelled two of Plaintiffs' names).[12]

4.      After receiving the note and display, Sharp first contacted Williams, inquiring as to whether he had left it.[13] Next, Sharp contacted Beatty, who denied involvement.[14] Finally, Sharp "sent a group chat to his eleven full-time UMAC team members with photos of the vegetable display, the note ascribing the 'zuweenie' display to Plaintiffs, and the Ring doorbell footage link showing the man (Williams) delivering the display and note[,]" asking "who had made the delivery."[15] The "group chat" responses, including Sharp's, consisted of laughing emojis, laughing Tapbacks, and lighthearted banter regarding the note and display.[16]

5.      Certain Utah Tech faculty learned that Plaintiffs' names were linked to the note.[17]

6.      In response to the note and display, Plaintiffs formalized internal complaints at Utah Tech against Williams, Sharp, and others involved, seeking to remedy what Plaintiffs alleged to be a hostile work environment, harassment, discrimination, retaliation, abusive conduct, and defamation.[18]

7.      Plaintiffs allege, upon information and belief, that Defendant Tiffany Wilson, having learned of Plaintiffs' formalized complaint, made disparaging and false statements about Broadbent and the Office of General Counsel (the "OGC") to Interim President Courtney White

---

[11] *Id.*
[12] *Id.*
[13] *Id.* ¶ 75.
[14] *Id.* ¶ 78.
[15] *Id.* ¶¶ 80-81.
[16] *Id.* ¶¶ 81-84; *see also* Exhibit C to Second Amended Complaint (including the "group chat" text message exchange).
[17] *Id.* ¶ 75-84.
[18] *Id.* ¶122.

(and potentially others) and sought to have Broadbent's employment terminated.[19]

8.      Plaintiffs further allege, upon information and belief, that Wilson made disparaging and false statements about Broadbent and the OGC to members of the Utah Board of Higher Education ("UBHE") Audit Committee (and potentially others), asserting that the OGC's activity was vindicative and that it had isolated itself from Utah Tech.[20]

9.      Plaintiffs also allege that Williams showed White a photo of the display.[21]

10.     Plaintiffs allege that Wilson continued to make disparaging and false statements about Broadbent.[22]

11.     Likewise, Plaintiffs allege that on "November 13, 2024, Williams told Ms. Broadbent that his whole 'running group' knew about" the Statement and that the "group was also known to create and disseminate gossip far and wide."[23]

12.     Plaintiffs allege that "Williams' ascription was false, intentional, injurious, unprivileged, and published to third parties with actual malice[,]" "Williams acted within his scope of employment … when he typed the note[,]" "Williams placed plaintiffs in a false light when he falsely ascribed Plaintiffs' name to the note[,]" and "[t]he false light in which Plaintiffs have been placed would be highly offensive to a reasonable person."[24]

13.     Plaintiffs further allege that they suffered damages as a result of Williams's actions.[25]

14.     On June 6, 2025, Plaintiffs' filed a Motion for Leave to File Second Amended

---

[19] *Id.* ¶ 145.
[20] *Id.* ¶ 146.
[21] *Id.* ¶ 85.
[22] *Id.* ¶ 147.
[23] *Id.* ¶ 270.
[24] *Id.* ¶¶ 242-43, 263-65, 272.
[25] *Id.* ¶ 277.

Complaint.[26]

15.     On May 1, 2026, this Court granted Plaintiffs' Motion for Leave to File Second Amended Complaint.[27]

## LAW

### I.     Rule 12(b)(6) Standard

To survive a motion to dismiss, a complaint must contain factual allegations sufficient to state a claim that is facially plausible.[28] A claim is plausible when the factual allegations allow the court to reasonably infer that the defendant is liable for the alleged misconduct—not merely that such liability is possible.[29] Labels, legal conclusions, and "unadorned, the-defendant-unlawfully-harmed-me" accusations do not suffice.[30] Although detailed factual allegations are not required, the complaint must provide fair notice of what the claim is and the grounds upon which it rests.[31] Courts are to accept well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff.[32] "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."[33] Nor are courts bound by conclusory allegations dressed as facts.[34] Courts may also consider documents referenced in the complaint if they are central to the

---

[26] Docket No. 178.

[27] Docket No. 202.

[28] *Ashcroft v. Iqbal*, 556 U.S. 662, at 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[29] *Iqbal*, 556 U.S. at 678.

[30] *Id*. (cleaned up).

[31] *Twombly*, 550 U.S. at 555.

[32] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[33] *Elkins-Denali v. Synchrony Fin.*, No. 2:22-CV-562 TS, 2022 WL 17093401, at *1 (D. Utah Nov. 21, 2022).

[34] *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

plaintiff's claims.[35]

## II.   Rule 8(a) Standard

Rule 8(a) requires a short and plain statement showing that the pleader is entitled to relief.[36] To satisfy that requirement, a complaint must explain what the defendant did, when the defendant did it, how the defendant's conduct caused harm, and what legal right the defendant violated.[37] These requirements serve a dual purpose: they give the defendant fair notice of the claims against him and give the court sufficient clarity to adjudicate the merits.[38] Bare labels, formulaic recitations of elements, and naked assertions unsupported by factual enhancement do not meet this standard.[39]

## ARGUMENT

## I.   Plaintiffs' Defamation per se Cause of Action Fails as a Matter of law

Defamation *per se* is not a freestanding cause of action.[40] To prevail on a *defamation* claim, a plaintiff "must either prove special damages or establish that damages can be presumed."[41] Where no special damages are pled, "a claim may nonetheless survive if it alleges defamation *per se*."[42] In that case, "presumed damage … is a procedural mechanism that relieves

---

[35] *See Route App, Inc. v. Heuberger*, No. 2:22-CV-00291-TS-JCB, 2023 WL 5334192, at *2 (D. Utah Aug. 18, 2023) (cleaned up).

