SNOW JENSEN & REECE, P.C.
V. Lowry Snow (Utah Bar No. 3030)
J. Gregory Hardman (Utah Bar No. 8200)
Devon J. Herrmann (Utah Bar No. 15627)
Tonaquint Business Park
912 West 1600 South, Suite B-200
St. George, UT 84770
Telephone: (435) 628-3688
vlsnow@snowjensen.com
dherrmann@snowjensen.com
*Attorneys for Richard "Biff" Williams, Michael Lacourse, and Eric Pedersen*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, SOUTHERN REGION

| | |
|---|---|
| REBECCA BROADBENT, JARED RASBAND, AND HAZEL SAINSBURY,<br><br>Plaintiffs,<br><br>v.<br><br>RICHARD "BIFF" WILLIAMS, JORDON SHARP, DEL BEATTY, MICHAEL LACOURSE, HENRIE WALTON, TIFFANY WILSON, UTAH TECH UNIVERSITY, GEOFF LANDWARD, UTAH BOARD OF HIGHER EDUCATION, UTAH SYSTEM OF HIGHER EDUCATION, THE OFFICE OF THE COMMISSIONER OF HIGHER EDUCATION, ALISON ADAMS, ERIC PEDERSEN, MATT BLACK, JYL HALL, JARED MADSEN, STACY SCHMIDT, BROOKE ULRICH, TRAVIS ROSENBERG, and COURTNEY WHITE.<br><br>JOHN AND JANE DOES I-X<br><br>Defendants. | **DEFENDANT RICHARD WILLIAMS' MOTION TO DISMISS PLAINTIFFS' TORTIOUS INTEFERENCE AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CAUSES OF ACTION FOR FAILURE TO STATE A CLAIM WITH PREJUDICE**<br><br><br><br>Civil No.4:24-cv-00091-DN-PK<br><br>Judge David Nuffer<br><br>Magistrate Judge Paul Kohler |

UT.2.12(b)(6)WilliamsIIEDTortInterf.061926.295601.24.final

## Table of Contents

MEMORANDUM IN SUPPORT ................................................................................................ 6

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................... 6

    I.    Plaintiffs' Tortious Interference Claims Fail as a Matter of Law ...................................... 6

    II.   Plaintiffs' IIED Claim Fails as a Matter of Law ............................................................... 7

STATEMENT OF FACTS ........................................................................................................ 8

    Plaintiffs' Intentional Infliction of Emotion Distress Cause of Action ..................................... 9

    Plaintiffs' Tortious Interference with Existing and Prospective Economic Relations Causes of Action ...................................................................................................................................... 10

LAW ......................................................................................................................................... 12

    I.    Rule 12(b)(6) Standard ...................................................................................................... 12

    II.   Rule 8(a) Standard ............................................................................................................. 12

ARGUMENT ............................................................................................................................ 13

    I.    Intentional Infliction of Emotional Distress ...................................................................... 13

        a.    Plaintiffs fail to allege extreme and outrageous conduct. .............................................. 13

        b.    Plaintiffs fail to allege intent to inflict emotional distress. ........................................... 17

        c.    Plaintiffs fail to allege manifestations of severe physical or emotional distress. ......... 18

    II.   Tortious Interference ......................................................................................................... 19

        a.    Intent is the first element. The Second Amended Complaint does not plead it. ........... 20

        b.    The tortious interference claims rest on conduct that is not independently tortious or unlawful. .............................................................................................................................. 24

        c.    Tortious interference requires conduct outside the scope of employment. .................... 27

        d.    Plaintiffs' alleged damages are not factually connected to Williams's alleged interference. ......................................................................................................................... 30

CONCLUSION .......................................................................................................................... 32

# Table of Authorities

## Cases

*Allied World Nat'l Assur. Co. v. Monavie, Inc.*, No. 2:12-cv-393-DAK, 2013 WL 3716530 at *4 (D. Utah July 12, 2013) .................................................................. 14

*Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 55, 116 P.3d 323 ..................................................... 17

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).................... passim

*Ass'n of Flight Attendants, AFL-CIO v. Skywest Airlines Inc.*, No. 2:23-CV-00723-DBB-DBP, 2025 WL 3537390, at *9 (D. Utah Dec. 9, 2025) ..................................................... 21

*Barnes-Mohammed v. Watchdog Self Storage*, No. 2:25-CV-00198-DBB-DBP, 2026 WL 855764, at *4 (D. Utah Mar. 11, 2026) ......................................................................... 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).......................................................... 6, 12, 29

*Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) ............... 12

*C.C. v. Roadrunner Trucking, Inc.*, 823 F. Supp. 913, 920 (D. Utah 1993)................................. 30

*C.R. England, Inc. v. Swift Transp. Co.*, No. 2:07-cv-00082, 2010 WL 3582069, at *5 (D. Utah Sept. 10, 2010) ...................................................................................... 24, 26, 27

*Carlton v. Brown*, 2014 UT 6, ¶ 57, 323 P.3d 571 ............................................................... 7, 8, 19

*Cella v. MobiChord, Inc.*, No. 2:17-CV-527-TC, 2020 WL 416668, at *4 (D. Utah Jan. 27, 2020) ............................................................................................................................ 23, 26

*Chard v. Chard*, 2019 UT App 209, ¶ 57, 456 P.3d 776) ............................................................. 13

*Christoffersen v. Nucor Corp.*, No. 4:25-CV-00118-DN-PK, 2026 WL 661861, at *5 (D. Utah Feb. 19, 2026) ......................................................................................................... 14

*Clover v. Snowbird Ski Resort,* 808 P.2d 1037, 1040 (Utah 1991) ............................................... 30

*CounselNow, LLC v. Deluxe Small Bus. Sales Inc.*, 430 F. Supp. 3d 1247, 1261 (D. Utah 2019) 20

*Eldridge v. Johndrow*, 2015 UT 21, ¶ 46, 345 P.3d 553 ............................................... 6, 20, 21, 23

*Fowler v. McDougal*, No. 2:16-CV-00163, 2016 WL 7912004, at *1 (D. Utah Dec. 14, 2016).... 8

*Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 51, 201 P.3d 966 ................................. 26, 27, 28

*Hardy v. D&D Mgmt. 2, LLC*, No. 1:24-CV-00066-TS-JCB, 2025 WL 2530726 (D. Utah Sept. 3, 2025) .......................................................................................................................... 24, 27

*Hunter v. Agility Energy, Inc.*, 419 F. Supp. 3d 1269, 1275 (D. Utah 2019) ............................... 13

*Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) ............................................ 12

*John Bean Techs. Corp. v. B GSE Grp., LLC*, 480 F. Supp. 3d 1274, 1328 (D. Utah 2020)........ 20

*Juliano v. Engel*, No. 2:23-CV-351 TS, 2023 WL 5311453, at *1 (D. Utah Aug. 17, 2023).. 13, 14

*Kosher Eats LLC v. Welch*, No. 2:24-CV-00520-DBB-DBP, 2025 WL 1432219, at *6 & n.68 (D. Utah May 6, 2025) ......................................................................................................... 30

*Leigh Furniture & Carpet Co. v. Isom*, 675 P.2d 293, 306 (1982) ......................................... 23, 26

*Lester v. ConocoPhillips & WoodGroup PSN, Inc.*, No. 4:18-CV-00022-DN-PK, 2021 WL 308222, at *5 (D. Utah Jan. 28, 2021) ................................................................................ 19

*Linebaugh v. Gibson*, 2020 UT App 108, ¶ 43, 471 P.3d 835........................................... 14, 18, 19

*Mackey v. Krause*, 2025 UT 37, ¶¶ 87–89, 93, 575 P.3d 1162................................................. 17, 18

