SNOW JENSEN & REECE, P.C.
V. Lowry Snow (Utah Bar No. 3030)
J. Gregory Hardman (Utah Bar No. 8200)
Devon J. Herrmann (Utah Bar No. 15627)
Tonaquint Business Park
912 West 1600 South, Suite B-200
St. George, UT 84770
Telephone: (435) 628-3688
vlsnow@snowjensen.com
dherrmann@snowjensen.com
*Attorneys for Richard "Biff" Williams, Michael Lacourse, and Eric Pedersen*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, SOUTHERN REGION

| | |
|---|---|
| REBECCA BROADBENT, JARED RASBAND, AND HAZEL SAINSBURY, <br><br> Plaintiffs, <br><br> v. <br><br> RICHARD "BIFF" WILLIAMS, JORDON SHARP, DEL BEATTY, MICHAEL LACOURSE, HENRIE WALTON, TIFFANY WILSON, UTAH TECH UNIVERSITY, GEOFF LANDWARD, UTAH BOARD OF HIGHER EDUCATION, UTAH SYSTEM OF HIGHER EDUCATION, THE OFFICE OF THE COMMISSIONER OF HIGHER EDUCATION, ALISON ADAMS, ERIC PEDERSEN, MATT BLACK, JYL HALL, JARED MADSEN, STACY SCHMIDT, BROOKE ULRICH, TRAVIS ROSENBERG, and COURTNEY WHITE. <br><br> JOHN AND JANE DOES I-X <br><br> Defendants. | **DEFENDANT RICHARD WILLIAMS' MOTION TO DISMISS PLAINTIFFS' ALTERNATIVE CAUSE OF ACTION FOR DECLARATORY RELIEF FOR FAILURE TO STATE A CLAIM AND LACK OF SUBJECT MATTER JURISDICTION WITH PREJUDICE** <br><br><br> Civil No.4:24-cv-00091-DN-PK <br><br> Judge David Nuffer <br><br> Magistrate Judge Paul Kohler |

UT.2.12(b)(6).WilliamsDeclRel.061926.295601.24.final

# Table of Contents

MEMORANDUM IN SUPPORT ............................................................................................... 5

INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................... 5

STATEMENT OF FACTS .................................................................................................... 6

    Plaintiffs' Defamation per se and False Light Causes of Action ............................................... 7

    Plaintiffs' Intentional Infliction of Emotion Distress Cause of Action ..................................... 8

    Plaintiffs' Tortious Interference with Existing and Prospective Causes of Action .................... 9

    Plaintiffs' Alternative Cause of Action Seeking Declaratory Relief ........................................ 10

LAW ........................................................................................................................................ 11

    I.    Rule 12(b) (6) Standard ............................................................................................11

    II.    Rule 8(a) Standard ....................................................................................................11

    III.    Rule 12(b) (1) Standard ............................................................................................ 12

    IV.    Article III Justiciability and Ripeness ...................................................................... 12

ARGUMENT ........................................................................................................................... 14

    I.    Plaintiffs' Twenty-First Cause of Action Must Be Dismissed: The Claim is Unripe, Derivative, and Internally Contradictory .................................................................... 14

        a.    The claim is not ripe and presents no justiciable controversy. ................................... 15

        b.    The claim is derivative and falls with the underlying torts ......................................... 18

        c.    The claim rests on a factual predicate irreconcilably incompatible with the underlying torts. ...................................................................................................................... 18

        d.    The Court should decline to exercise its discretion to entertain declaratory relief ....... 23

CONCLUSION ........................................................................................................................ 24

## Table of Authorities

**Cases**

*Alfwear, Inc. v. IBKUL Corp.*, 672 F. Supp. 3d 1174, 1183 (D. Utah 2023)...................... 13, 16, 17

*Allied World Nat'l Assur. Co. v. Monavie, Inc.*, No. 2:12-cv-393-DAK, 2013 WL 3716530, at *4 (D. Utah July 12, 2013)................................................................................................. 22

*Anderson v. University of Utah*, 2018 WL 1115148, *2 (D. Utah 2018) ......................... 14, 16, 17

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .........................................................................11, 12

*Beenken v. Chicago & N.W.R. Co.*, 367 F. Supp. 1337, 1337 (N.D. Iowa 1973)......................... 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007)..............................................................11

*Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) .............6, 11

*Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016)............................ 21

*Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1040 (Utah 1991).............................................. 22

*Cordero v. Olson Assocs. P.C.*, 740 F. Supp. 3d 1117, 1125 (D. Utah 2024)............................. 22

*Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir.1994) ............................................. 6

*Disability Rts. Ctr. of Kansas*, 491 F.3d ................................................................................. 18

*Drew v. Pac. Life Ins. Co.*, 2021 UT 55, ¶ 56, 496 P.3d 201) .................................................. 22

*Giusti v. Sterling Wentworth Corp.*, 201 P.3d 966, 979 (Utah 2009).................................... 21, 22

*Growgenix Sols. LLC v. Roberts Int'l Agric. Dev., LLC*, 428 F. Supp. 3d 1236, 1241 (D. Utah 2019) ......................................................................................................................... 16

*Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir.1995)........................................................ 12

*Hunter v. Agility Energy, Inc.*, 419 F. Supp. 3d 1269, 1275 (D. Utah 2019) .............................. 12

*JCM Dev. Corp.*, 666 P.2d 876, 881 (Utah 1983) .................................................................... 22

*Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983) ....................................................... 5, 17, 18