[36] Fed. R. Civ. P. 8(a)(2).

[37] *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

[38] *Id.*

[39] *Iqbal*, 556 U.S. at 678; *Hunter v. Agility Energy, Inc.*, 419 F. Supp. 3d 1269, 1275 (D. Utah 2019) (determining that a bare assertion without further factual enhancement does not give the court a basis to assess the elements of the claim).

[40] *Eagle Air Med Corp. v. Sentinel Air Med. All., LLC*, No. 2:16-CV-176-TC-EJF, 2018 WL 566835, at *2 (D. Utah Jan. 25, 2018).

[41] *Shanley v. Hutchings*, 716 F. Supp. 3d at 1197 (*citing Westmont Residential LLC v. Buttars*, 2014 UT App 291, ¶ 22, 340 P.3d 183) (*citing Western States Title Ins. Co. v. Warnock*, 18 Utah 2d 70, 415 P.2d 316 (1966)).

[42] *Porter*, 521 F. Supp. 3d at 1163.

a plaintiff of its burden of proving damages as an element of its prima facie case."[43]

Because Plaintiffs failed to allege special damages, their only viable path is defamation *per se*, meaning the Statement must be one "of such common notoriety that damage can be presumed from [the] words alone."[44] And the "test to determine whether a statement is libelous *per se* is when language is used concerning a person or that person's affairs that from its nature must, or presumably will as its natural and proximate consequence, cause pecuniary loss *to the person about whom the statement is made*."[45] But presumed damages are available only where a statement falls within a recognized *per se* category. The Statement here says nothing about Plaintiffs and does not fall within any of the *per se* categories recognized under Utah law.

Utah recognizes four *per se* categories: statements imputing a crime, a loathsome disease, unchastity, or incompatibility with a person's profession or business.[46] The Statement fits none of them. A vegetable display alluding to Sharp's vasectomy and a note ascribing that display to Plaintiffs[47] do not impute a crime, a loathsome disease, unchastity, or conduct incompatible with Plaintiffs' profession.

First, it does not accuse Plaintiffs of a crime or impute a loathsome disease. Neither category is implicated on any fair reading of the record.

---

[43] *Westmont Mirador, LLC v. Miller*, 362 P.3d 919, 921 (Utah Ct. App. 2014).

[44] *Baum v. Gillman*, 667 P.2d 41, 43 (Utah 1983); *accord Seegmiller v. KSL, Inc.*, 626 P.2d 968, 977 n.7 (Utah 1981) (*per se* defamation requires "words specifically directed at the person claiming injury, which words must, on their face, and without the aid of intrinsic proof, be unmistakably recognized as injurious").

[45] *Farm Bureau Life Ins. Co. v. Am. Nat. Ins. Co., 505 F. Supp. 2d 1178, 1192 (D. Utah 2007) (citing Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1297 (Utah 2002)) (emphasis added).

[46] *Porter*, 521 F. Supp. 3d at 1163; *Shanley*, 716 F. Supp. 3d at 1197 (*citing Baum*, 667 P.2d at 43).

[47] Second Am. Compl. ¶ 241.

Second, the Statement makes no reference to chastity or sexual misconduct by Plaintiffs. Utah courts narrowly construe this category, requiring a direct imputation of unchastity—a limitation historically confined to women.[48] That requirement is entirely absent here. Because defamation per se consists of defamatory words of "such common notoriety that damages can be presumed from the words alone," the statements must accuse a plaintiff of serious sexual misconduct like adultery, fornication, or sexual crimes.[49] The note does not address Plaintiffs or accuse Plaintiffs of serious sexual misconduct. Plaintiffs only appear as purported signatories to a gift making reference to male genitals.[50] The note is directed entirely at Sharp and his post-vasectomy recovery, not at alleged sexual misconduct by Plaintiffs.[51] Because the vegetable display and note do not accuse Plaintiffs of fornication, adultery, sexual crimes, or any serious sexual misconduct of such common notoriety that damages may be presumed, Plaintiffs fail to state a claim for defamation per se.

Third, the Statement does not impute conduct incompatible with Plaintiffs' profession. To satisfy this category, a statement must, "as its natural and proximate consequence, compel the conclusion that plaintiff will be damaged."[52] Speculative injury does not suffice.[53] To reach the

---

[48] *SME Steel Contractors, Inc. v. Seismic Bracing Co., LLC*, 681 F. Supp. 3d 1181, 1222 (D. Utah 2023) (citing *Baum v. Gillman*, 667 P.2d at 43; *see also Jacob v. Bezzant*, 212 P.3d 535, 545 (Utah 2009) (*quoting Larson v. SYSCO Corp.*, 767 P.2d 557, 560 (Utah 1989)); *Baum*, 667 P.2d at 43. Historically, Rasband—the male plaintiff—would not be permitted to invoke this category as a matter of law.