*Manning v. Wal-Mart Stores, Inc.*, 2016 WL 344530, at *1 (D. Utah Jan. 27, 2016).................. 16

*Martineau v. Currutt*, No. 121CV00045JNPDBP, 2022 WL 180735, at *5 (D. Utah Jan. 19, 2022) ........................................................................................................................... 14, 18, 29

*Mumford v. ITT Commercial Fin. Corp.*, 858 P.2d 1041, 1044 (Utah Ct. App. 1993)................. 20

*Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007)...................... 13

*Nelson v. Pehrson*, No. 2:24-CV-568 TS, 2025 WL 2675804, at *2 (D. Utah Sept. 18, 2025).... 15

*Overstreet v. United Parcel Serv. Inc.*, No. 2:24-CV-00478-TC-DBP, 2025 WL 69189, at *13 (D. Utah Jan. 10, 2025) ................................................................................................................ 15

*Porter v. Staples the Off. Superstore, LLC*, 521 F. Supp. 3d 1154, 1161 (D. Utah 2021)............... 7

*Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 38, 56 P.3d 524, 536 ...................................... 7

*Rasmussen v. Gen. Growth Props., Inc.*, No. 2:04-CV-00099PGC, 2005 WL 8175016, at *2 (D. Utah Feb. 22, 2005 ............................................................................................................... 16

*Robertson v. Utah Fuel Co.*, 889 P.2d 1382, 1389 (Utah Ct. App. 1995).................................... 16

*Ruesch v. Purple Shovel, LLC*, No. 4:18-CV-00028-DN, 2021 WL 1201209, at *9 (D. Utah Mar. 30, 2021) ......................................................................................................................... 8, 19

*Shanley v. Hutchings*, 716 F. Supp. 3d 1179, 1202 (D. Utah 2024).............................................. 15

*Skywest Airlines Inc.*, 2025 WL 3537390, at *9 ...................................................................... 21, 22

*St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991)............... 21, 22, 30

*State Farm Fire and Casualty Company v. Ryobi America Corporation*, No. 1:25-CV-145-DAK-JCB, 2026 WL 1162931, at *2 (D. Utah Apr. 29, 2026)............................................................. 7

*Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 380 (Utah Ct. App. 1997)................. 15

*Tingey v. Midwest Off., Inc.*, No. 1:22-cv-145-TC, 2023 WL 8602841, at *4 (D. Utah Dec. 12, 2023) ........................................................................................................................................ 13

*Tomlinson v. NCR Corp.*, 2014 UT 55, 345 P.3d 523 ................................................................. 15

*Tomlinson v. NCR Corp.*, 296 P.3d 760, 769 (Utah Ct. App. 2013)............................................. 15

*West v. Thomson Newspapers*, 872 P.2d 999, 1007-08 (Utah 1994)............................................. 15

*Whiting v. Carbon Cnty., Utah*, No. 4:25-CV-00011-DN-PK, 2026 WL 221844, at *3 (D. Utah Jan. 28, 2026) ...................................................................................................................... 8, 23

*Williams v. ICON - Salt Lake City*, No. 2:24-CV-00427, 2025 WL 1071647, at *6 (D. Utah Feb. 4, 2025) ............................................................................................................................... 13

*Zemaitiene v. Corporation of Presiding Bishop*, 2018 WL 1581252, at *4 (D. Utah Mar. 28, 2018) ........................................................................................................................................ 17

*Zoumadakis v. Uintah Basin Med. Ctr.*, 122 P.3d 891, 894 (Utah Ct. App. 2005) ............... 16, 17

## Rules

Federal Rules of Civil Procedure 12(b) ................................................................................... 12, 18

Federal Rule of Civil Procedure Rule 8(a) .................................................................................. 12

## Treatises

Restatement (Second) of Torts § 315 (1965) ............................................................................... 25

Restatement (Second) of Torts § 766 (1979) ................................................................ 21

**Pleadings**

Plaintiffs' Motion for Leave to File Second Amended Complaint ................................................ 6
Plaintiffs' Second Amended Complaint ................................................................ passim

Defendant Richard Williams respectfully moves this Court for an order dismissing Rebecca Broadbent's, Jared Rasband's, and Hazel Sainsbury's (collectively, the "Plaintiffs") tortious interference with *existing* and *prospective* economic relations and intentional infliction of emotional distress ("IIED") causes of action (the "Claims") with prejudice.

Williams bases this Motion on the accompanying Memorandum of Points and Authorities, the pleadings on file, and any other argument or evidence the Court may consider.

## MEMORANDUM IN SUPPORT

## INTRODUCTION AND SUMMARY OF ARGUMENT

After several Defendants moved to dismiss, including Williams, Plaintiffs sought leave to file a Second Amended Complaint on June 6, 2025.[1] On May 1, 2026, this Court granted Plaintiffs' Motion for Leave to File Second Amended Complaint.[2] Plaintiffs' Claims remain insufficiently pleaded and fail as a matter of law.

### I.    Plaintiffs' Tortious Interference Claims Fail as a Matter of Law

Utah law requires a plaintiff to plead that the defendant interfered through improper means—conduct contrary to law, including violations of statutes, regulations, recognized common-law rules, or established trade or professional standards.[3] The Second Amended Complaint does no more than allege that "Defendants intentionally interfered with the Plaintiffs'… economic relations by improper means."[4] Lacking factual enhancement, that naked recitation of legal elements cannot satisfy Rule 8(a).[5] Plaintiffs' tortious interference claims must be dismissed.

---

[1] Docket No. 178.

[2] Docket No. 202.

[3] *See Eldridge v. Johndrow*, 2015 UT 21, ¶ 46, 345 P.3d 553.

[4] *See* Second Am. Compl. ¶ 305.

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 577).

## II.    Plaintiffs' IIED Claim Fails as a Matter of Law

To survive dismissal, an IIED claim must allege intentional conduct that a reasonable person would consider outrageous and that results in severe physical and mental manifestations.[6] Conduct is considered outrageous if it evokes "outrage or revulsion" and is "more than unreasonable, unkind, or unfair."[7] If a reasonable person would not find the alleged conduct outrageous, a court may dismiss an IIED claim as a matter of law.[8] Plaintiffs' allegations fall well short of that standard on three independent grounds.

First, Plaintiffs never allege that Williams' conduct reached the level of outrageousness Utah law requires. The Statement[9] does not come close to exceeding "'all bounds of that usually tolerated in a civilized society.'"[10] Plaintiffs offer no facts supporting that characterization—only the conclusory assertion that Williams engaged in "extreme and outrageous conduct."[11] But a "recitation of the elements without any supporting facts is not enough."[12]

Second, Plaintiffs never allege how Williams' actions were intentionally directed at Plaintiffs. Instead, they broadly allege that "Williams … intentionally inflicted emotional distress on Plaintiffs."[13] But "[t]hreadbare recitals of the elements of a cause of action, supported by mere

---

[6] *Carlton v. Brown*, 2014 UT 6, ¶ 57, 323 P.3d 571.

[7] *Porter v. Staples the Off. Superstore, LLC*, 521 F. Supp. 3d 1154, 1161 (D. Utah 2021) (*citing Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 38, 56 P.3d 524, 536).

[8] *Id*.

[9] As alleged in the Second Amended Complaint, then-President Williams left a display of vegetables shaped as male genitalia on a colleague's porch and attributed it to Plaintiffs via an accompanying note. Second Am. Compl. ¶ 71. The display and note are referred to collectively as the "Statement."

[10] *Barnes-Mohammed v. Watchdog Self Storage*, No. 2:25-CV-00198-DBB-DBP, 2026 WL 855764, at *4 (D. Utah Mar. 11, 2026), *report and recommendation adopted*, No. 2:25-CV-00198-DBB-DBP, 2026 WL 853496 (D. Utah Mar. 27, 2026) (cleaned up).