*Larson v. United States Dep't of the Interior*, No. 2:15-CV-00710-JNP-BCW, 2016 WL 11796310, at *1 (D. Utah July 19, 2016)........................................................................ 12, 15

*LBG Ogden Five Points*, 2022 WL 111169, **5-6 (D. Utah 2022) ........................................... 14

*Lotusson*, 2026 WL 705101 .................................................................................................. 18

*Martineau v. Currutt*, No. 121CV00045JNPDBP, 2022 WL 180735, at *5 (D. Utah Jan. 19, 2022) ............................................................................................................................ 21, 22

*Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994)....................................... 15

*Muscogee Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010) ................... 15

*Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).................11, 12

*Natalie R. v. State, 2025 UT 5, ¶¶ 21–23, 567 P.3d 550*........................................................... 18

*Owen v. Legislative Servs.*, No. 2:25-cv-00432, 2026 WL 881586, at *4 (D. Utah Mar. 31, 2026) ............................................................................................................................... 15

*Prier v. Steed*, 456 F.3d 1209, 1213 (10th Cir.2006) ............................................................... 18

*Route App, Inc. v. Heuberger*, No. 2:22-CV-00291-TS-JCB, 2023 WL 5334192, at *2 (D. Utah Aug. 18, 2023) .............................................................................................................11

*Salt Lake City Corp. v. Haik*, 2019 UT App 4, ¶ 29, 438 P.3d 913, 921, *aff'd*, 2020 UT 29, 466 P.3d 178 .................................................................................................................. 5

*Seneca–Cayuga Tribe v. Nat'l Indian Gaming Comm'n,* 327 F.3d 1019, 1028 (10th Cir.2003).. 18

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ........................................................ 17

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994)................................ 14

*Texas v. United States*, 523 U.S. 296, 300 (1998).......................................................... 17

*Texas v. United States*, 523 U.S. 296, 300, 118 S. Ct. 1257, 1259, 140 L. Ed. 2d 406 (1998) .... 13

*Unified Sch. Dist. No. 259, Sedgwick Cnty., Kan. v. Disability Rts. Ctr. of Kansas*, 491 F.3d 1143, 1147 (10th Cir. 2007) .................................................................................................. 6

*Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1241 (10th Cir. 2021) ........................................................................................................................... 12

*Williamson v. Farrell*, 447 P.3d 131, ¶ 11 (Utah Ct. App. 2019).......................................... 18, 23

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ....................................................... 14

**Statutes**

Federal Declaratory Judgment Act, 28 U.S.C. § 2201.......................................................... 13, 16

Utah Code § 63G-7-101........................................................................................................ 20

Utah Code § 63G-7-102........................................................................................................ 20, 23

Utah Code § 78B-6-404......................................................................................................... 15, 23

Utah Governmental Immunity Act ....................................................................................... passim

**Rules**

Federal Rules of Civil Procedure 12(b) ............................................................................... passim

Federal Rules of Civil Procedure 8(a) ................................................................................. 11

**Constitutional Provisions**

Article I, Section 11 of the Utah Constitution ..................................................................... 5, 10, 14

U.S. Constitution Article III.................................................................................................. 12, 18

**Pleadings**

First Amended Complaint....................................................................................................... 5

Second Amended Complaint .................................................................................................. passim

Pursuant to Federal Rules of Civil Procedure 12(b) (1) and 12(b)(6), Defendant Richard Williams respectfully moves this Court for an order dismissing Plaintiffs Rebecca Broadbent's, Jared Rasband's, and Hazel Sainsbury's (collectively, the "Plaintiffs") alternative cause of action for declaratory relief with prejudice.

Williams bases this Motion on the accompanying Memorandum of Points and Authorities, the pleadings on file, and any other argument or evidence the Court may consider.

## **MEMORANDUM IN SUPPORT**

## **INTRODUCTION AND SUMMARY OF ARGUMENT**

After several Defendants moved to dismiss Plaintiffs' First Amended Complaint, Plaintiffs sought leave to file a Second Amended Complaint on June 6, 2025.[1] On May 1, 2026, this Court granted that motion.[2] One of Plaintiffs' remaining causes of action, pleaded in the alternative, seeks declaratory relief on the ground that the Utah Governmental Immunity Act ("UGIA"), § 63G-7-101 *et seq.*, unconstitutionally bars Plaintiffs' Tenth, Eleventh, Thirteenth, Fourteenth, and Fifteenth causes of action under Article I, Section 11 of the Utah Constitution.

Declaratory relief requires an actual controversy.[3] Plaintiffs' alternative declaratory relief cause of action is explicitly contingent: "*If* UGIA were to serve to bar Plaintiffs' claims against … Williams … then UGIA abrogates a cause of action …" rendering the UGIA unconstitutional.[4] Federal courts require a justiciable controversy— a concrete and particularized injury that is actual or imminent, fairly traceable to the challenged conduct, and redressable by a favorable judicial

---

[1] Docket No. 178.

[2] Docket No. 202.

[3] *Salt Lake City Corp. v. Haik*, 2019 UT App 4, ¶ 29, 438 P.3d 913, 921, *aff'd*, 2020 UT 29, 466 P.3d 178 (*quoting Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983) (before a court can "proceed in an action for declaratory judgment … 'there must be a justiciable controversy'")).

[4] Second Am. Compl. ¶¶ 383, 391, 397, 404, 411 (emphasis added).

decision.[5] Plaintiffs' claim fails that test because the UGIA's applicability depends on unresolved threshold issues, including, for example, whether Williams acted within the scope of his employment. Until this and other predicate issues are resolved, the issue is not ripe.