[49] *Shanley*, 716 F. Supp. 3d at 1197-98; Restatement (Second) of Torts § 574 & comment b (1977) ("The rule applies to a statement charging a woman with specific acts of adultery, fornication or any other form of sexual intercourse with a man other than her husband, as well as to general charges of unchaste conduct.  It does not apply to mere imputations of immodesty that do not imply unchaste conduct.").

[50] *See* Second Am. Compl. ¶ 71.

[51] *Id*.

[52] *Larson*, 767 P.2d at 560 (*citing Baum*, 667 P.2d at 43).

[53] *Id*.

*per se* threshold, a statement must be pointedly directed at conduct or a condition specifically incompatible with the plaintiff's chosen profession and not capable of two interpretations.[54] The Statement here satisfies neither requirement. In *Larson*, the court held that a notation of "poor performance" as the stated reason for termination did not satisfy the *per se* threshold because it did not inevitably damage plaintiff's standing in his trade or profession.[55]

The Statement here is far less injurious than the language complained of in *Larson*. It says nothing about Plaintiffs' fitness or competency as employees of Utah Tech. This category requires that the statement itself accuse the plaintiff of conduct incongruous with the exercise of their profession—conduct that a reasonable person would consider unmistakably injurious to their professional standing.[56] The Statement makes no such accusation. And even if some inference could be drawn accusing Plaintiffs of unprofessional conduct, an accusation of poor performance is not enough. A publication is not defamatory "simply because it is nettlesome or embarrassing to a plaintiff, or even because it makes a false statement about the plaintiff."[57] Even with regard to defamation per se, where damages are presumed, "the type of statement required . . . with respect to the practice of a trade or profession necessarily must, as its natural and proximate consequence, compel the conclusion that plaintiff will be damaged."[58] Whatever professional discomfort Plaintiffs claim is purely speculative, and speculation does not give rise to defamation *per se*.[59] Mere association with the Statement is not enough.

The threshold requirement cuts through everything else. Defamation *per se* requires a

---

[54] *Johnson v. Cmty. Nursing Servs.*, 985 F. Supp. 1321, 1328 (D. Utah 1997).
[55] *Larson*, 767 P.2d at 560 (*citing Baum*, 667 P.2d at 43).
[56] *Porter v. Staples the Off. Superstore, LLC*, 521 F. Supp. 3d 1154, 1163 (D. Utah 2021).
[57] *John Bean Techs. Corp. v. B GSE Grp., LLC*, 480 F. Supp. 3d 1274, 1322 (D. Utah 2020) (*quoting West*, 872 P.2d at 1008).
[58] *Larson*, 767 P.2d at 560.
[59] *Id.*

statement that alleges criminal conduct, loathsome disease, unchastity, or professional incompetence *on the part of the plaintiff*.[60] The Statement alleges none of those things about Plaintiffs. A statement cannot be defamatory as to a plaintiff it says nothing about. Because the Statement does not address conduct on the part of Plaintiffs or fall within any recognized *per se* category, Plaintiffs' defamation *per se* claim fails as a matter of law and must be dismissed.

## II.     The Statement Does Not Support a Defamation Claim

Under Utah law, defamation requires: (1) a false and defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault amounting to at least negligence; and (4) resulting damages.[61] Plaintiffs satisfy none of these elements.

### a.     The Statement Contains no Verifiable Assertion of Fact Against Plaintiffs, As Defined By Law

Williams's attribution of the note to Plaintiffs was not defamatory.[62] Beyond attribution as signatories on the note,[63] the Statement conveys no factual content capable of defamatory meaning. Utah law requires that a defamatory statement be one of verifiable fact—not opinion or belief— and must contextually have a tendency to injure the reputation of the plaintiff in the eyes of its audience.[64]  Williams's delivery of the vegetables and note did not have the tendency to injure Plaintiffs in the eyes of his audience, Sharp.

---

[60] *Davis v. Garrity*, No. 2:13CV349 DS, 2013 WL 5745554, at *3 (D. Utah Oct. 23, 2013) (*citing Jacob v. Bezzant*, 2009 UT 37, ¶ 26).

[61] *CVB, Inc. v. Corsicana Mattress Co.*, No. 1:20-CV-00144-DBB, 2024 WL 4505044, at *13 (D. Utah Oct. 16, 2024) (*citing Pratt v. Nelson*, 2007 UT 41, ¶ 52, 164 P.3d 366, 382) (*quoting Lynch v. Standard Pub. Co.*, 51 Utah 322, 170 P. 770, 773 (1918)).

[62] *West v. Thomson Newspapers*, 872 P.2d at 1007–08 ("an action for defamation is intended to protect an individual's interest in maintaining a good reputation," determined by asking whether the statement has the "tendency to injure a reputation in the eyes of its audience").

[63] Williams's alleged publication showing a photo of the vegetables and discussing their delivery the next day fails to even attribute the delivery as conduct by the Plaintiffs because by the nature of that exchange Williams was showing White what he did. Second Am. Compl. ¶ 85.

[64] *Id.* at 1008; *see Eagle Air Med Corp.*, 2019 WL 4140918, at *5 (*quoting West*, 872 P.2d at 1015).