[11] Second Am. Compl. ¶ 321.

[12] *State Farm Fire and Casualty Company v. Ryobi America Corporation*, No. 1:25-CV-145-DAK-JCB, 2026 WL 1162931, at *2 (D. Utah Apr. 29, 2026).

[13] Second Am. Compl. ¶ 317.

conclusory statements"[14] will not suffice.

Third, the ill effects Plaintiffs allege are not the severe physical and mental manifestations Utah law requires.[15] Plaintiffs allege they suffered "severe physical and emotional distress."[16] But this is nothing more than a conclusory allegation untethered to any particular act allegedly caused by Williams.

Each deficiency independently warrants dismissal, and together they leave Williams without fair notice of any cognizable claim.[17]

## STATEMENT OF FACTS[18]

1. On November 8, 2023, Williams, former president of Utah Tech University, left an assortment of vegetables displayed as male genitalia, including a long zucchini on Defendant, Jordon Sharp's, porch as a gift while Sharp recovered from a vasectomy.[19]

2. Williams also left a note saying, "We wanted to wish you well as you recover from your outpatient procedure. We thought some delicious produce from our garden would help you with your recovery. Here are two delicious egg plants and our award-winning zucchini, or as we like to call it our 'zuweenie.'"[20]

---

[14] *Whiting v. Carbon Cnty., Utah*, No. 4:25-CV-00011-DN-PK, 2026 WL 221844, at *3 (D. Utah Jan. 28, 2026) (cleaned up).

[15] *See Ruesch v. Purple Shovel, LLC*, No. 4:18-CV-00028-DN, 2021 WL 1201209, at *9 (D. Utah Mar. 30, 2021) (*quoting Carlton*, 2014 UT 6, ¶ 57) (explaining that a plaintiff "'must prove that distress by means of severe physical or mental manifestations'")).

[16] Second Am. Compl. ¶ 321.

[17] *See Fowler v. McDougal*, No. 2:16-CV-00163, 2016 WL 7912004, at *1 (D. Utah Dec. 14, 2016), *report and recommendation adopted*, No. 2:16CV163DAK, 2017 WL 280699 (D. Utah Jan. 20, 2017) (cleaned up).

[18] Because a motion to dismiss requires this Court to accept well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff, *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013), the allegations are treated as true solely for purposes of this Motion.

[19] *See* Second Am. Compl. ¶ 71.

[20] *Id.*

3.      Williams signed the note by printing Plaintiffs' names at the bottom (although Williams misspelled two of Plaintiffs' names).[21]

4.      Upon receiving the vegetable display and note, Sharp messaged certain colleagues, inquiring who had written it.[22]

5.      Some members of Utah Tech faculty learned that Plaintiffs' names were linked to the note.[23]

6.      In response to the Statement, Plaintiffs formalized complaints against Williams, Sharp, and others involved, seeking to remedy what Plaintiffs alleged to be a hostile work environment, harassment, discrimination, retaliation, abusive conduct, and defamation.[24]

7.      Plaintiffs allege, upon information and belief, that Defendant, Tiffany Wilson, having learned of Plaintiffs' formalized complaint, made disparaging and false statements about Broadbent and the Office of General Counsel (the "OGC") to Interim President Courtney White (and potentially others) and sought to have Broadbent's employment terminated.[25]

### Plaintiffs' Intentional Infliction of Emotion Distress Cause of Action

8.      Plaintiffs allege that "Williams … intentionally inflicted emotional distress on Plaintiffs."[26]

9.      Plaintiffs further allege that "[b]y ascribing the vulgar display to Plaintiffs in front of their peers and colleagues, Williams, Sharp, Beatty, Walton, Madsen, Schmidt, Black, and Ulrich intentionally engaged in extreme and outrageous conduct with the purpose of inflicting

---

[21] *Id.*
[22] *Id.* ¶¶ 75-79.
[23] *Id.* ¶¶ 75-84.
[24] *Id.* ¶ 122.
[25] *Id.* ¶ 145.
[26] *Id.* ¶ 317.

emotional distress."[27]

10.    Plaintiffs also allege that "Defendants' conduct went beyond all possible bounds of decency due to the outrageousness of falsely, and repeatedly, attributing a sexually obscene display of male genitalia to Plaintiffs, the top officials responsible for enforcing federal antidiscrimination laws at a public university—who had, for months, already faced a campaign of hostility and retaliation to discredit them and the legitimacy of their offices—and then retaliating against them for attempting to speak out against it."[28]

11.    Plaintiffs allege that Williams' delivery of the note and display to Sharp was directed towards Plaintiffs.[29]

12.    Plaintiffs allege that "Williams defamed Plaintiffs when he falsely ascribed Plaintiffs' names to a note containing sexual innuendo accompanying an innately vulgar sexual display and delivered the display and note to Sharp."[30]

13.    Plaintiffs allege that *Defendants* acted intentionally, Plaintiffs suffered severe emotional distress as a result of *Defendants'* outrageous conduct, and Plaintiffs suffered damages.[31]

14.    Plaintiffs also allege that Williams denied involvement to Broadbent and Sharp, which they allege resulted in "additional defamation to Plaintiffs."[32]

**Plaintiffs' Tortious Interference with Existing and Prospective Economic Relations Causes of Action**

15.    Plaintiffs allege that "Utah Tech has a contract with Plaintiffs."[33]

---

[27] *Id.* ¶ 318.
[28] *Id.* ¶ 319.
[29] *Id.* ¶ 73.
[30] *Id.* ¶ 241.
[31] *Id.* ¶¶ at 320-22.
[32] *Id.* ¶¶ 76-77, 96-99, 243-45, 266.
[33] *Id.* ¶ 295.

16. Plaintiffs allege that Williams, as the President of Utah Tech, defamed Plaintiffs and placed them in a false light by intentionally and falsely ascribing their names to a vulgar sexual display and a note containing sexual innuendo.[34] Plaintiffs also allege that Williams published the display and note to third parties with actual malice by delivering it to Sharp.[35]

17. Plaintiffs further allege that, while acting within the scope of his employment, Williams did not admit to placing the note and display on Sharp's front porch.[36] Plaintiffs contend that Williams's denial of involvement led to the further dissemination of the content.[37]

18. Plaintiffs allege that, with respect to their tortious interference with *existing* economic relations cause of action, "*Defendants* were acting for purely personal reasons."[38]

19. Plaintiffs allege that "*Defendants'* actions have frustrated and stymied Plaintiffs' abilities to fulfill their employment obligations to Utah Tech" and that their actions "were not … in the best interest of the University."[39] As a result, Plaintiffs allege that Defendants knowingly caused Plaintiffs to suffer damages.[40]

20. Plaintiffs allege that "*Defendants* intentionally interfered with the Plaintiffs' prospective economic relations by improper means for an improper purpose, including violations of law, intimidation, deceit, misrepresentation, unfounded adverse employment actions, defamation, and disparaging falsehood, as set forth in detail above[,]" causing them to suffer damages.[41]

---

[34] *Id*. ¶ 296.

[35] *Id*.

[36] *Id*.

[37] *Id*.

[38] *Id*. 297 (emphasis added).

[39] *Id*. ¶ 298-99 (emphasis added).

[40] *Id*. ¶ 300, 303.

[41] *Id*. ¶¶ 305, 315 (emphasis added).