## STATEMENT OF FACTS[6]

1.      On November 8, 2023, Williams, former president of Utah Tech University, left an assortment of vegetables displayed as male genitalia, including a long zucchini, on Defendant, Jordon Sharp's, front porch as a gift while Sharp recovered from a vasectomy.[7]

2.      Williams also left an accompanying note, reading "[w]e wanted to wish you well as you recover from your outpatient procedure. We thought some delicious produce from our garden would help you with your recovery. Here are two delicious egg plants and our award-winning zucchini, or as we like to call it our 'zuweenie.'"[8]

3.      Williams signed the note by printing Plaintiffs names at the bottom (although Williams misspelled two of Plaintiffs' names).[9]

4.      Upon receiving the vegetable display and note, Sharp messaged certain colleagues, inquiring who had written it.[10]

5.      Through Sharp, some Utah Tech faculty learned that Plaintiffs' names were linked

---

[5] *Unified Sch. Dist. No. 259, Sedgwick Cnty., Kan. v. Disability Rts. Ctr. of Kansas*, 491 F.3d 1143, 1147 (10th Cir. 2007) (*quoting Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir.1994) (recognizing that a declaratory judgment presents a justiciable controversy only when it resolves a dispute that affects the defendant's conduct toward the plaintiff, rather than merely offering an advisory opinion).

[6] Because a motion to dismiss requires courts to "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff," *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013), the following statement of facts recite the Plaintiffs' pleadings as if they were true only for purposes of this motion.

[7] *See* Second Am. Compl. ¶ 71.

[8] *Id.*

[9] *Id.*

[10] *Id.* ¶¶ 75-79.

to the note.[11]

6.    In response to the vegetable display and note, Plaintiffs formalized internal complaints at Utah Tech against Williams, Sharp, and others involved, seeking to remedy what Plaintiffs alleged to be a hostile work environment, harassment, discrimination, retaliation, abusive conduct, and defamation.[12]

7.    Plaintiffs allege, upon information and belief, that Defendant, Tiffany Wilson, having learned of Plaintiffs' formalized complaint, made disparaging and false statements about Broadbent and the Office of General Counsel (the "OGC") to Interim President Courtney White (and potentially others) and sought to have Broadbent's employment terminated.[13]

8.    Plaintiffs further allege, upon information and belief, that Wilson made disparaging and false statements about Broadbent and the OGC to members of the Utah Board of Higher Education ("UBHE") Audit Committee (and potentially others), asserting that the OGC's activity was vindictive and that it had isolated itself from Utah Tech.[14]

9.    Plaintiffs also allege that Wilson continued to make disparaging and false statements about Broadbent.[15]

### Plaintiffs' Defamation per se and False Light Causes of Action

10.    Plaintiffs allege that "Williams' ascription was false, intentional, injurious, unprivileged, and published to third parties with actual malice[,]" "Williams acted within his scope of employment … when he typed the note[,]" "Williams placed plaintiffs in a false light when he falsely ascribed Plaintiffs' name to the note[,]" and "[t]he false light in which

---

[11] *Id*. ¶¶ 75-84.
[12] *Id*. ¶ 122.
[13] *Id*. ¶ 145.
[14] *Id*. ¶ 146.
[15] *Id*. ¶ 147.

Plaintiffs have been placed would be highly offensive to a reasonable person."[16]

**Plaintiffs' Intentional Infliction of Emotion Distress Cause of Action**

11.     Plaintiffs allege intentional infliction of emotional distress against Williams, stating that "Williams … intentionally inflicted emotional distress on Plaintiffs."[17]

12.     Plaintiffs further allege that "[b]y ascribing the vulgar display to Plaintiffs in front of their peers and colleagues, Williams, Sharp, Beatty, Walton, Madsen, Schmidt, Black, and Ulrich intentionally engaged in extreme and outrageous conduct with the purpose of inflicting emotional distress."[18]

13.     Plaintiffs also allege that "Defendants' conduct went beyond all possible bounds of decency due to the outrageousness of falsely, and repeatedly, attributing a sexually obscene display of male genitalia to Plaintiffs, the top officials responsible for enforcing federal antidiscrimination laws at a public university—who had, for months, already faced a campaign of hostility and retaliation to discredit them and the legitimacy of their offices—and then retaliating against them for attempting to speak out against it."[19]

14.     Plaintiffs allege that Williams' delivery of the note and display to Sharp was directed towards Plaintiffs.[20]

15.     Plaintiffs allege that "Williams defamed Plaintiffs when he falsely ascribed Plaintiffs' names to a note containing sexual innuendo accompanying an innately vulgar sexual display and delivered the display and note to Sharp."[21]

---

[16] *Id*. ¶¶ 242-43, 263-65, 272.
[17] *Id*. ¶ 317.
[18] *Id*. ¶ 318.
[19] *Id*. ¶ 319.
[20] *Id*. ¶ 73.
[21] *Id*. ¶ 241.