The lack of tendency to injure Plaintiffs is apparent when analyzing whether the statement is fact or opinion.  Courts distinguish fact from opinion by examining four factors: (i) the common usage or meaning of the words used; (ii) whether the statement is capable of being objectively verified as true or false; (iii) the full context of the statement; and (iv) the broader setting in which the statement appears.[65] Each factor confirms that the Statement is not actionable. First, the note's words, addressing Sharp's post-vasectomy recovery,[66] carry no common meaning that imputes false facts about the sexual misconduct of Plaintiffs. Second, the note contains no objectively verifiable factual assertion capable of injuring Plaintiffs. Third, and perhaps most importantly, no reasonable person, understanding the note's context would mistake it for a statement of fact regarding Plaintiffs.  Indeed, as Plaintiffs' pleadings show, Sharp never believed Plaintiffs left the note, and his first reaction was to identify who left the gift and note in spite of what the note said. Fourth, taken in its entirety, the Statement forecloses any reasonable interpretation as commentary on Plaintiffs' character, reputation, or conduct. Indeed, Sharp—the sole recipient—never understood it as one.[67]

The note's content fails to assert a verifiable fact tending to injure Plaintiffs.

### b.  Falsity Alone is not Sufficient—the Statement Must also be Defamatory

Defamation requires a statement that is *both* false and defamatory.[68] Falsity alone is not enough.[69] Plaintiffs allege Williams signed their names to the note.[70] But defamation law does not

---

[65] *Lichfield*, 2025 WL 2772468, at *4 (*quoting West*, 872 P.2d at 1018).
[66] Second Am. Compl. ¶ 71.
[67] *See id*. at ¶¶ 75, 78–82.
[68] *Nunes*, 299 F. Supp. 3d at 1230, 1233 (*citing West*, 872 P.2d at 1015) ("if the underlying facts are not defamatory, an action for defamation is improper"); *West*, 872 P.2d at 1015; *accord Lichfield v. Kubler*, 2025 WL 2772468, at *4.
[69] *Id*.
[70] Second Am. Compl. ¶ 71.

ask whether a plaintiff was associated with a statement; it asks whether a false statement of fact was made about the plaintiff.[71] Signing someone's name to a note says nothing factually false about that person's character, reputation, conduct, or professional fitness. Dismissal is warranted when a defamation claim fails to allege a false and defamatory statement.

### c. The Statement Cannot Reasonably be Interpreted as Defamatory

The Statement's only verifiable component is the inclusion of Plaintiffs' names. But attribution in this context is not defamation. Under Utah law, a statement is defamatory only if it impugns an individual's "honesty, integrity, virtue, or reputation" in a manner that exposes them to public hatred, contempt, or ridicule.[72] Attributing authorship to the Statement imputes no moral failing and says nothing about Plaintiffs at all. Indeed, "[i]f the underlying facts are not defamatory, an action for defamation is improper." [73]

Sharp's own conduct confirms that no reasonable person understood the Statement as genuinely attributable to Plaintiffs or as defamatory. After receiving the note, Sharp contacted Williams directly, then Beatty, and finally forwarded photos to his team asking who was responsible.[74] The responses consisted of laughing emojis and lighthearted banter.[75] That reaction is telling. The laughter and banter were directed at the Statement itself—not at any negative inference about Plaintiffs' character, integrity, or reputation. Ridicule that damages reputation is actionable; embarrassment that flows from association is not.[76] No one in Sharp's group chat

---

[71] *Kaveh v. Starbucks Corp.*, No. 2:24-CV-00291, 2025 WL 308256, at *8 (D. Utah Jan. 3, 2025), *report and recommendation adopted*, *Kaveh v. Starbucks Corp.*, No. 2:24-CV-00291-AMA-DAO, 2025 WL 306041 (D. Utah Jan. 27, 2025) (*quoting West*, 872 P.2d at 1007–08).

[72] *Nunes*, 299 F. Supp. 3d at 1233.

[73] *Id.*

[74] Second Am. Compl. ¶¶ 75, 78, 80–81.

[75] *Id.* ¶¶ 81–82; *see also* Ex. C to Second Am. Compl.

[76] *West*, 872 P.2d at 1008 ("A publication is not defamatory simply because it is nettlesome or embarrassing to a plaintiff").

walked away with a diminished view of Plaintiffs because the Statement was not about them and no one believed they were responsible. Whatever discomfort Plaintiffs allegedly suffered flows from seeing their names on the note. But that is not defamation. Defamation's threshold element requires that the defendant publish false and defamatory statements concerning the plaintiff.[77] The Statement does no such thing.

The Second Amended Complaint also fails the specificity requirement. A defamation plaintiff must "describe the nature or substance of the acts or words complained of" and "set forth the language complained of in words or words to that effect."[78] Plaintiffs cannot satisfy the specificity requirement because the note makes no false factual assertions about them. Critically, courts do not interpret inferences drawn from a complaint in favor of a defamatory meaning—they independently assess the statement's susceptibility to defamatory interpretation in a non-deferential manner.[79] The Statement fails that standard. The Statement says nothing about who Plaintiffs are, what they have done, or how they conduct themselves. Where a complaint cannot identify a single defamatory statement, it cannot state a claim for defamation.[80]

### d. The Statement Does Not Support a Defamation by Implication Claim

Plaintiffs' defamation claim also fails under an implication theory. For a defamation by implication claim to succeed, two things must be true. First, a reasonable factfinder must be able to conclude that the communication actually conveys the alleged defamatory implication—not what the plaintiff subjectively thought it implied, but what a reasonable person would actually take

---

[77] *Mackey v. Krause*, 2025 UT 37, ¶ 59.