## LAW

### I.    Rule 12(b)(6) Standard

To survive a motion to dismiss, a complaint must contain factual allegations sufficient to state a claim that is facially plausible.[42] A claim is plausible when the factual allegations allow the court to reasonably infer that the defendant is liable for the alleged misconduct—not merely that such liability is possible.[43] Labels, legal conclusions, and "unadorned, the-defendant-unlawfully-harmed-me" accusations do not suffice.[44] Although detailed factual allegations are not required, the complaint must provide fair notice of what the claim is and the grounds upon which it rests.[45] Courts are to accept well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff.[46] "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."[47] Nor are courts bound by conclusory allegations dressed as facts.[48] Courts may also consider documents referenced in the complaint if they are central to the plaintiff's claims.[49]

### II.    Rule 8(a) Standard

Rule 8(a) requires a short and plain statement showing that the pleader is entitled to relief.[50]

---

[42] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[43] *Iqbal*, 556 U.S. at 678.

[44] *Id*. (cleaned up).

[45] *Twombly*, 550 U.S. at 555.

[46] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[47] *Elkins-Denali v. Synchrony Fin.*, No. 2:22-CV-562 TS, 2022 WL 17093401, at *1 (D. Utah Nov. 21, 2022) (*citing Iqbal*, 556 U.S. at 679).

[48] *Burnett*, 706 F.3d at 1235.

[49] *See Route App, Inc. v. Heuberger*, No. 2:22-CV-00291-TS-JCB, 2023 WL 5334192, at *2 (D. Utah Aug. 18, 2023) (cleaned up).

[50] Fed. R. Civ. P. 8(a)(2).

To satisfy that requirement, a complaint must explain what each defendant did, when the defendant did it, how the defendant's conduct caused harm, and what legal right the defendant violated.[51] These requirements serve a dual purpose: they give defendants fair notice of the claims against them and give the court sufficient clarity to adjudicate the merits.[52] Bare labels, formulaic recitations of elements, and naked assertions unsupported by factual enhancement do not meet this standard.[53]

## ARGUMENT

### I.      Intentional Infliction of Emotional Distress

#### a.  Plaintiffs fail to allege extreme and outrageous conduct.

Plaintiffs' IIED claim fails at the threshold. To state a claim, Plaintiffs must allege facts showing (1) that Williams intentionally engaged in conduct so outrageous it offends generally accepted standards of decency and morality; (2) that he acted with the purpose of inflicting emotional distress or knew such distress was a substantially certain result, and (3) that severe emotional distress resulted.[54]

Utah sets a demanding standard for outrageous conduct. Conduct qualifies only if it elicits genuine outrage or revulsion.[55] It must be "extraordinarily vile, atrocious, and utterly intolerable in a civilized community."[56] Conduct that is merely unreasonable, unfair, or unkind does not

---

[51] *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).
[52] *Id.*
[53] *Iqbal*, 556 U.S. at 678; *Hunter v. Agility Energy, Inc.*, 419 F. Supp. 3d 1269, 1275 (D. Utah 2019) (determining that a bare assertion without further factual enhancement does not give the court a basis to assess the elements of the claim and is insufficient).
[54] *Tingey v. Midwest Off., Inc.*, No. 1:22-cv-145-TC, 2023 WL 8602841, at *4 (D. Utah Dec. 12, 2023).
[55] *See Juliano v. Engel*, No. 2:23-CV-351 TS, 2023 WL 5311453, at *1 (D. Utah Aug. 17, 2023).
[56] *See Williams v. ICON - Salt Lake City*, No. 2:24-CV-00427, 2025 WL 1071647, at *6 (D. Utah Feb. 4, 2025) (cleaned up).

qualify,[57] nor do "insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[58]

Plaintiffs allege that Williams "ascrib[ed] the vulgar display to Plaintiffs in front of [his] peers and colleagues."[59] That allegation alone does not satisfy the demanding standard for outrageous conduct. Nor can it, because Plaintiffs undermine it themselves. While alleging Williams ascribed the display before "peers and colleagues,"[60] Plaintiffs elsewhere allege that Williams left the display on Sharp's front porch and that Sharp was its sole recipient.[61] Courts "need not accept as true factual allegations that are contradicted by other factual allegations within the same pleading."[62] Even setting aside the contradiction, ascribing Plaintiffs' names to the display—offensive as Plaintiffs may find it—stops well short of the intolerable conduct Utah law requires.[63] Viewing the allegations in a light most favorable to Plaintiffs, Willaims's conduct could potentially constitute, at most, a single indignity or annoyance. The alleged conduct does not rise to the level of outrageous conduct as a matter of law.

Plaintiffs' IIED claim faces an additional and independent obstacle. "Where an emotional distress claim is based on the same facts as a claim for defamation … [a] plaintiff must show negligence as to the falsity of the publication … to establish a claim of intentional infliction of

---

[57] *Juliano*, 2023 WL 5311453, at *1 (cleaned up).

[58] *Christoffersen v. Nucor Corp.*, No. 4:25-CV-00118-DN-PK, 2026 WL 661861, at *5 (D. Utah Feb. 19, 2026), *report and recommendation adopted*, No. 4:25-CV-00118-DN-PK, 2026 WL 659134 (D. Utah Mar. 9, 2026) (cleaned up).

[59] Second Am. Compl. ¶ 318.

[60] *Id*.

[61] *Id*. ¶ 71-72, 74, 76, 244 (Plaintiffs allege that Williams left the note and display "on VP Sharp's porch" and that Sharp received it).

[62] *Martineau v. Currutt*, No. 121CV00045JNPDBP, 2022 WL 180735, at *5 (D. Utah Jan. 19, 2022) (cleaned up); *see also Allied World Nat'l Assur. Co. v. Monavie, Inc.*, No. 2:12-cv-393-DAK, 2013 WL 3716530 at *4 (D. Utah July 12, 2013).

[63] *Linebaugh v. Gibson*, 2020 UT App 108, ¶ 43, 471 P.3d 835.

emotional distress."[64] Plaintiffs cannot make that showing here. As detailed in Williams' concurrently filed Motion to Dismiss Plaintiffs' Defamation *per se* and False Light Causes of Action, the alleged Statement[65] does not fall within any recognized defamation *per se* category[66] and, apart from attributing the note to Plaintiffs—which, by itself, is not defamatory—conveys no false and defamatory factual content.[67] Plaintiffs do not allege their reputations were harmed in the eyes of Williams's audience—Sharp or White. Critically, defamation law does not reach parody, rhetorical hyperbole, or crude humor where no reasonable person would interpret the content as a factual assertion.[68] Because Plaintiffs' IIED claim rests on the same defamation-related allegations that fail as a matter of law, it fails for the same reasons.

Even accepting Plaintiffs' characterization of Williams' conduct as unreasonable, unfair, or unkind, that is not enough. Utah law demands more. To be actionable the conduct must be "outrageous," "vile," and "repulsive."[69] Plaintiffs allege only that Williams acted "intentionally," that he did so with the "purpose of inflicting emotional distress," and that his "conduct went

---

[64] *Shanley v. Hutchings*, 716 F. Supp. 3d 1179, 1202 (D. Utah 2024) (cleaned up).

[65] *See* Second Am. Compl. ¶ 256.

[66] *Nelson v. Pehrson*, No. 2:24-CV-568 TS, 2025 WL 2675804, at *2 (D. Utah Sept. 18, 2025) (cleaned up) ("A statement gives rise to a claim of defamation *per se* when it is false and it 'allege[s] criminal conduct on the part of the plaintiff or conduct which is incongruous with the exercise of a lawful business, trade, profession, or office'").

[67] *West v. Thomson Newspapers*, 872 P.2d 999, 1007-08 (Utah 1994) ("an action for defamation is intended to protect an individual's interest in maintaining a good reputation." This is determined by asking whether the allegedly defamatory statement has the "tendency to injure a reputation in the *eyes of its audience*" (emphasis added)).