16.    Plaintiffs allege that *Defendants* acted intentionally, Plaintiffs suffered severe emotional distress as a result of *Defendants'* outrageous conduct, and Plaintiffs suffered damages.[22]

17.    Plaintiffs also allege that Williams denied involvement to Broadbent and Sharp, which they allege resulted in "additional defamation to Plaintiffs."[23]

**Plaintiffs' Tortious Interference with Existing and Prospective Causes of Action**

18.    Plaintiffs allege that "Utah Tech has a contract with Plaintiffs."[24]

19.    Plaintiffs allege that Williams, as the President of Utah Tech, defamed Plaintiffs and placed them in a false light by intentionally and falsely ascribing their names to a vulgar sexual display and a note containing sexual innuendo.[25] Plaintiffs also allege that Williams published the display and note to third parties with actual malice by delivering it to Sharp.[26]

20.    Plaintiffs further allege that, while acting within the scope of his employment, Williams did not admit to placing the note and display on Sharp's front porch.[27] Plaintiffs contend that Williams's denial of involvement led to the further dissemination of the content.[28]

21.    Plaintiffs allege that, with respect to their tortious interference with *existing* economic relations cause of action, "Defendants were acting for purely personal reasons."[29]

22.    Plaintiffs allege that "Defendants' actions have frustrated and stymied Plaintiffs' abilities to fulfill their employment obligations to Utah Tech" and that their actions "were not

---

[22] *Id*. ¶¶ at 320-22.
[23] *Id*. ¶¶ 76-77, 96-99, 243-45, 266.
[24] *Id*. ¶ 295.
[25] *Id*. ¶ 296.
[26] *Id*.
[27] *Id*.
[28] *Id*.
[29] *Id*. ¶ 297.

… in the best interest of the University."[30] As a result, Plaintiffs allege that Defendants knowingly caused Plaintiffs to suffer damages.[31]

23.     Plaintiffs allege that "Defendants intentionally interfered with the Plaintiffs' prospective economic relations by improper means for an improper purpose, including violations of law, intimidation, deceit, misrepresentation, unfounded adverse employment actions, defamation, and disparaging falsehood, as set forth in detail above[,]" causing them to suffer damages.[32]

### Plaintiffs' Alternative Cause of Action Seeking Declaratory Relief

24.     Plaintiffs allege that Defendants—including Williams—intentionally made defamatory and malicious statements, published a vulgar display falsely attributed to Plaintiffs, and engaged in conduct that placed Plaintiffs in a false light, interfered with their existing and prospective economic relations, and intentionally inflicted emotional distress.[33] Plaintiffs contend that such actions were committed with actual malice, outside the scope of legitimate governmental functions, and in violation of University policies.[34]

25.     Plaintiffs further assert that if the UGIA is construed to bar these claims, it would operate as an unconstitutional abrogation of common law causes of action in violation of the Open Courts Clause of the Utah Constitution (Article I, § 11), because Plaintiffs would be left without an effective or reasonable alternative remedy.[35] Accordingly, they seek a declaratory judgment that the UGIA is unconstitutional as applied to their claims for defamation *per se*,

---

[30] *Id*. ¶ 298-99.
[31] *Id*. ¶ 300, 303.
[32] *Id*. ¶¶ 305, 315.
[33] *Id*. ¶¶ 374-411.
[34] *Id*.
[35] *Id*. ¶¶ 383, 391, 397, 404, 411

false light, tortious interference, and intentional infliction of emotional distress.[36]

## LAW

### I.    Rule 12(b) (6) Standard

To survive a motion to dismiss, a complaint must contain factual allegations sufficient to state a claim that is facially plausible.[37] A claim is plausible when the factual allegations allow the court to reasonably infer that the defendant is liable for the alleged misconduct—not merely that such liability is possible.[38] Labels, legal conclusions, and "unadorned, the-defendant-unlawfully-harmed-me" accusations do not suffice.[39] Although detailed factual allegations are not required, the complaint must provide fair notice of what the claim is and the grounds upon which it rests.[40] Courts are to accept well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff, but they are not bound by conclusory allegations dressed as facts.[41] Courts may also consider documents referenced in the complaint if they are central to the plaintiff's claims.[42]

### II.    Rule 8(a) Standard

Rule 8(a) requires a short and plain statement showing that the pleader is entitled to relief.[43] To satisfy that requirement, a complaint must explain what the defendant did, when the defendant did it, how the defendant's conduct caused harm, and what legal right the defendant violated.[44]

---

[36] *Id*. ¶ 412.

[37] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007).

[38] *Iqbal*, 556 U.S. at 678.

[39] *Id*. (cleaned up)

[40] *Twombly*, 550 U.S. at 555.

[41] *Burnett*, 706 F.3d at 1235.

[42] *See Route App, Inc. v. Heuberger*, No. 2:22-CV-00291-TS-JCB, 2023 WL 5334192, at *2 (D. Utah Aug. 18, 2023).

[43] Fed. R. Civ. P. 8(a)(2).

[44] *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

These requirements serve a dual purpose: they give the defendant fair notice of the claims against him and give the court sufficient clarity to adjudicate the merits.[45] Bare labels, formulaic recitations of elements, and naked assertions unsupported by factual enhancement do not meet this standard.[46]

### III.   Rule 12(b) (1) Standard

Rule 12(b) (1) permits a party to assert lack of subject matter jurisdiction as a defense by motion.[47] Because federal courts are courts of limited jurisdiction, the court "presumes no jurisdiction exists absent a showing of proof by the party asserting federal jurisdiction."[48] "The burden of establishing subject matter jurisdiction 'rests upon the party asserting jurisdiction.'"[49] Dismissal under Rule 12(b) (1), therefore, "is appropriate if the court lacks subject matter jurisdiction over claims for relief asserted in the complaint.[50]

When resolving a facial attack, the court applies the same standard as Rule 12(b) (6) and treats the complaint's well-pleaded allegations as true.[51]

### IV.   Article III Justiciability and Ripeness

Article III of the Constitution limits the jurisdiction of the federal courts to actual "cases" and "controversies."[52] The Supreme Court has "long understood th[is] constitutional phrase to

---

[45] *Id.*

[46] *Iqbal*, 556 U.S. at 678; *Hunter v. Agility Energy, Inc.*, 419 F. Supp. 3d 1269, 1275 (D. Utah 2019) (determining that a bare assertion without further factual enhancement does not give the court a basis to assess the elements of the claim).