[78] *Lichfield*, 2025 WL 2772468, at *8 (*quoting Williams v. State Farm Ins. Co.*, 656 P.2d 966, 971 (Utah 1982)).

[79] *Id*.

[80] *SME Steel Contractors, Inc. v. Seismic Bracing Co., LLC*, 681 F. Supp. 3d 1181, 1221 (D. Utah 2023) (holding that "lack of specificity alone warrants" dismissal of a defamation claim where the allegedly defamatory statements are not identified).

away from it in context.[81] Second, that implication must be sufficiently factual to be objectively verifiable.[82] Pure opinion—even if highly offensive—is not enough. The implication must point to a specific, objectively verifiable assertion of fact.[83] Thus, "to prevail in a defamation by implication action, the plaintiff must show that the gist of the defendant's statement, rather than its literal meaning is 'false, defamatory, and not subject to any privilege.'"[84]

Neither prong is satisfied here.

The first prong fails because the Statement never conveyed the implication Plaintiffs allege. The Statement, Plaintiffs contend, implied they authored it. But the question is not what Plaintiffs allege the communication implied. The question is whether a reasonable audience would have drawn the same implication from the communication that Plaintiffs now assert.[85] Sharp—the sole recipient—did not.[86] "If the context makes clear a reasonable reader would not accept the statements at face value, the statements do not cause damage to the plaintiff's reputation and are therefore not defamatory."[87] Moreover, "rhetorical hyperbole, including 'juvenile name-calling,' is not defamatory because it cannot 'reasonably [be] interpreted as stating actual facts.'"[88]

Sharp did not call or confront Plaintiffs. Instead, Sharp forwarded the note to colleagues,

---

[81] *West*, 872 P.2d at 1019.

[82] *Id.* (*citing Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20–22 (1990)).

[83] *RainFocus, Inc. v. Cvent, Inc.*, 2023 UT App 68, ¶ 22 (explaining that "expressions of pure opinion . . . are incapable of being verified" and therefore "cannot serve as the basis for defamation liability").

[84] *Hogan*, 762 F.3d at 1104–06 (*quoting West*, 872 P.2d at 1007).

[85] *West*, 872 P.2d at 1008 ("If the court determines that the statement is capable of sustaining such a meaning as a matter of law, the trier of fact must then determine whether the statement was in fact so understood by its audience").

[86] *See* Second Am. Compl. ¶¶ 75, 78–82.

[87] *See Hogan*, 762 F.3d at 1106 (*citing Mast v. Overson*, 971 P.2d 928, 933 (Utah Ct.App.1998)).

[88] *Buttars*, 2014 UT App at ¶¶ 24-25 (*quoting Krinsky v. Doe 6,* 159 Cal.App.4th 1154, 72 Cal.Rptr.3d 231, 249 (2008); *Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 50, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988)).

who responded with laughing emojis and casual remarks.[89] Sharp's response—and the responses of those he shared it with—leaves no room for Plaintiffs' theory. No one who observed the Statement believed Plaintiffs sent it, understood it as a communication from them, or could have reasonably interpreted it as stating actual facts about them, as it was transparently a joke.

The second prong fails independently. Even if authorship could be implied, that implication does not point to a false and defamatory assertion of fact. The note's text contains no verifiable assertion of fact. It neither asserts nor implies anything about Plaintiffs. Authorship of a jocular get well note does not imply dishonesty, criminality, or moral failing—and does not expose Plaintiffs to public hatred, contempt, or ridicule in any legally cognizable sense.[90] At most, it reflects a subjective interpretation of tone or taste. That is not a factual assertion capable of damaging reputation. As one commentator explained:

> The classic example is the statement that John Smith was seen walking into a hotel room with Mary. On its face, the statement does not communicate anything intending to injure reputation. If, however, there is added to the statement the fact that John Smith is married to someone other than Mary, the inference that the ordinary reasonable recipient may draw—that John is involved in an adulterous relationship with Mary—becomes defamatory.[91]

The classic defamation by implication scenario requires context that transforms an innocent statement into something defamatory. No such context exists here, especially given the rhetorical hyperbole plainly expressed in the Statement, as addressed in the next section. Both prongs fail and no actionable defamatory implication exists.

e.  **The Statement is Rhetorical Hyperbole—Not Actionable Defamation**

Defamation law does not reach parody, rhetorical hyperbole, or crude humor where no

---

[89] *Id.* ¶¶ 81–82; *see also* Ex. C to Second Am. Compl.
[90] *West*, 872 P.2d at 1008.
[91] *Id*. at 1011 n. 18 (*quoting* Rodney A. Smolla, *Law of Defamation* § 4.05[1] at 4–18 (2d ed.1999)).

reasonable person would interpret the content as a factual assertion.[92] Context is dispositive. Even the most careless reader must be able to perceive that the content imparts actual facts about the plaintiff, and where no reasonable reader would draw that conclusion, the statement is not actionable.[93] Even distasteful or pointed humorous expressions do not give rise to defamation liability.[94]

Whether Plaintiffs found the Statement crude and offensive is beside the point. It is plainly that kind of expression. The note's exaggerated and farcical tone, coupled with the absurdity of anonymously sending it alongside a crude display of vegetables, removes the Statement from the realm of factual representation. The note's content leaves no doubt: the reference to a "zuweenie" in the context of recovering from a vasectomy further underscores the note's comedic intent, blending anatomical wordplay with the shape of vegetables that no reasonable person would interpret as a serious commentary on Plaintiffs' character or conduct. No reasonable person who received it would have understood it otherwise.