[68] *Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 380 (Utah Ct. App. 1997) (cleaned up) ("A parody or spoof that no reasonable person would read as a factual statement, or as anything other than a joke[,] … cannot be actionable as defamation").

[69] *Overstreet v. United Parcel Serv. Inc.*, No. 2:24-CV-00478-TC-DBP, 2025 WL 69189, at *13 (D. Utah Jan. 10, 2025) (cleaned up); *Tomlinson v. NCR Corp.*, 296 P.3d 760, 769 (Utah Ct. App. 2013) *rev'd on other grounds by Tomlinson v. NCR Corp.*, 2014 UT 55, 345 P.3d 523 (finding employer's wrongful termination and false and defamatory statements to police about plaintiff employee were not "outrageous or intolerable conduct" sufficient to state an IIED claim).

beyond all possible bounds of decency."[70] Those labels and conclusions track the elements of an IIED claim. But they lack factual enhancement and do not demonstrate that the conduct itself was outrageous.[71]

Plaintiffs' remaining allegations fare no better. Allegations that a defendant lied, disregarded a plaintiff's explanations, or acted in bad faith do not rise to the level of extreme and outrageous conduct Utah law requires.[72] Plaintiffs' allege that Williams denied involvement[73] and "did not take any action to discourage Sharp from further disseminating" the Statement.[74] Neither allegation describes conduct that is extreme or outrageous. Plaintiffs cannot sustain an IIED claim on these allegations.

Utah courts have dismissed IIED claims involving conduct far more egregious than anything alleged against Williams. In *Robertson v. Utah Fuel Co.*, the court affirmed dismissal where an employer terminated the plaintiff after requiring him to meet individually with subordinates to discuss their concerns about his drug addiction—conduct the court found neither outrageous nor intolerable.[75] In *Zoumadakis v. Uintah Basin Med. Ctr.*, the plaintiff was terminated and alleged that her employer made false and derogatory statements about her.[76] The court held

---

[70] Second Am. Compl. ¶¶ 318-20.

[71] *See Manning v. Wal-Mart Stores, Inc.*, 2016 WL 344530, at *1 (D. Utah Jan. 27, 2016).

[72] *Rasmussen v. Gen. Growth Props., Inc.*, No. 2:04-CV-00099PGC, 2005 WL 8175016, at *2 (D. Utah Feb. 22, 2005), *report and recommendation adopted*, No. 2:04-CV-00099 PGC, 2005 WL 3334752 (D. Utah Dec. 7, 2005) (holding that "an allegation that the defendants lied about when they became aware of plaintiff during arbitration; ... an allegation that his 'valid explanations of situations' were ignored by the defendants; and … an allegation that the defendants did not conduct their communications with him in good faith and were uncooperative…. fall far short of establishing the type of outrageous behavior that must be identified to state a cause of action for intentional infliction of emotional distress").

[73] Second Am. Compl. ¶¶ 76, 244.

[74] *Id.* ¶ 77.

[75] *Robertson v. Utah Fuel Co.*, 889 P.2d 1382, 1389 (Utah Ct. App. 1995).

[76] *Zoumadakis v. Uintah Basin Med. Ctr.*, 122 P.3d 891, 894 (Utah Ct. App. 2005).

that even accepting those allegations as true, they did not rise to the level of outrageous conduct Utah law requires.[77] And in *Zemaitiene v. Corporation of Presiding Bishop*, a supervisor who told an employee her country was "full of terrorists," called her a terrorist, restricted her restroom access, struck her with a piece of clothing, and transferred her to a more physically demanding job despite her disability still fell short of the outrageousness requirement—even though the court acknowledged the conduct was unacceptable and reprehensible.[78] Most recently, the Utah Supreme Court dismissed an IIED claim where a defendant allegedly fabricated child abuse allegations against a teacher and reported them to school officials, police, and DCFS—conduct motivated, the plaintiff alleged, solely by retribution.[79]

If those courts found no outrageous conduct on those facts, Williams' alleged act of ascribing Plaintiffs' names to the Statement cannot plausibly clear that bar.

### b. Plaintiffs fail to allege intent to inflict emotional distress.

To establish IIED, Plaintiffs must show that Williams intentionally engaged in conduct directed at them "with the purpose of inflicting emotional distress or where any reasonable person [in his position] would have known such a result" was substantially certain to follow.[80]

Plaintiffs' own allegations defeat the intent element. Plaintiffs allege that Williams told White that the display "was going to be something funny that they could laugh about afterwards"— a joke *intended* for Sharp, who was recovering from a vasectomy at the time.[81] That allegation forecloses any plausible inference that Williams' purpose was to inflict severe emotional distress

---

[77] *Id.*

[78] *See Zemaitiene v. Corporation of Presiding Bishop*, 2018 WL 1581252, at *4 (D. Utah Mar. 28, 2018).

[79] *Mackey v. Krause*, 2025 UT 37, ¶¶ 87–89, 93, 575 P.3d 1162.

[80] *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 55, 116 P.3d 323.

[81] Second Am. Compl. ¶ 72.

on Plaintiffs, or that any reasonable person in his position would have known such distress was a substantially certain result. The conclusory assertions that Williams acted "intentionally" and with the "purpose of inflicting emotional distress"[82] cannot be reconciled with Plaintiffs' own account of his stated intentions—and the Court need not try.[83]

A defamatory statement and an intent to inflict emotional distress are not the same thing. Defamatory content, without more, does not plausibly establish that Williams' purpose was to inflict severe emotional distress.[84] The bare allegation that Plaintiffs suffered "severe physical and emotional distress as a result of Defendants' extreme and outrageous conduct"[85] says nothing about whether Williams acted with the requisite intent. That is precisely the kind of unadorned accusation Rule 12(b)(6) does not permit to stand.[86]

### c. Plaintiffs fail to allege manifestations of severe physical or emotional distress.

To establish IIED, Plaintiffs must show emotional distress "so severe that no reasonable [person] could be expected to endure it."[87] It must be more than unpleasant emotions or hurt feelings.[88] Plaintiffs' allegations fall well short.

Plaintiffs' distress allegations are as thin as their outrageous conduct allegations. The Second Amended Complaint alleges only that Plaintiffs "have suffered severe physical and emotional distress"[89] without identifying the nature, duration, or severity of that harm. That is not

---

[82] *Id.* ¶¶ 318, 320.

[83] *See Martineau*, 2022 WL 180735, at *5 (courts "need not accept as true factual allegations that are contradicted by other factual allegations within the same pleading").

[84] *Mackey*, 2025 UT 37, ¶ 92 (recognizing that publication of falsehoods "could constitute extreme and outrageous conduct" but requiring plaintiffs to plead facts showing the defendant acted with that purpose).

[85] Second Am. Compl. ¶ 321.

[86]  *Iqbal*, 556 U.S. at 678.

[87] *Linebaugh v. Gibson*, 2020 UT App 108, ¶ 43, 471 P.3d 835.

[88] *Id.*

[89] Second Am. Compl. ¶ 321.

enough.[90] Utah law requires more than a bare allegation of emotional distress. In Utah, a plaintiff must demonstrate "severe physical or mental manifestations."[91] Rasband alleges he was "shocked, embarrassed, and humiliated" upon learning of his association with the display,[92] and Broadbent alleges she was "stunned and devastated."[93] Shock, embarrassment, humiliation, and devastation—however genuine—do not constitute the severe physical or mental manifestations Utah law demands.[94] Plaintiffs allege nothing more.

IIED requires intolerable conduct so extreme it exceeds all bounds of civilized tolerance, distress so severe and unbearable no reasonable a person could be expected to endure it, and physical or mental manifestations that demonstrate the reality of that harm.[95] Plaintiffs have alleged none of these. Their narrative, at most, reflects professional friction and personal embarrassment. That is not an IIED claim.