[47] Fed. R. Civ. P. 12(b) (1).

[48] *Larson v. United States Dep't of the Interior*, No. 2:15-CV-00710-JNP-BCW, 2016 WL 11796310, at *1 (D. Utah July 19, 2016).

[49] *Id.* (cleaned up).

[50] *Id.*

[51] *Id.* (*citing Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir.1995)).

[52] U.S. Const. art. III, § 2; *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1241 (10th Cir. 2021).

require that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions."[53] To establish constitutional standing, a party must show "[1] [it] has suffered a concrete and particularized injury [2] that is fairly traceable to the challenged conduct, [3] and is likely to be redressed by a favorable judicial decision."[54] An injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."[55] "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"[56] Declaratory relief requires an actual controversy within the court's jurisdiction.[57] Where no actual controversy exists, dismissal under Rule 12(b)(1) is required.

Plaintiffs' declaratory relief claim is governed by the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. The Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration" only "[i]n a case of actual controversy within its jurisdiction."[58] The Declaratory Judgment Act does not expand the court's subject matter jurisdiction—it provides a remedy only where an actual controversy already exists within the court's jurisdiction.[59] "[C]ourts are required to consider the justiciability of a case to ensure that a declaratory judgment is not an improper advisory opinion."[60]

Determining that a justiciable controversy exists is not the end of the inquiry. "[D]istrict courts possess discretion in determining whether and when to entertain an action under the

---

[53] *Alfwear, Inc. v. IBKUL Corp.*, 672 F. Supp. 3d 1174, 1183 (D. Utah 2023) (cleaned up).
[54] *Id*. (cleaned up).
[55] *Id*. (cleaned up).
[56] *Texas v. United States*, 523 U.S. 296, 300, 118 S. Ct. 1257, 1259, 140 L. Ed. 2d 406 (1998) (cleaned up).
[57] *Alfwear, Inc.*, 672 F. Supp. at 1186.
[58] 28 U.S.C. § 2201.
[59] *Alfwear, Inc.*, 672 F. Supp. at 1186.
[60] *Id*. at 1182.

Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."[61] A court evaluating a justiciability challenge on a motion to dismiss a declaratory judgment action proceeds in two steps.[62] First, the court determines whether the factual allegations show a justiciable controversy supporting jurisdiction.[63] If jurisdiction is lacking, the court cannot hear the case.[64] If jurisdiction exists, the court makes a "fact-specific determination as to whether it should refrain from exercising that jurisdiction."[65] The factors the court considers in deciding whether to entertain the action—the *Mhoon* factors—are: "(1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to res judicata'; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective."[66] Where no actual controversy exists, or where the *Mhoon* factors weigh against exercising jurisdiction, dismissal is required.[67]

## ARGUMENT

I.    **Plaintiffs' Twenty-First Cause of Action Must Be Dismissed: The Claim is Unripe, Derivative, and Internally Contradictory**

Plaintiffs seek a declaratory judgment that the UGIA, as applied, unconstitutionally bars their defamation *per se*, false light, tortious interference, and IIED claims against Williams. Their

---

[61] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).
[62] *Anderson v. University of Utah*, 2018 WL 1115148, *2 (D. Utah 2018); *LBG Ogden Five Points*, 2022 WL 111169, **5-6 (D. Utah 2022).
[63] *Anderson*, 2018 WL 1115148, at 2.
[64] *Id.*
[65] *LBG Ogden Five Points*, 2022 WL 111169 at **5-6.
[66] *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994).
[67] *Anderson*, 2018 WL 1115148, at 4-5.

declaratory relief claim fails for the following, independently sufficient reasons: it is unripe; it presents no justiciable controversy; it is derivative and falls with the underlying torts; and it rests on a factual predicate irreconcilably incompatible with the underlying torts it purports to support.

This Court should decline to exercise its discretion to entertain declaratory relief. Plaintiffs' Twenty-First Cause of Action is pleaded in the alternative and asserts a Utah state constitutional challenge under Article I, Section 11 of the Utah Constitution. This Court, exercising supplemental jurisdiction over that state law claim, applies Utah substantive law, including Utah Code § 78B-6-404, which authorizes a court to withhold declaratory relief where doing so would not terminate the uncertainty or controversy giving rise to the proceeding.

### a.  The claim is not ripe and presents no justiciable controversy.

Before reaching the merits of any claim, this Court must establish that it has subject matter jurisdiction.[68] Plaintiffs' Twenty-First Cause of Action fails that threshold inquiry on jurisdictional grounds.

Plaintiffs' declaratory relief claim presents no justiciable controversy and must be dismissed under Rule 12(b)(1). Williams raises a facial attack because the jurisdictional defect is apparent from the face of the Second Amended Complaint itself. No extrinsic evidence is needed to establish it.[69] Even accepting Plaintiffs' *well-pleaded* allegations as true, the claim fails on its face.[70] "[T]he disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have

---

[68] *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994).
[69] *Larson*, 2016 WL 11796310, at *1.
[70] *Muscogee Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010); *Owen v. Legislative Servs.*, No. 2:25-cv-00432, 2026 WL 881586, at *4 (D. Utah Mar. 31, 2026).

on the adversaries, and some useful purpose to be achieved in deciding them."[71] Plaintiffs' claim has not taken shape.