Sharp's reaction tells the story. Sharp did not contact Plaintiffs, found the delivery amusing, and simply passed it along to colleagues in an effort to discover who actually left the

---

[92] *Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 380 (Utah Ct. App. 1997) (*quoting Walko v. Kean College*, 561 A.2d 680, 683 (N.J. Super. Ct. 1988)) ("A parody or spoof that no reasonable person would read as a factual statement, or as anything other than a joke[,] … cannot be actionable as defamation").

[93] *Buttars*, 2014 UT at ¶ 24; *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988).

[94] *See Greenbelt Coop. Publ'g Ass'n, Inc. v. Bresler*, 398 U.S. 6, 13–14 (1970) (holding that "blackmail" was not defamatory where "even the most careless reader must have perceived that the word was no more than rhetorical hyperbole"); *West*, 872 P.2d at 1010 (citing *Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284–86 (1974)) ("traitor" in union context was rhetorical hyperbole); *Spencer v. Glover*, 2017 UT App 69, ¶ 12, 397 P.3d 780 (calling lawyer "worst ever" on Yelp was nonactionable hyperbole); *Hogan v. Winder*, 762 F.3d 1096, 1108 (10th Cir. 2014) (applying Utah law and holding inflammatory language in employment dispute was rhetorical flourish).

display and note[95]—conduct that reflects a single understanding: the Statement was a "parody or spoof that no reasonable person would read as a factual statement, or anything other than a joke."[96] The First Amendment does not permit defamation liability for crude humor simply because its subject feels embarrassed or offended.[97] As a matter of law, dismissal is appropriate when a statement is not reasonably susceptible to a defamatory interpretation.

### f.   Without Special Damages or a Viable *per se* Theory, Dismissal is Warranted

Dismissal is warranted for an additional reason: Plaintiffs have not alleged special damages. To prevail, "the plaintiff must either prove special damages or establish that damages can be presumed."[98] Special damages require a concrete, pecuniary injury that flows directly from the alleged harm but is not presumed by law.[99] Plaintiffs allege none. Without special damages— and having failed to establish defamation *per se*—dismissal is warranted.

## III.   Plaintiffs Fail to State a Claim for False Light

Unlike defamation, which protects reputation, false light safeguards a distinct interest: an individual's right to be free from false and misleading publicity that is unreasonably offensive, if not defamatory.[100] Plaintiffs' false light claim fails as a matter of law and must be dismissed.

Plaintiffs' false light claim fails on the elements. To establish false light, Plaintiffs must show that: (1) Williams publicized a matter concerning them; (2) the matter placed them before

---

[95] *Id.* at ¶¶ 74, 80, 82.
[96] *Stien*, 944 P.2d at 380.
[97] *See Greenbelt Coop. Publ'g Ass'n, Inc. v. Bresler*, 398 U.S. 6, 13–14 (1970); *West*, 872 P.2d at 1008.
[98] *Shanley*, 716 F. Supp. 3d at 1197 (*citing Westmont Residential LLC v. Buttars*, 2014 UT App 291, ¶ 22, 340 P.3d 183) (*citing Western States Title Ins. Co. v. Warnock*, 18 Utah 2d 70, 415 P.2d 316 (1966)).
[99] *See id.*
[100] *See Nunes v. Rushton*, 299 F.Supp 3d 1216, 1234-35; *see also Jensen v. Sawyers*, 2005 UT 81, ¶ 46, 130 P.3d 325; *Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 787 (Ariz. 1989).

the public in a false light; (3) the false light would be highly offensive to a reasonable person; and (4) Williams knew or recklessly disregarded the falsity of the publicized matter and the false light in which Plaintiffs would be placed.[101] Plaintiffs satisfy none of them.

### a. Plaintiffs Fail to Allege Publicity Concerning Them

Plaintiffs' false light claim fails at the threshold because the Second Amended Complaint does not allege widespread dissemination. To establish false light, Plaintiffs must first prove that Williams publicized a matter concerning them.[102] Publication to an individual, which may be enough to support defamation, is not sufficient. Instead, the statement must be publicized in a way that it is substantially certain to become public knowledge.[103] The Second Amended Complaint alleges that Williams left a note and vegetable display "on VP Sharp's front porch" and that Sharp received them.[104] In pertinent part, the note stated "[w]e wanted to wish you[105] well as you recover from your outpatient procedure…."[106] That is not publicity concerning Plaintiffs. Plaintiffs also allege that Williams showed White a photo of the display,[107] but that allegation—whether alone or combined with the delivery to Sharp—does not satisfy the publicity element, as "publication" is effective only if the statement regards Plaintiffs and is "distributed to a large number of persons, or any broadcast over the radio, or a statement made in address to a large audience."[108] "The

---

[101] *Hogan*, 762 F.3d 1096, 1110 (*citing Russell v. Thomson Newspapers*, 842 P.2d 896, 907 (Utah 1992)).

[102] *Hogan*, 762 F.3d at 1110.

[103] *Porter*, 521 F. Supp. 3d at 1165 (*citing* Restatement (Second) of Torts § 652D cmt. a (Am. Law Inst. 1975)).