## II.     Tortious Interference[96]

Plaintiffs' tortious interference claims against Williams rest on the same conduct underlying their defamation *per se* and false light causes of action, both of which fail on the merits. To establish tortious interference, Plaintiffs must plead improper means, meaning conduct that is

---

[90] *Lester v. ConocoPhillips & WoodGroup PSN, Inc.*, No. 4:18-CV-00022-DN-PK, 2021 WL 308222, at *5 (D. Utah Jan. 28, 2021) (holding that a plaintiff who sought medical treatment and produced medical records documenting stress and anxiety still failed to establish distress so severe a reasonable person could not endure it).

[91] *Carlton*, 2014 UT 6, ¶ 57 ("[I]t is not enough for a plaintiff to merely allege emotional distress. Instead, [the plaintiff] must prove that distress by means of severe physical or mental manifestations").

[92] Second Am. Compl. ¶¶ 92-94.

[93] *Id.* ¶ 271.

[94] *Ruesch v. Purple Shovel, LLC*, No. 4:18-CV-00028-DN, 2021 WL 1201209, at *10 (D. Utah Mar. 30, 2021).

[95] *Linebaugh*, 2020 UT App 108 ¶ 43.

[96] Although distinct causes of action, the elements of tortious interference with *existing* and *prospective* economic relations are the same. Accordingly, Williams addresses both claims together, identifying each by name when discussed separately.

independently tortious or unlawful.[97] But even "false statements of fact alone cannot satisfy the improper means element because they are not independently actionable."[98] Because Plaintiffs' defamation *per se* and false light claims fail as a matter of law, their tortious interference claims fail with them.

The Second Amended Complaint also independently fails to adequately plead intent to interfere, improper means, and conduct outside the scope of Williams' employment—each a required element under Utah law. To prevail on a tortious interference claim, a plaintiff must prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) by improper means, (3) causing injury to the plaintiff.[99] The Second Amended Complaint fails on all three grounds.

### a.   Intent is the first element. The Second Amended Complaint does not plead it.

Intent is the first element of a tortious interference claim, and the Second Amended Complaint does not plead it with factual particularity. A party acts with the requisite intent when the party either "desire[s] to bring about certain consequences," or "knows that interference is substantially certain to occur as a result of [the party's] actions."[100]

Plaintiffs' claim for tortious interference with *existing* economic relations rests on the conclusory allegation that "Defendants tortiously interfered with Plaintiffs' contracts through improper means and for an improper purpose and inhibited their abilities to fulfill their

---

[97] *John Bean Techs. Corp. v. B GSE Grp., LLC*, 480 F. Supp. 3d 1274, 1328 (D. Utah 2020).
[98] *Id*. (cleaned up) (holding the plaintiff could not satisfy the improper means element despite finding the defendant had published several false statements of fact).
[99] *Eldridge v. Johndrow*, 2015 UT 21, ¶ 60, 345 P.3d 553.
[100] *CounselNow, LLC v. Deluxe Small Bus. Sales Inc.*, 430 F. Supp. 3d 1247, 1261 (D. Utah 2019) (cleaned up); *Mumford v. ITT Commercial Fin. Corp.*, 858 P.2d 1041, 1044 (Utah Ct. App. 1993)).

employment obligations to Utah Tech."[101] That allegation fails on its own terms. First, the Supreme Court of Utah rejected the "improper-purpose rule" in 2015,[102] holding that "a claim for tortious interference may only succeed where the defendant has employed an improper means."[103]

Second, a claim for interference with *existing* economic relations requires proof that the defendant "intentionally and improperly cause[d] one of the parties not to perform [a] contract."[104] Stated differently, "a tortious interference claim based on an *existing* contract *must* allege that the defendant caused a breach of that contract or impaired its performance through *improper means*."[105] The Second Amended Complaint contains no allegation that any *existing* contract was breached or severed due to Williams' actions specifically. Every act attributed to Williams in Paragraph 296(a) was directed at Sharp, not at Plaintiffs or disrupting the performance of their employment contracts.

Plaintiffs allege only that Defendants "inhibited their abilities to fulfill their employment obligations to Utah Tech."[106] That falls well short of the governing standard, which requires proof that the defendant intentionally "caused a breach of [] contract" "through improper means."[107] The distinction is not semantic. It is substantive. Tortious interference with *existing* economic relations is not a cause of action for making performance more difficult, more uncomfortable, or more burdensome. It is a cause of action premised on a defendant's intentional and tortious act that results in a party's failure to perform a contract altogether. An allegation that a defendant impeded

---

[101] Second Am. Compl. ¶ 296.
[102] *Eldridge v. Johndrow*, 2015 UT 21, ¶ 14, 345 P.3d 553.
[103] *Id*.
[104] *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991).
[105] *Ass'n of Flight Attendants, AFL-CIO v. Skywest Airlines Inc.*, No. 2:23-CV-00723-DBB-DBP, 2025 WL 3537390, at *9 (D. Utah Dec. 9, 2025) (cleaned up).
[106] Second Am. Compl. ¶ 296.
[107] *Skywest Airlines Inc.*, 2025 WL 3537390, at *9; *see St. Benedict's Dev. Co.*, 811 P.2d at 201 (*citing* Restatement (Second) of Torts § 766 (1979)).

or hindered performance is categorically distinct from an allegation that a defendant caused performance to cease. The former describes a plaintiff who continued performing her contractual obligations under more difficult conditions. The latter describes a plaintiff who did not perform them at all. Plaintiffs allege the former. The governing standard requires the latter.[108] Plaintiffs continued performing under their contracts with Utah Tech for at least a year after the conduct they attribute to Williams, which is not only inconsistent with a tortious interference cause of action, but it also forecloses any argument that Williams' conduct caused a failure of contractual performance.[109] "Without more, no claim for interference with present contractual relations can lie."[110]

The Second Amended Complaint satisfies neither prong of the intent element. Plaintiffs' bare assertion that "Defendants intentionally interfered" with *existing* economic relations identifies no facts showing that Williams' intention was to interfere with any specific contract or knew that interference was a substantially certain result of ascribing Plaintiffs' names to the Statement.[111] Foreseeability is not intent. The Second Amended Complaint never explains how Williams' conduct was specifically intended to prevent Plaintiffs' performance under any contract with Utah Tech or others. Plaintiffs must allege well-pleaded facts showing that interference was Williams' objective, not merely a possible byproduct of his actions. Despite devoting considerable space to the "zuweenie" incident, the Second Amended Complaint identifies no fact suggesting Williams'

---

[108] *Id.*

[109] Second Am. Compl. ¶ 167 (The Second Amended Complaint states that on "May 8, 2025, just one week after his appointment by the UBHE commenced, Smeed notified Ms. Broadbent via email and Mr. Rasband in their first meeting that their employment at Utah Tech was terminated." By its own terms, the allegation identifies Smeed rather than Williams as the cause of Plaintiffs' termination).

[110] *St. Benedict's*, 811 P.2d at 200.

[111] Second Am. Compl. ¶ 296.

conduct was directed at Plaintiffs' economic relationships rather than at Sharp, who was the note's only recipient.[112]

Plaintiffs' *prospective* economic relations claim fares no better. Plaintiffs specifically allege that Williams was "acting in the course and scope of [his] employment when [he] tortiously interfered with Plaintiffs' prospective economic relations."[113] And Plaintiffs generally allege that Defendants' "actions sabotaged Plaintiffs' other potential economic relationships with other prospective employers and institutions," and that by doing so, "frustrated and stymied Plaintiffs' ability to find alternative employment in their industry and have made seeking other employment with prospective employers in the industry virtually impossible."[114] These generic averments fail to identify a single *prospective* economic relationship Williams allegedly prevented from coming to fruition. A plaintiff's mere expectation of a business relationship is insufficient to establish a tortious interference claim.[115] "[I]nterference with prospective economic relationships requires proof that the defendant essentially prevented a contract from being formed that was substantially likely to be formed."[116] In *Leigh Furniture,* the Utah Supreme Court noted that "[d]riving away an individual's … *potential* customers is the archetypical injury this cause of action was devised to remedy."[117] Plaintiffs identify no such relationship and no such interference. Plaintiffs' *prospective* interference claim includes "[t]hreadbare recitals of the elements" of their *prospective* interference cause of action."[118] Without more, Plaintiffs' claims fail as a matter of law.