The word "if" is doing all the structural work. Paragraphs 383, 391, 397, 404, and 411 of the Second Amended Complaint each open with the same conditional clause: "*If* the UGIA were to serve to bar Plaintiffs' claims against Williams." The word "if" is dispositive. Plaintiffs are not alleging that the UGIA has barred anything. They are asking this Court to advise what the law would be upon a hypothetical state of facts. To do so, this Court would be required to resolve factual and legal questions that have not been litigated. That would effectively deny Williams the opportunity to be heard on the very issues that must be decided before any constitutional question can be reached. Advisory opinions are not permissible.[72]

The UGIA has not been invoked and is not before this Court. Plaintiffs' Claims fail on the merits for the reasons set forth in Argument Section I. This Court has not determined whether Williams is entitled to immunity, whether he acted within his scope of employment, or whether Plaintiffs' underlying Claims survive. Every predicate on which Plaintiffs' constitutional challenge depends remains entirely unresolved. Nor could further development cure that deficiency because the Second Amended Complaint does not allege well-pleaded facts sufficient to resolve any of those threshold questions, and without the underlying Claims, Plaintiffs' constitutional challenge has no predicate to stand on and no controversy left to adjudicate.

---

[71] *Anderson v. Univ. of Utah Hosp.*, No. 2:17-cv-00683, 2018 WL 1115148, at *2 (D. Utah Feb. 28, 2018).

[72] *Alfwear, Inc. v. IBKUL Corp.*, 672 F. Supp. 3d 1174, 1183 (D. Utah 2023) (cleaned up); *Growgenix Sols. LLC v. Roberts Int'l Agric. Dev., LLC*, 428 F. Supp. 3d 1236, 1241 (D. Utah 2019) (cleaned up) ("A 'controversy' in this sense must be 'definite and concrete, touching the legal relations of parties having adverse legal interests,' and must be 'real and substantial,' and admit of 'specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts'")).

A "claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"[73] Plaintiffs' injury is not actual or imminent—it is conjectural and hypothetical, contingent on a chain of future judicial determinations that may never occur.[74] Plaintiffs cannot use the Declaratory Judgment Act to manufacture jurisdiction over a constitutional challenge that has no present predicate.[75] The Twenty-First Cause of Action as to Williams presents no justiciable controversy and must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

Plaintiffs may argue that a denial of this Motion as to the underlying Claims would ripen the constitutional challenge and that their declaratory relief claim is therefore properly pleaded in the alternative. That argument is wrong. A denial of a motion to dismiss is not a ruling on the merits.[76] It means only that the underlying Claims survive the pleading stage. This Court has not determined whether Williams is entitled to immunity, whether he acted within the scope of his employment, or whether any of the underlying torts alleged survive dismissal. A claim is not ripe when it depends on a future determination that has not yet been made, and Plaintiffs' constitutional challenge depends entirely on a future determination that the UGIA applies, which in turn depends on whether Williams acted within the scope of his employment, a question this Court has not decided.[77] The constitutional challenge cannot ripen until this Court has determined that the UGIA applies to bar Plaintiffs' claims against Williams, and a denial of this Motion resolves none of those threshold questions.[78] The injury remains hypothetical, the controversy lacks the immediacy and

---

[73] *Texas v. United States*, 523 U.S. 296, 300 (1998).

[74] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

[75] *Alfwear, Inc. v. IBKUL Corp.*, 672 F. Supp. 3d 1174, 1186 (D. Utah 2023).

[76] *Beenken v. Chicago & N.W.R. Co.*, 367 F. Supp. 1337, 1337 (N.D. Iowa 1973).

[77] *Jenkins*, 675 P.2d at 1148.

[78] *Anderson*, 2018 WL 1115148, at 2.

reality adjudication requires, and any ruling on the constitutionality of the UGIA under these circumstances would be premature and purely advisory.[79] A declaratory judgment does not create jurisdiction where none exists, and a plaintiff cannot use the Act's remedial framework to transform an unripe, hypothetical claim into a justiciable controversy.[80] Because no justiciable controversy exists, this Court lacks subject matter jurisdiction and the Twenty-First Cause of Action must be dismissed under Rule 12(b)(1).[81]

### b. The claim is derivative and falls with the underlying torts.

Plaintiffs' constitutional challenge is not freestanding. It is derivative of their underlying tort claims. A constitutional challenge predicated on the UGIA barring non-existent claims is moot[82] and offers no basis for declaratory relief.[83] Each of Plaintiffs' underlying tort claims against Williams—defamation *per se*, false light, IIED, and tortious interference—fails on the merits independently of immunity. Once those claims are dismissed, Plaintiffs' Twenty-First Cause of Action has no surviving predicate to attach to. There is no live controversy over whether the UGIA bars claims that do not exist.

### c. The claim rests on a factual predicate irreconcilably incompatible with the underlying torts.

Even if the underlying torts survived, Plaintiffs' declaratory relief cause of action collapses under its own internal logic. The factual predicate required to sustain the constitutional challenge

---

[79] *Lotusson*, 2026 WL 705101, at 6-7.

[80] *Jenkins*, 675 P.2d at 1148; *Gordon*, 552 P.3d 200 at ¶ 22.

[81] *Natalie R. v. State, 2025 UT 5, ¶¶ 21–23, 567 P.3d 550* at ¶¶ 57–58.