[104] Second Am. Compl. ¶¶ 71, 74.

[105] *Id*. at ¶ 71 (The note was addressed only to Sharp).

[106] *Id*. at ¶ 71.

[107] *Id*. at ¶ 85.

[108] *Watkins v. Gen. Refractories Co.*, 805 F. Supp. 911, 918 (D. Utah 1992) (*quoting* Restatement (Second) of Torts § 652D, cmt. a (1977)).

distinction, in other words, is one between private and public communication."[109] The Second Amended Complaint contains no evidence that Williams shared the Statement beyond a private communication. The publicity element, therefore, is not satisfied and Plaintiffs' false light claim must be dismissed as a matter of law.

Although the Second Amended Complaint alleges that "Defendants gave publicity to matters concerning Plaintiffs that has placed the Plaintiffs before the public in a false light by widely disseminating those matters,"[110] that allegation lacks the factual enhancement Rule 8(a) requires.[111] With respect to Williams, the Second Amended Complaint identifies no facts showing his alleged actions satisfy the publicity element.

Plaintiffs also point to a general description of Utah Tech's Board of Trustees and a claim that Williams told Broadbent his "whole running group" knew about the Statement.[112] Plaintiffs allege—on information and belief—that this group included members of the Sharp household, friends and neighbors of the Williams household, and individuals "known to create and disseminate gossip far and wide."[113] Plaintiffs' characterization of unnamed individuals as "known to create and disseminate gossip far and wide" is a conclusory label, not a factual allegation— precisely the kind of threadbare assertion courts are instructed to disregard.[114] It identifies no individuals, no acts of dissemination, and no facts connecting any dissemination to Williams. And even accepting these conclusory labels, Plaintiffs fail to allege how the act of Williams's publication of the Statement—leaving the display and note on Sharp's front porch and showing

---

[109] *Id*.

[110] Second Am. Compl.¶ 262,

[111] *Paciorek*, No. 2:23-CV-00905, 2024 WL 1178583 (*quoting Iqbal*, 556 U.S. at 678) (*quoting Twombly*, 559 U.S. at 555, 557).

[112] Second Am. Compl. ¶¶ 269–71.

[113] *Id.*

[114] *Iqbal*, 556 U.S. at 678.

White a photo the next day—made it substantially certain that the Statement would become known to the public at large.

Broadbent, Plaintiffs claim, was "stunned and devastated" to learn the information was "churning out in the community."[115] This, too, fails the publicity element. Utah law requires that Williams himself publicize the information to the public at large.[116] Here, Plaintiffs do not identify who told the running group—let alone trace that disclosure to Williams.[117] How the group came to know and who told them is left entirely to speculation. Courts do not fill pleading gaps with inference.[118] Awareness of third-party gossip and publication are not the same thing. Plaintiffs allege no facts connecting Williams to the dissemination—only that he stated others knew.[119]

Because Plaintiffs do not allege that the matter was publicized beyond a limited audience or that it reached the public at-large,[120] their false light claim fails as a matter of law and must be dismissed.

### b. Williams is Not Liable for Sharp's Independent Republication

Plaintiffs' fallback argument fares no better. They contend that Williams's denial of involvement "resulted in Sharp's dissemination."[121] Plaintiffs are wrong. First, a denial of

---

[115] Second Am. Compl. ¶¶ 269–71.

[116] *Williams v. FedEx Corp. Servs.*, No. 2:13-CV-37 TS, 2013 WL 4500431, at *5 (D. Utah Aug. 21, 2013) (holding that "false light requires a plaintiff to demonstrate that … the *defendant* publicized a matter concerning the plaintiff that placed the plaintiff before the public in a false light") (emphasis added).

[117] Second Am. Compl. ¶¶ 270–72.

[118] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief'").

[119] Second Am. Compl. ¶¶ 269–71.

[120] *Porter*, 521 F. Supp. 3d at 1165 (*citing Jacob*, 212 P.3d 535, 543) (stating that a false light claim requires that the matter at-issue place the plaintiff in a false light before the public at-large).

[121] *Id*. at ¶ 266.

involvement is not *publication*.[122] Second, Plaintiffs attribute Sharp's publication to Williams.[123] But Williams did not contact Beatty or text the "eleven full-time UMAC team members."[124] Sharp did.[125] A defendant cannot be held liable for a third party's independent decision to republish a private communication.[126] Utah law requires that the defendant himself publicize the information to the public at large.[127] Liability does not arise when a third party disseminates information of their own volition.[128] Lastly, Plaintiffs' allegation is entirely hypothetical and rests on a self-serving assumption. Plaintiffs contend that had Williams confirmed his involvement to Sharp, Sharp would not have disseminated the Statement. That assumption is pure speculation. Plaintiffs cannot establish causation by guessing at what Sharp would have done under different circumstances.

### c.  The Statement Cannot Reasonably be Viewed as a Factual Claim

Plaintiffs' false light claim fails for an additional and independent reason: the Statement cannot reasonably be viewed as a factual claim. "[A]n action for 'false light' invasion of privacy cannot survive when the publication or statement sued upon cannot be reasonably viewed as a

---

[122] *See Eagle Air Med Corp. v. Sentinel Air Med. All., LLC*, No. 2:16-CV-00176-TC-EJF, 2019 WL 4140918, at \*12 (D. Utah Aug. 30, 2019), *on reconsideration in part*, *Eagle Air Med Corp. v. Sentinel Air Med. Alliance, LLC*, No. 2:16-CV-00176-TC-EJF, 2019 WL 6879252 (D. Utah Dec. 17, 2019) (*quoting Jones v. U.S. Child Support Recovery*, 961 F. Supp. 1518, 1521 (D. Utah 1997) ("Examples [of publication] would include newspapers, magazines, handbills to a large number of people or a statement made to a large audience")).