---

[112] *Id.* ¶¶ 71, 76.
[113] *Id.* ¶ 306.
[114] *Id.* ¶¶ 306-08.
[115] *Eldridge*, 2015 UT 21, ¶ 60.
[116] *Cella v. MobiChord, Inc.*, No. 2:17-CV-527-TC, 2020 WL 416668, at *4 (D. Utah Jan. 27, 2020).
[117] *Leigh Furniture & Carpet Co. v. Isom*, 675 P.2d 293, 306 (1982) (emphasis added).
[118] *Whiting v. Carbon Cnty., Utah*, No. 4:25-CV-00011-DN-PK, 2026 WL 221844, at *3 (D. Utah Jan. 28, 2026) (cleaned up).

### b. The tortious interference claims rest on conduct that is not independently tortious or unlawful.

Utah law defines "improper means" narrowly. To establish this element, a plaintiff must allege either conduct contrary to law, meaning conduct that violates a statute, regulation, or established common law rule, or conduct that breaches established standards of a trade or profession.[119] Conduct that is not independently tortious or unlawful is insufficient to establish the improper means prong.[120] Plaintiffs satisfy neither.

*Hardy v. D&D Management 2, LLC*, shows how federal courts in the District of Utah analyze the alleged improper means, and is illustrative of the failure of Plaintiffs' claims.[121]  In *Hardy*, a former CFO alleged that her employer intentionally interfered with her economic relations by  "violating common law by engaging in electronic communication harassment, defaming and slandering Plaintiff, and violating established standards of trade or profession," which conduct forced the plaintiff to resign.[122]  On the defendant's motion to dismiss, the court rejected each theory, noting that a complaint "requires more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[123]  The plaintiff's complaint failed to allege any of the elements of electronic communications harassment under Utah law, failed to allege facts showing that allegedly-defamatory statements regarding plaintiff and another person were published by the defendant, and failed to include allegations regarding what professional practices or standards were violated, and therefore was dismissed.[124]

---

[119] *C.R. England, Inc. v. Swift Transp. Co.*, No. 2:07-cv-00082, 2010 WL 3582069, at *5 (D. Utah Sept. 10, 2010).
[120] *Id*.
[121] *Hardy v. D&D Mgmt. 2, LLC*, No. 1:24-CV-00066-TS-JCB, 2025 WL 2530726 (D. Utah Sept. 3, 2025).
[122] *Id.* *1, *5.
[123] *Id.* *2 (cleaned up).
[124] *Id.* *5-*6.

Plaintiffs' Complaint similarly fails to allege independently tortious conduct and fails to allege what industry standards or norms Pederson's conduct violated.

### i. Plaintiffs do not allege independently tortious conduct.

Paragraph 296(a) of the Second Amended Complaint is the sum total of Plaintiffs' tortious interference allegations against Williams, and not one of the three acts it identifies is independently tortious or unlawful. The Second Amended Complaint identifies the following conduct by Williams as the basis for the tortious interference claims: creating and delivering the display and note to Sharp falsely ascribing it to Plaintiffs, denying his involvement to Sharp when contacted about it, and allegedly making false statements to Broadbent during their November 13, 2023, meeting and making statements to White immediately following that meeting.[125]

Plaintiffs do not allege improper means. The delivery of the Statement was a private act directed at Sharp, not at Plaintiffs and not connected to their contracts with Utah Tech. The denial to Sharp was a private communication between two University employees. And Williams' allegedly false statements to Broadbent during their November 13, 2023, meeting was a supervisor managing a subordinate's complaint. Each falls short of the independently tortious or unlawful conduct that improper means demands.

Williams' denial of involvement to Sharp fails for an additional reason: the law does not impose a duty on individuals to prevent the independent actions of others.[126] Failure to prevent a third party's potential independent publication is not an independent tortious act. Sharp shared the Statement of his own volition. That Sharp chose to share the display and note after Williams denied involvement does not transform Williams' denial of involvement into improper means.

---

[125] Second Am. Compl. ¶ 296(a).
[126] *See* Restatement (Second) of Torts § 315 (1965).

Plaintiffs predicate their improper means argument on their defamation *per se* and false light claims. That foundation is deficient on two independent grounds. First, those claims fail as a matter of law for the reasons set forth in Williams' Motion to Dismiss Plaintiffs' Defamation *per se* and False Light Causes of Action, and a claim that fails on the merits cannot serve as the predicate for a tortious interference claim.[127] Second, Plaintiffs' defamation and false light claims rest on the same underlying conduct described in Paragraph 296(a) of the Second Amended Complaint; namely, that Williams acted within his scope of employment as the President of Utah Tech.[128] Conduct performed within the scope of employment cannot simultaneously constitute the purely personal, independently tortious act that improper means requires.[129]

"Anger and even malice are commonplace human emotions, and it would be neither possible nor desirable to treat every angry or malicious action as a tort."[130] Plaintiffs have not alleged facts showing that Williams' conduct constituted an independent tort or otherwise unlawful act. Without that showing, the improper means element cannot be satisfied and both tortious interference claims must be dismissed.

### ii. Plaintiffs do not allege that Williams breached industry standards of norms.

Plaintiffs' second path to improper means fares no better. To satisfy this prong, Plaintiffs must identify an objective, industry-wide standard that Williams violated.[131] One grounded in industry customs, practices, uniform codes, or industry-specific regulations.[132] Establishing an industry standard requires more than evidence of a particular company's rules and policies. The

---

[127] *Cella*, 2020 WL 416668, at *4.
[128] Second Am. Compl. ¶¶ 243, 244, 265, 266, 296(a).
[129] *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 51, 201 P.3d 966.
[130] *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 308 (Utah 1982).
[131] *Id*.
[132] *C.R. England*, 2010 WL 3582069, at *5.

standard must be external and objective, not the individual judgment of the particular actor.[133]

The Second Amended Complaint identifies no such standard. Although Plaintiffs collectively allege that Defendants intentionally interfered by improper means including violations of law and University policy,[134] they fail to identify a single external and objective standard, rule, or regulation that Williams specifically violated. As demonstrated in *Hardy*, these allegations are silent as to what objective industry standards Williams may have breached, and therefore are insufficiently pled.[135] Delivering a note to a colleague, denying involvement in a workplace prank, managing a subordinate's complaint about a workplace incident, and informing institutional superiors of a personnel matter do not violate any objective, industry-wide standard. There is no improper means and both tortious interference claims must be dismissed.

### c. Tortious interference requires conduct outside the scope of employment.

The tortious interference claims against Williams fail for an independent and dispositive reason that runs through the heart of the Second Amended Complaint: Plaintiffs themselves affirmatively allege that Williams acted within his scope of employment.[136] That admission is fatal to both claims.