[82] *Disability Rts. Ctr. of Kansas*, 491 F.3d at 1147 (*quoting Seneca–Cayuga Tribe v. Nat'l Indian Gaming Comm'n,* 327 F.3d 1019, 1028 (10th Cir.2003) ("'Constitutional mootness doctrine is grounded in the Article III requirement that federal courts may only decide actual ongoing cases or controversies'")); *id.* (*quoting Prier v. Steed*, 456 F.3d 1209, 1213 (10th Cir.2006) ("Actions seeking a declaratory judgment 'must comport with the same mootness principles as any other suit'")).

[83] *Williamson v. Farrell*, 447 P.3d 131, ¶ 11 (Utah Ct. App. 2019).

directly contradicts the factual predicate Plaintiffs have pleaded in the underlying tort causes of action—and it does so in both directions.

### i. The scope-of-employment contradiction.

For defamation, Plaintiffs expressly allege that Williams acted "within his scope of employment as president of Utah Tech when he typed the note with Plaintiffs' names on it in the presidential residence, and delivered the vulgar display and 'zuweenie' note with Plaintiffs' names falsely ascribed to the front porch of VP Sharp."[84] Paragraph 244 of the Second Amended Complaint repeats that Williams "acted within the course and scope of his employment when he denied his involvement to Sharp." Plaintiffs' false light cause of action contains identical allegations at Paragraphs 265 and 266. Through incorporation, the same scope-of-employment allegations underlie the IIED claim.[85]

Yet, in Plaintiffs' declaratory relief cause of action, they take the opposite position. Paragraph 377 of the Second Amended Complaint alleges that delivering the vulgar display "is not conceivably essential to the core governmental activity of operating a public university of higher education" and that such conduct is not "of such a unique nature that it can only be performed by the government alone." Paragraph 378 states that "none are governmental functions." Paragraphs 387-388 repeat the same argument for false light, and Paragraphs 407-408 repeat it for IIED.

---

[84] Second Am. Compl. ¶ 243.

[85] Second Am. Compl. ¶¶ 316, 318, 243–244, 265–266 (Plaintiffs' IIED claim is predicated on the same alleged conduct underlying their defamation *per se* and false light claims, namely that Williams "falsely ascrib[ed]" the vulgar display to Plaintiffs "in front of their peers and colleagues." Plaintiffs allege that this same conduct constituted "extreme and outrageous conduct" intended to inflict emotional distress).

This is a direct, irreconcilable contradiction between the underlying tort claims and Plaintiffs' declaratory relief claim. Plaintiffs cannot allege scope of employment in Paragraphs 243, 244, 265, 266, and 318 to support their defamation *per se*, false light, and IIED claims and then allege in Paragraphs 377-378, 387-388, and 407-408 that the same conduct was not a governmental function to support their constitutional challenge. The UGIA "governs all claims against governmental entities or against their *employees* or agents *arising out of the performance of the employee's duties, within the scope of employment, or under color of authority*."[86] The UGIA defines "governmental function" as "each activity, undertaking, or operation performed by [an] … employee, agent, or officer of a governmental entity."[87] That definition contains no limiting principle. It does not require that the activity be uniquely governmental, essential to core governance, or even job-related in any traditional sense. As confirmed by the Utah Supreme Court, the Legislature deliberately broadened the definition over time to encompass virtually anything a governmental employee does.[88] Conduct performed within the scope of employment by a governmental employee is, by the statute's plain text, an activity performed by an employee of a governmental entity, which is precisely what Utah Code § 63G-7-102(7) defines as a governmental function.

Plaintiffs cannot simultaneously allege that Williams acted within the scope of employment and that the same conduct was not governmental function outside the scope of his employment without contradicting the statute's own definitions. If the alleged conduct was within the scope of Williams' employment as Paragraphs 243, 244, 265, 266 and 318 allege, then it was a governmental function and the UGIA would apply. If the conduct was not a governmental

---

[86] Utah Code § 63G-7-101(2)(b) (emphasis added).
[87] Utah Code § 63G-7-102(7).
[88] *Scott v. Universal Sales, Inc.*, 2015 UT 64, ¶ 58, 356 P.3d 1172; *Fuja*, 575 P.3d at ¶ 15.

function—as Paragraphs 377-378, 387-388, and 407-408 allege—then the UGIA would not apply, immunity would never attach, and the constitutional challenge would have no predicate, resulting in the lack of a justiciable controversy. Either way, the Twenty-First Cause of Action cannot survive. Courts need not accept internally contradictory allegations as true.[89]

### ii.   The tortious interference contradiction.

Plaintiffs' tortious interference causes of action expose an even more fundamental incoherence. To establish tortious interference against Williams, Plaintiffs must plead that Williams acted outside the scope of his employment and for purely personal reasons.[90] "Employees act for purely personal motives when their actions are in no way connected with the employer's interests."[91]

Within the tortious interference with *existing* economic relations cause of action, Paragraph 296(a) of the Second Amended Complaint alleges that Williams acted "within his scope of employment as president of Utah Tech" when he typed and delivered the note. Paragraph 297—the very next Paragraph—alleges that "these Defendants were acting for purely personal reasons." Paragraph 298 states that their efforts "were not, and are not, in the best interest of the University and were not connected to the University's interests."[92] Three consecutive paragraphs within the same cause of action take directly incompatible positions on the same question.

The same contradiction runs through the tortious interference with *prospective* economic relations cause of action. Paragraph 306 alleges that Williams was "acting in the course and scope

---

[89] *Martineau v. Currutt*, No. 121CV00045JNPDBP, 2022 WL 180735, at *5 (D. Utah Jan. 19, 2022); *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016).