[123] Second Am. Compl. ¶ 266.

[124] *Id*. at ¶¶ 78-82.

[125] *Id*.

[126] *See* Restatement (Second) of Torts § 578 (Am. Law Inst. 1977) (providing that one who "only deliver[s] or transmit[s]" a communication to a single recipient is not subject to liability for a third party's subsequent republication of that communication).

[127] *Nunes*, 299 F. Supp. 3d at 1234.

[128] *See* 33 Causes of Action 2d 1 (2007) (*citing Jensen v. Sawyers*, 2005 UT 81, 130 P.3d 325) ("The defendant in a false light invasion of privacy action generally will be the person who made the representation allegedly placing the plaintiff in a false light." Sharp, not Williams, disseminated the note beyond its single intended recipient).

factual claim and is nothing more than a joke or a spoof."[129] The false light tort protects individuals from "major misrepresentation[s] of ... character, history, activities or beliefs"—not from jokes.[130] Where a statement cannot reasonably be taken as factual, the public receives no false impression about the plaintiff.[131]

This case is far closer to *Stien* than to *Vasquez*.[132] In *Stien*, a company Christmas party videotape edited the recorded comments of seventeen employees—originally describing household chores they disliked—to make it appear as though each was answering the question "What's sex like with your partner?"[133] The video was then shown to approximately 200 employees and guests.[134] The plaintiff, whose husband appeared in the video, brought a false light claim on the ground that the video placed her before the public in a false light.[135] The *Stien* court rejected the plaintiff's false light claim because no reasonable viewer would have understood the videotape as a factual statement about her private life.[136] False light protects against major misrepresentations of character or belief—not against content that no one could reasonably interpret as factual.[137] Because "[t]hose viewing the video had to know it was a spoof, devoid of any real or purported factual material," the *Stien* court affirmed summary judgment on the false light claim.[138]

---

[129] *Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 380-81 (Utah Ct. App. 1997).
[130] *Id.* at 381.
[131] *Id.*
[132] *Vasquez v. Trinity Mission Health*, No. 2:11-CV-01002-EJF, 2013 WL 4095157 (D. Utah Aug. 13, 2013).
[133] *Stien*, 944 P.2d at 375–76.
[134] *Id.* at 376.
[135] *Id.* at 377.
[136] *Stien*, 944 P.2d 381.
[137] *Id*.
[138] *Id*.

In *Vasquez*, by contrast, a supervisor received an errant text message from a subordinate female employee addressed to a male co-worker and, at a managerial meeting, read the message aloud to colleagues while falsely characterizing it as evidence of an illicit romantic affair between the two married employees.[139] The plaintiff—a married woman with twenty-five years of marriage and four children—had sent what she described as a benign message inquiring about a friend's family matters.[140] Unlike the obvious spoof in *Stien*, a reasonable person could understand the supervisor's statement in *Vasquez* as a genuine and potentially highly offensive accusation of unchaste conduct, and the *Vasquez* court denied summary judgment on that basis.[141]

Here, the Statement is similar to *Stien*, not *Vasquez*, and cannot reasonably be taken as a factual claim about Plaintiffs' character, history, or conduct because the public—or in this case Sharp—did not form a false impression about them. Sharp, and even those he distributed the Statement to, knew it was a spoof, "devoid of any real or purported factual material."[142]

In determining whether a statement is highly offensive, courts consider "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded."[143] Every factor points the same direction. In context, the Statement was innocuous. The setting: a colleague's front porch.[144] The audience: Sharp and his team.[145] The objective: humor, not harm.

The Statement made no factual assertions about Plaintiffs. No one walked away with a

---

[139] *Vasquez*, 2013 WL 4095157, at *4.
[140] *Id.*
[141] *Id.* at *20.
[142] *Stien*, 944 P.2d at 381.
[143] *Vasquez*, 2013 WL 4095157, at *20 (*quoting Stien*, 944 P.2d at 379).
[144] Second Am. Compl. ¶ 71.
[145] *Id.* at ¶¶ 71-82.

false impression of Plaintiffs because it was not about Plaintiffs and no one believed Plaintiffs were responsible. Because the Statement does not place Plaintiffs before the public in a false light that would be highly offensive to a reasonable person, their false light claim fails as a matter of law and must be dismissed.

## **CONCLUSION**

Williams respectfully requests that this Court grant his Motion and dismiss, with prejudice, Plaintiffs' Claims for defamation and false light.

DATED this 19th day of June 2026.

SNOW JENSEN & REECE, P.C.

*/s/ V. Lowry Snow\**
V. Lowry Snow [146]
J. Gregory Hardman
Devon J. Herrmann
*Attorneys for Richard "Biff" Williams,*
*Michael Lacourse, Eric Pedersen*
*\*Signed with permission*

---

[146] I, V. Lowry Snow, certify that this Motion to Dismiss contains 7,545 words and complies with DUCivR 7-1(a)(4).