To establish tortious interference where "the defendants are also employees … the plaintiff must establish that the defendants were acting outside the scope of their employment *for purely personal reasons.*[137] "Employees act for purely personal motives when their actions are in no way connected with the employer's interests."[138]

---

[133] *Id.*
[134] Second Am. Compl. ¶ 305.
[135] *Hardy*, 2025 WL 2530726 at *5-*6.
[136] Second Am. Compl. ¶¶ 296(a), 306.
[137] *Giusti*, 2009 UT 2, ¶ 65 (emphasis added).
[138] *Id.*

Plaintiffs cannot satisfy that standard because they have pleaded the opposite. Paragraph 243 of the Second Amended Complaint specifically alleges that Williams acted within his scope of employment as the President of Utah Tech when he typed the note and delivered the Statement to Sharp. Paragraph 244 further alleges that Williams acted within the course and scope of his employment when he denied his involvement to Sharp. Paragraphs 265 and 266 repeat those identical scope of employment allegations in the false light cause of action. Paragraph 296(a) repeats them again in the tortious interference with *existing* economic relations cause of action. Paragraph 306 specifically alleges that Williams was acting in the course and scope of his employment when he tortiously interfered with Plaintiffs' *prospective* economic relations.[139]

Those are not ambiguous allegations. They are specific, affirmative, repeated assertions that Williams performed the very conduct underlying the tortious interference claims within his scope of employment as the President of Utah Tech. Conduct performed within the scope of employment and connected to the employer's interests cannot establish tortious interference as a matter of law.[140]

Plaintiffs may attempt to escape that conclusion by referencing Paragraph 297 of the Second Amended Complaint, which collectively alleges that all Defendants were acting for purely personal reasons, and Paragraph 298, which alleges that their efforts were not in the best interest of the University.[141] Those collective allegations cannot rescue the tortious interference claims for three independent reasons.

First, they are directly and irreconcilably contradicted by Plaintiffs' own specific allegations. Courts need not accept as true factual allegations that are contradicted by other factual

---

[139] Second Am. Compl. ¶¶ 243, 244, 265, 266, 296(a), 306.
[140] *Giusti*, 2009 UT 2, ¶ 51.
[141] Second Am. Compl. ¶¶ 297-98.

allegations within the same pleading.[142] Plaintiffs cannot simultaneously allege in Paragraphs 243, 244, 265, 266, 296(a), and 306 that Williams acted within his scope of employment and then allege in Paragraphs 297 and 298 that he acted for purely personal reasons and not in the best interest of the University. Those positions are mutually exclusive. To the extent Plaintiffs allege Williams acted within the scope of his employment, their tortious interference claims fail as a matter of law. To the extent they allege purely personal reasons, they contradict their own scope of employment allegation—and the Court need not accept internally inconsistent allegations as true.[143]

Second, the purely personal reasons allegation is a verbatim recitation of a legal element unaccompanied by a single fact identifying what personal motive, personal benefit, or personal animus independent of Williams' University role drove his conduct. That is precisely what *Iqbal* and *Twombly* forbid.[144]

The contradiction runs deeper still. Paragraph 73 alleges that Williams' misconduct was directed toward Plaintiffs in response to their execution of their duties within the OGC and OEC and TIX.[145] If Williams' conduct was a response to Plaintiffs' execution of their official University duties, it was by definition connected to institutional interests and activities. That allegation directly contradicts the purely personal reasons assertion in Paragraph 297 and confirms that Williams' conduct was bound up in the institutional relationships and dynamics of Utah Tech.

Third, Paragraphs 258 and 275 of the Second Amended Complaint compound the contradiction further. Plaintiffs allege that Utah Tech is exposed to vicarious liability through

---

[142] *Martineau v. Currutt*, No. 1:21CV00045JNPDBP, 2022 WL 180735, at *5 (D. Utah Jan. 19, 2022); *see also Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016).
[143] *Id*.
[144] *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.
[145] Second Am. Compl. ¶ 73.

Williams as President.[146] Vicarious liability under respondeat superior requires that Williams acted within his scope of employment.[147] Plaintiffs cannot seek to hold Utah Tech vicariously liable for Williams' conduct, a theory that attaches only when an employee acts within the scope of employment, while simultaneously alleging in Paragraph 297 that Williams acted for purely personal reasons in no way connected to Utah Tech's interests. Those positions cannot coexist.

The contradictions embedded in the Second Amended Complaint foreclose the tortious interference claims on their face. If Williams acted within his scope of employment—as Plaintiffs specifically allege in Paragraphs 243, 244, 265, 266, and 296(a)—the tortious interference claims fail because his conduct was connected to the employer's interests. If he acted for purely personal reasons—as Plaintiffs collectively allege in Paragraph 297—the specific scope of employment allegations collapse and the Second Amended Complaint is internally inconsistent. No set of facts can satisfy all these positions simultaneously. The tortious interference claims must be dismissed.

### d. Plaintiffs' alleged damages are not factually connected to Williams's alleged interference.

The third element requires Plaintiffs to plead facts connecting Williams's conduct to a concrete, identifiable economic loss resulting from his interference with a third-party relationship.[148] The Second Amended Complaint satisfies neither the causation nor the injury requirement.

The conduct Plaintiffs specifically attribute to Williams did not cause Plaintiffs to breach

---

[146] *Id.* ¶¶ 258, 275.

[147] *C.C. v. Roadrunner Trucking, Inc.*, 823 F. Supp. 913, 920 (D. Utah 1993); *Clover v. Snowbird Ski Resort,* 808 P.2d 1037, 1040 (Utah 1991) ("Under the doctrine of respondeat superior, employers may be held vicariously liable for the torts of their employees committed within the scope of their employment")); *Kosher Eats LLC v. Welch*, No. 2:24-CV-00520-DBB-DBP, 2025 WL 1432219, at *6 & n.68 (D. Utah May 6, 2025) (Stating that "the doctrine of respondeat superior imposes vicarious liability upon the employer for acts of the employee").

[148] *St. Benedict's*, 811 P.2d at 200.

their contracts with Utah Tech or prevent new contracts from being formed.[149] Plaintiffs do not identify the loss of any specific contract, any specific prospective employer who declined to hire them as a result of Williams' conduct, or any other identifiable economic harm directly and proximately caused by Williams specifically. The collective allegation that Defendants' actions "sabotaged" Plaintiffs' other *potential* economic relationships with other prospective employers is untethered to Williams' specific conduct and devoid of factual enhancement.[150] "The mere metaphysical possibility that … plaintiff[s] could prove some set of facts in support of" their interference claims is insufficient.[151]

Even accepting Plaintiffs' allegations of reputational and emotional harm, the Second Amended Complaint contains no factual enhancement connecting those alleged injuries to Williams's purported interference. "A party is subject to liability for an intentional interference with present contractual relations if he intentionally and improperly causes one of the parties not to perform the contract."[152] Stripped of its tortious interference label, the Second Amended Complaint fails to allege that Williams came between Plaintiffs and any third party to any *existing* or *prospective* economic relationship. That failure is fatal to both tortious interference claims and requires dismissal.

//

---

[149] Second Am. Compl. ¶¶ 71, 76-77, 96-102, 111.
[150] *Id*. at ¶ 307.
[151] *Pour v. Clegg*, No. 2:24-CV-968 DBP, 2025 WL 3442650, at *3 (D. Utah Dec. 1, 2025) (cleaned up).
[152] *St. Benedict's*, 811 P.2d at 200.

**CONCLUSION**

Williams respectfully requests that this Court grant his Motion and dismiss Plaintiffs'

Claims with prejudice.

DATED this 19th day of June 2026.

SNOW JENSEN & REECE, P.C.

*/s/ V. Lowry Snow\**
V. Lowry Snow[153]
J. Gregory Hardman
Devon J. Herrmann
*Attorneys for Richard "Biff" Williams,*
*Michael Lacourse, Eric Pedersen*
*\*Signed with permission*

---

[153] I, V. Lowry Snow, certify that this Motion to Dismiss contains 7,724 words and complies with DUCivR 7-1(a)(4).