[90] *Giusti v. Sterling Wentworth Corp.*, 201 P.3d 966, 979 (Utah 2009) ("When the defendants are also employees, the plaintiff must establish that the defendants were acting outside the scope of their employment for purely personal reasons").

[91] *Id.*

[92] Second Am. Compl. ¶¶ 296(a), 297-298.

of his employment when he tortiously interfered with Plaintiffs' prospective economic relations." Paragraph 310—within the same cause of action—alleges that "Defendants were acting for purely personal reasons." Paragraph 313 states that "Defendants' actions were not in the best interest of Utah Tech and were not connected to Utah Tech's interests."[93]

A claim for tortious interference requires that the defendant's conduct be in no way connected with the employer's interests.[94] Paragraphs 296(a) and 306 allege precisely the kind of connection—scope of employment—that defeats that standard. Paragraphs 297-298, 310 and 313 then plead that standard away within the same causes of action. Although scope of employment is ordinarily fact-intensive, courts need not accept internally contradictory allegations as true at the pleading stage.[95]

### iii.   The vicarious liability contradiction.

The contradictions extend further still. Paragraphs 258 and 275 of the Second Amended Complaint allege that Utah Tech is exposed to vicarious liability through Williams as president. Vicarious liability under *respondeat superior* requires that Williams acted within the scope of his employment.[96] Plaintiffs cannot seek to hold Utah Tech vicariously liable, which requires scope of employment, while simultaneously alleging in Paragraphs 297-298 that Williams acted for purely personal reasons in no way connected to Utah Tech's interests.

---

[93] *Id.* at ¶¶ 306, 310, 313.
[94] *See Giusti*, 2009 UT at ¶ 65.
[95] *Martineau*, 2022 WL 180735, at *5; *Allied World Nat'l Assur. Co. v. Monavie, Inc.*, No. 2:12-cv-393-DAK, 2013 WL 3716530, at *4 (D. Utah July 12, 2013).
[96] *Cordero v. Olson Assocs. P.C.*, 740 F. Supp. 3d 1117, 1125 (D. Utah 2024) (*quoting Drew v. Pac. Life Ins. Co.*, 2021 UT 55, ¶ 56, 496 P.3d 201)) (*quoting Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1040 (Utah 1991) ("*Respondeat superior* liability permits 'employers [to be] held vicariously liable for the torts their employees commit when the employees are acting within the scope of their employment'")); *see also Phillips v. JCM Dev. Corp.*, 666 P.2d 876, 881 (Utah 1983).

### iv.   Paragraph 73 confirms the contradiction rather than resolving it.

Plaintiffs also allege that Williams' conduct was directed toward Plaintiffs "in response to their execution of their duties within the OGC and OEC & TIX."[97] That allegation deepens rather than resolves the contradiction. If Williams' conduct was a response to Plaintiffs' execution of their official duties, it was by definition connected to University interests, which directly contradicts the purely personal reasons allegation in Paragraphs 297-298. Plaintiffs cannot have it both ways: either the conduct was connected to Plaintiffs' official University functions and therefore to institutional interests, in which case the purely personal reasons allegation fails; or it was purely personal and in no way connected to the University's interests, in which case the scope-of-employment allegations fail. Either way, the tortious interference claims cannot survive.

### v.   The pleading is structurally impossible on its face.

This is not a pleading technicality. It is a structural impossibility running through specific paragraphs of Plaintiffs' Second Amended Complaint. Plaintiffs simultaneously allege scope of employment to support their underlying tort claims, no governmental function to support their constitutional challenge, and purely personal reasons to satisfy the standard for tortious interference. No set of facts can satisfy all three positions simultaneously. Plaintiffs cannot plausibly establish all of them, and their declaratory relief claim must be dismissed on this ground alone.

### d.   The Court should decline to exercise its discretion to entertain declaratory relief.

Independent of the foregoing, this Court may refuse to enter a declaratory judgment where doing so would not terminate the uncertainty or controversy giving rise to the proceeding.[98]

---

[97] Second Am. Compl. ¶ 73.

[98] Utah Code Ann. § 78B-6-404; *Williamson*, 447 P.3d at ¶¶ 13–14.

A declaratory judgment that the UGIA is unconstitutional as applied would resolve nothing. The parties would still need to litigate whether the UGIA applies, including fact-intensive questions about whether Williams acted within the scope of his employment, whether his conduct constitutes a governmental function under Utah Code § 63G-7-102(7), and whether Plaintiffs have adequate alternative remedies. Plaintiffs' remaining claims against other Defendants proceed regardless of the outcome of the constitutional challenge. The constitutional question remains academic until those prior issues are decided. A declaratory ruling at this stage would amount to an impermissible advisory opinion and would promote neither judicial efficiency nor proper constitutional avoidance. The Court should decline to entertain the claim on this independent ground.

## CONCLUSION

Williams respectfully requests that this Court grant his Motion and dismiss Plaintiffs' Alternative Cause of Action.

DATED this 19th day of June 2026.

SNOW JENSEN & REECE, P.C.

/s/ V. Lowry Snow*

V. Lowry Snow [99]
J. Gregory Hardman
Devon J. Herrmann
*Attorneys for Richard "Biff" Williams,*
*Michael Lacourse, Eric Pedersen*
*Signed with permission*

---

[99] I, V. Lowry Snow, certify that this Motion to Dismiss contains 5723 words and complies with DUCivR 7-1(a)(4).